JUDGE HOLWELL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 07 CV 10591

---------------------------------------------------------------------------X

SONIA URRIOLA,

                           Plaintiff,

      -against-

GUIDANT CORPORATION, GUIDANT SALES
CORPORATION, BOSTON SCIENTIFIC CORPORATION,
MICHAEL LIOU, M.D., BETH ISRAEL MEDICAL
CENTER AND BETH ISRAEL MEDICAL CENTER
PHILIPS AMBULATORY CARE CENTER,

                     Defendants.

---------------------------------------------------------------------------X

Removed from:
Supreme Court of the State of
New York
County of New York
Index No.:  07/114306

State Case No. 1214306
Civil Action No: _____

**NOTICE OF REMOVAL
AND COPIES OF ALL
PROCESS AND
PLEADINGS**

**TO:   THE CLERK AND JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

## NOTICE OF REMOVAL OF CIVIL ACTION

      Defendants Guidant Corporation ("Guidant"), Guidant Sales Corporation ("GSC"), and Boston

Scientific Corporation ("Boston Scientific"), pursuant to 28 U.S.C. §§ 1441 and 1446, file this Notice

of Removal ("Notice") of this action from the Supreme Court of the State of New York, County of

New York, to the United States District Court for the Southern District of New York. The grounds for

removal are as follows:

ME1 6929289v.1

## INTRODUCTION

1.      On October 24, 2007, Plaintiff brought this action against Defendants Guidant; GSC; Boston Scientific; Michael Liou, M.D.; Beth Israel Medical Center; and Beth Israel Medical Center Philips Ambulatory Care Center.  The action was filed in New York Supreme Court, New York County, and bears Index No. 114306/07.

2.      Plaintiff alleges serious injuries as the result of the implantation of a cardiac medical device allegedly manufactured and/or sold by Guidant, GSC, and Boston Scientific (collectively "Guidant Defendants"), and implanted by Dr. Liou and the Beth Israel Medical Center entities (collectively "Healthcare Defendants"). *See generally* Complaint (attached as Exhibit 1).

3.      Plaintiff alleges that the Guidant Defendants manufactured, designed, marketed and sold Plaintiff's cardiac medical device. *See generally* Complaint.

4.      Plaintiff alleges that the Healthcare Defendants were medical providers that negligently treated Plaintiff before, during, and subsequent to the implantation of her cardiac medical device. *Id.*

5.      The Court has original jurisdiction over this action under 28 U.S.C. § 1332, and this action is removable under 28 U.S.C. § 1441(b), in that, excluding the fraudulently and/or misjoined defendants, it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  The presence of in-state and non-diverse defendants is not a bar to removal because they have been improperly joined in this case to defeat diversity.

6.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers or exhibits served upon or otherwise provided to Defendants are attached as Exhibit 2.

## DIVERSITY OF CITIZENSHIP EXISTS

MEI 6929289v.1

7.    Plaintiff Sophia Urriola is now and was at the commencement of this action a citizen of the State of New York.

8.    Guidant is now and was at the commencement of this action an Indiana corporation with its principal place of business in Minnesota.  Thus, Guidant is a citizen of both Indiana and Minnesota.

9.    Boston Scientific Corporation is now and was at the commencement of this action a Delaware corporation with its principal place of business in Massachusetts.  Thus, Boston Scientific Corporation is a citizen of both Delaware and Massachusetts.

10.    GSC is now and was at the commencement of this action a Minnesota corporation with its principal place of business in Minnesota.  Thus, GSC is a citizen of Minnesota.

11.    The Healthcare Defendants are now and were at the commencement of this action citizens of the State of New York.  As set forth below, however, their citizenship should be disregarded for purposes of determining whether diversity jurisdiction exists or whether 28 U.S.C. § 1441(b) applies.

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

12.    Where, as here, the jurisdictional amount is not specifically alleged, it can nevertheless be determined when it is "facially apparent" from the complaint itself.  *See Burr v. Toyota Motor Credit Co.,* 478 F. Supp. 2d 432, 439 (S.D.N.Y. 2006) (finding it evident "from the face of the Complaint that Plaintiffs' claim will exceed seventy-five thousand dollars."); *Williams v. Best Buy Co.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (holding that the district court may consider whether jurisdictional amount is "facially apparent" from the complaint).  A court may also consider the removal notice and post-removal evidence concerning the amount in controversy.  *See id.*

ME1 6929289v.1

13.    In this case, it is "facially apparent" that the amount in controversy exceeds $75,000. Indeed, Plaintiff alleges that she suffered "from physical and emotional injuries and severely diminished quality of life and life expectancy and was caused to and will be caused to expend sums of money for medical care and monitoring." *See* Complaint ¶ 42. More specifically, Plaintiff alleges to have suffered "a significant and life threatening [fungal] infection which required the removal of her implantable cardiac defibrillator as well as extensive hospitalization thereafter, and she became and still is, and for a long time to come, will be sick, sore, lame, bruised, injured, wounded and disabled in the various parts of her head, body, and Plaintiff otherwise sustains psychological injuries, and upon information and belief all the aforementioned injuries are permanent. By reason of the foregoing the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals, surgical intervention, rehabilitation services and medical supplies in an attempt to cure herself of her injuries, and she has been prevented from performing her usual duties and will be so prevented for a long time to come." Complaint at ¶ 48.

14.    These alleged injuries are at least as serious as others that have been found to satisfy the amount in controversy. *See Burr*, 478 F. Supp. 2d at 439 (holding that plaintiff who suffered "serious and severe permanent personal injuries" as a result of a motor vehicle accident satisfied the amount in controversy); *Gebbia v. Wal-Mart Stores*, 233 F.3d 880, 888 (5th Cir. 2000) (alleged damages in a slip and fall case for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement" met the jurisdictional amount); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (alleged damages to property, travel expenses, emergency ambulance trip, six-day hospitalization, pain and suffering, humiliation, and an inability to do housework met jurisdictional amount); *In re Fen-Phen Cases*, Nos. 8:01-CV-1587-

- 4 -

T-30-MAP et al., slip op. at 5 (M.D. Fla. Dec. 4, 2001) (similar allegations against pharmaceutical manufacturer met jurisdictional amount) (Ex. 3). *See Haran v. Medtronic, Inc.,* No. 97-C-6459, 1998 WL 575278, at *3 (N.D. Ill., Sept. 3, 1998).[1]

15.    Additionally, there are over 2000 cases that have been filed in or removed to federal court against one or more of the Guidant Defendants nationwide in which plaintiffs, like the Plaintiff identified in this lawsuit, allege that they are seeking compensatory damages for various personal injuries allegedly caused by an implantable cardiac medical device. More than 1990 of these cases have been consolidated in *In re: Guidant Corp. Implantable Defibrillators,* MDL No. 05-1708, which is pending before the Honorable Donovan W. Frank in the United States District Court for the District of Minnesota. Defendants' good-faith belief and estimate, based on the experience of their counsel in similar matters, is that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. *See Rubel v. Pfizer Inc.,* 361 F. 3d 1016, 1020 (7th Cir. 2004); *Fields,* 2006 U.S. Dist. LEXIS 47948 at *3-6.

**REMOVAL IS OTHERWISE PROPER**

16.    Plaintiff commenced this action on October 24, 2007.  Plaintiff also served Boston Scientific and GSC on October 25, 2007.  Thus, this removal is timely pursuant to 28 U.S.C. 1446(b).

17.    Venue exists in the Southern District of New York because the Supreme Court of the State of New York, County of New York, is within this District.

18.    Written notice of the filing of the Notice of Removal will be promptly served on all counsel, and a copy will be promptly filed with the Clerk of the Supreme Court of the State of New

---

[1] In *Haran,* the plaintiff's complaint alleged damages including physical and emotional harm and economic loss as a result of the implantation of an allegedly defective pacemaker. *See id.* The court found to a reasonable probability that the "gravity of these alleged injuries support an inference that the amount in controversy here is greater than $75,000." *Id.* at *3.

ME1 6929289v.1

York, County of New York, pursuant to 28 U.S.C. § 1446(d). A copy of the Notice of Filing of Notice of Removal to Federal Court is attached hereto as Exhibit 4.

19.    As stated above and set forth more fully below, the Healthcare Defendants are fraudulently and/or improperly joined. Thus, their consent to this removal is unnecessary. *See In re Rezulin*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001) ("the failure of an improperly joined party to participate in the petition will not defeat removal").

## THE HEALTHCARE DEFENDANTS ARE IMPROPERLY JOINED TOGETHER IN THIS ACTION

20.    Plaintiff in this case has improperly joined the medical negligence claims asserted against the Healthcare Defendants with the product liability claims asserted against the Guidant Defendants.

21.    Rule 20(a), Fed. R. Civ. P., limits permissive joinder of parties to "claims arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."[2]

22.    Here, Plaintiff's medical-negligence claims against the Healthcare Defendants do not arise out of the same transaction or occurrence or series of transactions or occurrences as the product liability claims against the Guidant Defendants. The claims are factually and legally distinct.

23.    In fact, in her Complaint Plaintiff separates her claims against the Guidant Defendants from her claims against the Healthcare Defendants. Plaintiff states only medical malpractice and lack of informed consent claims against the Healthcare Defendants (Counts 8 and 9). The remaining claims – design defect, manufacture defect, negligence, breach of express

---

[2] New York Rule of Civil Procedure 20(a) is identical to Federal Rule 20(a).

MEI 6929289v.1

warranty, breach of implied warranty, fraudulent misrepresentation, and fraudulent concealment – are asserted against only the Guidant Defendants (Counts 1 through 7).

24.    The crux of Plaintiff's claims against the Healthcare Defendants arise from their allegedly negligent care and treatment of Plaintiff. Contract at ¶ 118. In contrast, Plaintiff's claims against the Guidant Defendants involve the design, testing, manufacturing, and sale of Plaintiff's cardiac medical device.

25.    Moreover, the evidence in support of these distinct claims will necessarily be different. On the one hand, Plaintiff will need to establish that the Guidant Defendants manufactured, designed and/or sold a defective cardiac medical device. On the other hand, Plaintiff will need to establish that the Healthcare Defendants "departed from accepted practices" in their care and treatment of the plaintiff. In fact, it appears that the claims will not require any of the same proof. *See, e.g., Greene v. Wyeth,* 344 F. Supp. 2d 674, 683 (D. Nev. 2004) (severing medical negligence claims against non-diverse doctor who prescribed diet medications from the product liability claims against the manufacturer because the claims were improperly joined).

26.    Plaintiff's claims arising out of the Healthcare Defendants' care and treatment of the plaintiff do not arise out of the same "transaction or occurrence" as his claims against the Guidant Defendants. Thus, those claims should be severed. *See, e.g., In re Rezulin,* 168 F. Supp. 2d 136, 144-148 (S.D.N.Y. 2001) (finding that claim against home healthcare provider was misjoined with claims against drug manufacturer).

27.    Courts may sever improperly joined parties when their claims do not arise out of the same transaction or occurrence, or the claims will not involve questions of law or fact common to all parties. Federal Rule of Civil Procedure 21 provides that "[p]arties may be

- 7 -

dropped or added by order of the court...at any stage of the action and on such terms that are just."[3]

28.    ·Indeed, in this very litigation, the MDL Court recently, under similar circumstances, severed medical negligence claims against a healthcare provider from the product liability claims against Guidant in order to retain jurisdiction of the plaintiff's claims against Guidant. *See Brown v. Guidant Corp., et. al.,* MDL No. 1708 (D. Minn. August 30, 2007) (Frank, J.) (Order denying Motion to Remand and Severing claims against healthcare providers) (attached as Exhibit 5). Specifically, in *Brown,* the plaintiff, like the plaintiff here, joined medical negligence claims against Plaintiff's non-diverse implanting physician with product liability claims against diverse defendant Guidant. *Id.* at p. 3. Guidant removed the action from California state court on the basis that the medical negligence claims were misjoined with the product liability claims. *Id.* Plaintiff moved for remand arguing that the surgery and implantation of the device shared "common questions of law and/or fact" with the product liability claims against Guidant. *Id.* In denying the motion to remand and severing the claims against the non-diverse physician, Judge Frank stated:

> [Plaintiff's] claim against Dr. Housman is medical negligence, which would require evidence on [Plaintiff's] care, treatment, and services provided by Dr. Housman. Brown's claims against either Guidant or EVT are general negligence or product liability claims based on alleged manufacturing and design defects, alleged failure to properly warn, and alleged misrepresentation of the health risks associated with certain medical devices.    These claims would require evidence on the development, manufacture, and testing of [Plaintiff's device] along with evidence of Guidant and EVT's knowledge, warnings, and representations regarding defective [devices.]    The joinder of the malpractice claims against Dr. Housman with the other general negligence and product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability "arising out of the same transaction or occurrence, or series of transactions or occurrences."

---

[3] New York Rule of Civil Procedure 21 is identical to its federal counterpart.

- 8 -

*Id.* at 5-6. The facts of this case are indistinguishable.

29.      Likewise, in *Alexander v. Guidant Corp.,* Case No. 05-1708, (D. Minn. June 4, 2007) (attached hereto as Exhibit 6), the MDL Court found: "[t]he joinder of the malpractice claim against [the healthcare provider] with the other product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several or alternative liability arising out of the same transaction, occurrence, or series of transactions or occurrences. Any liability that may be found against either [Guidant or the healthcare facility] would not be a basis for liability as to the other." *Id.* at 12.

30.      Moreover, in a similar case pending against Guidant, the United States District Court for the Southern District of Texas also found that joinder of non-diverse medical negligence defendants was improper. *Hardin v. Guidant Corp., et al.,* Case No. G-05-430 (S.D. Tex. February 1, 2006) (attached hereto as Exhibit 7).  In that case, the plaintiff, like the Plaintiff here, filed in the same complaint causes of action against healthcare providers alleging medical negligence and causes of action against Guidant alleging product liability. *Id.*  The court found that the joinder of the medical negligence claims against the non-diverse healthcare providers was improper. *Id.*  The court ordered that the medical negligence claims be severed and remanded, and it retained jurisdiction over the product liability claims against Guidant. *Id.*

31.      The principals stated in the cases cited above are equally applicable here where Plaintiff asserts that Guidant is liable for allegedly manufacturing, designing, and selling a defective product, and in the same complaint asserts that the Healthcare Defendants breached the applicable standard of care in their treatment of Plaintiff.  These two claims will require different

evidence and do not arise out of the same occurrence, transaction or series of occurrences or transactions.

32.    The Guidant Defendants, therefore, respectfully request that this Court sever the medical negligence claims against the Healthcare Defendants from the product liability claims against the Guidant Defendants and retain jurisdiction over the product liability claims against the Guidant Defendants.

Dated:  November 26, 2007

Respectfully submitted,

By: _____
    Kimberly S. Penner (KP 1763)
    kpenner@mccarter.com
    **McCARTER & ENGLISH, LLP**
    245 Park Avenue, 27th Floor
    New York, New York 10167-0001
    212-609-6800

    and

    **SHOOK, HARDY & BACON, L.L.P.**
    2555 Grand Boulevard
    Kansas City, Missouri 64108
    816-474-6550

    Attorneys for Defendants
    Guidant Corporation,
    Guidant Sales Corporation and
    Boston Scientific Corporation

ME1 6929289v.1

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
SONIA URRIOLA,

                                    Plaintiffs,                    **VERIFIED COMPLAINT**

            -against-
                                                                  Index No.: 114306    /07

GUIDANT CORPORATION, GUIDANT SALES
CORPORATION, BOSTON SCIENTIFIC
CORPORATION, MICHAEL LIOU, M.D., BETH
ISRAEL MEDICAL CENTER AND BETH ISRAEL
MEDICAL CENTER PHILIPS AMBULATORY CARE
CENTER,

                                    Defendants,
-----------------------------------------------------------------X

        Plaintiffs, by and through their attorneys, Bonina & Bonina, P.C.,complaining of the

defendants herein, as and for their Verified Complaint in the above entitled action, respectfully show

to this Court and allege upon information and belief as follows:

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF SONIA URRIOLA TO RECOVER MONETARY DAMAGES FROM THE DEFENDANTS UNDER A THEORY OF DEFECT IN DESIGN

**FIRST:**

        That prior to service of this Summons & Complaint and on the 24th day of October 2007,

plaintiffs have purchased Index No._____/07 from the Supreme Court of the State of

New York, County of New York, in accordance with the requirements of the CPLR.

**SECOND:**

        That this action falls within one or more exceptions set forth in CPLR §1602.

Page 1 of 41

**THIRD:**

Plaintiffs demand a trial by jury.

**FOURTH:**

That all times mentioned herein, plaintiff, Sonia Urriola, is, was, and has been a resident of the County of New York, City and State of New York.

**FIFTH:**

That at all times mentioned herein, Defendant Guidant, (hereinafter Guidant) is a foreign corporation with its principal place of business in a state other than New York.

**SIXTH:**

Defendant Guidant manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model number H179.

**SEVENTH:**

That at all times herein mentioned, the Defendant Guidant, was and still is a foreign corporation duly authorized to do business in the State of New York.

**EIGHTH:**

That at all times mentioned herein, Defendant Guidant, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**NINTH:**

That at all times mentioned herein, Defendant Guidant Sales Corporation, (hereinafter Guidant Sales) is a foreign corporation with its principal place of business in a state other than New York.

**TENTH:**

Defendant Guidant Sales manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain implantable Cardiac Resynchronization Therapy - Defibrillators (CRT-D) and including the Contak Renewal 3HE Model number H179.

**ELEVENTH:**

That at all times herein mentioned, the Defendant Guidant Sales, was and still is a foreign corporation duly authorized to do business in the State of New York.

**TWELFTH:**

That at all times mentioned herein, Defendant Guidant Sales, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**THIRTEENTH:**

That at all times mentioned herein, defendant Boston Scientific Corporation (hereinafter Boston) is a corporation incorporated pursuant to the laws of the State of Delaware and has its principal place of business in Massachusetts.

**FOURTEENTH:**

Defendant Boston manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 4HE Model number H179.

**FIFTEENTH:**

That at all times mentioned herein, the Defendant Boston, was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

**SIXTEENTH:**

That at all times mentioned herein, the Defendant Boston, was and still is a foreign corporation duly authorized to do business in the State of New York.

**SEVENTEENTH:**

That at all times mentioned herein, Defendant Boston, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**EIGHTEENTH:**

That at all times mentioned herein Defendant Boston, is, was and has been a limited partnership or limited liability company duly organized under and existing by virtue of the laws of the State of New York.

**NINETEENTH:**

That upon information and belief the defendant Boston has acquired or merged with the defendant Guidant and/or defendant Guidant Sales and is a successor in interest to all claims articulated herein and stated against defendants Guidant and Guidant Sales.

**TWENTIETH:**

At all times, defendants were engaged in the business of manufacturing, selling, distributing, promoting, designing and testing Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179.

**TWENTY FIRST:**

Each defendant placed the Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179, into the stream of commerce and derived substantial benefits from this product which was sold for profit in the State of New York by the

defendants, their agents, servants, associates, subsidiaries, partners and/or employees.

**TWENTY SECOND:**

At all times hereinafter mentioned all of the above named defendants regularly did and/or

transacted and/or solicited business in the State of New York or were engaged in other persistent

courses of conduct or derived substantial revenue from goods used or consumed or services rendered

in the State of New York.

**TWENTY THIRD:**

That at all times mentioned herein the defendants expected or should have reasonably

expected its acts to have consequences within the State of New York, and derived and continues to

derive substantial revenue from Interstate and International Commerce.

**TWENTY FOURTH:**

That at all times mentioned herein, defendants held themselves out to the general public, and

more particularly to the plaintiff herein, as duly qualified and/or capable of manufacturing designing,

testing, distributing, promoting and/or selling safe and proper implantable medical devices, including

but not limited to the Contak Renewal 3HE Model H179 within the State of New York.

**TWENTY FIFTH:**

That at all times mentioned herein, the defendants for consideration held themselves out as

distributing, manufacturing, designing and selling proper, adequate and safe implantable medical

devices, namely the Contak Renewal 3HE Model H179 to members of the general public and more

particularly plaintiff herein, and further held themselves out to such individuals as having the

necessary skills, expertise, training, and/or personnel, equipment and supplies to perform the same

up to the standards of such care prevalent within the Local, State, and National Community.

**TWENTY SIXTH:**

At all times mentioned herein, defendants themselves, or by use of others did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, advertise, warn, and otherwise distribute in interstate commerce the Contak Renewal 3HE Model H179.

**TWENTY SEVENTH:**

The Contak Renewal 3HE Model H179 was widely advertised by the defendants in the State of New York and throughout the United States for use by persons with irregular cardiac rhythms.

**TWENTY EIGHTH:**

Upon information and belief the defendant manufactured an implantable device named the Contak Renewal 3HE Model H179, which was designed, manufactured, marketed, tested, distributed and sold for profit in the State of New York by one or more of the defendants herein.

**TWENTY NINTH:**

At all times relevant herein, the defendants were engaged in the business of manufacturing, marketing, promoting, selling, distributing and placing in the stream of commerce an implantable cardiac defibrillator device known as the Contak Renewal 3HE Model H179. Upon information and belief each defendant engaged in advertising and promotional activity which indicated its product was efficacious and safe to use and, that based upon the defendants promotional activity with respect to the aforesaid product, said product was implanted into the plaintiff's body based upon the belief that the same was safe to use and was unlikely to subject the plaintiff to any serious danger or injury as a result of the use of the product.

**THIRTIETH:**

That the aforesaid Product was and is sold to hospitals and physicians for implantation into patients who are at risk for having life threatening arrhythmia's as a result of electro physiological changes in the hearts rhythms resulting in a change in heart rhythm, which are life threatening if the patient does not receive an electrical shock from an appropriate device.

**THIRTY FIRST:**

Defendant's aforesaid Product contains wires, called leads, inserted through blood vessels and attached to the heart to detect irregularity in the hearts rhythm and to deliver an electrical shock to prevent or terminate an arrhythmia.

**THIRTY SECOND:**

In on or about November 4, 2004, the plaintiff Sonia Urriola underwent surgery for the implantation of a Guidant Contak Renewal 3HE Model H179 cardiac defibrillator with serial number 504858.

**THIRTY THIRD:**

Upon information and belief, the Guidant Contak Renewal 3HE Model H179 was manufactured, promoted, and marketed by the defendants, and/or each of them, as a safe medical device that would be beneficial for cardiac patients at risk for arrhythmia.

**THIRTY FOURTH:**

Upon information and belief, defendants and/or each of them were in control of the design, manufacture testing, labeling, warning, product information, packaging, promoting, assembly, manufacture, marketing, distribution and/or sales the aforementioned implantable cardiac defibrillator.

**THIRTY FIFTH:**

Defendants made filings with the United States Food and Drug Administration (hereinafter referred to as FDA) in conjunction with the approval process for the Contak Renewal 3HE Model H179.

**THIRTY SIXTH:**

Defendants promoted the Guidant Contak Renewal 3HE Model 179 as a therapy to reduce the risk of hospitalization or death and as a device that could relieve symptoms associated with heart failure, including shortness of breath and fatigue.

**THIRTY SEVENTH:**

That said Contak Renewal 3HE Model H179 came equipped with certain standard equipment, including, among other things, certain wires and/or leads which were improperly and/or inadequately insulated.

**THIRTY EIGHTH:**

That said Contak Renewal 3HE Model H179, came equipped with certain standard equipment, including, among other things, certain and/or switches which were improperly and/or inadequately manufactured and were prone to stitching.

**THIRTY NINTH:**

That the Contak Renewal 3HE Model 179 came equipped with certain standard equipment including among other things, low voltage capacitators which were subject to degradation.

**FORTIETH:**

That said wires and/or leads and/or seals and/or low voltage capacitators were an integral and inherent part of the safety equipment of the above referenced Contak Renewal 3HE Model H179, the

purpose of which was to provide proper protection to the ordinary and foreseeable users and consumers of said device.

**FORTY FIRST:**

Sonia Urriola had a Guidant Contak Renewal 3HE Model 179 Serial number 504858 implanted on or about November 4, 2004 and it remained implanted until on or about June 29, 2007.

**FORTY SECOND:**

Subsequent to having the Guidant Contak Renewal 4HE Model 179 implanted plaintiff, Sonia Urriola, suffered from physical and emotional injuries and severely diminished quality of life and life expectancy and was caused to and will be caused to expend sums of money for medical care and monitoring.

**FORTY THIRD:**

The product warnings in effect between October 2005 and June 2007 were both substantially and wholly inadequate to alert prescribing physicians and consumer patients of the risk of injury and infection associated with the Guidant Contak Renewal 3HE Model H179 which were then known to the defendants.

**FORTY FOURTH:**

Defendants had a duty to exercise reasonable care in the design manufacture, testing, clinical trials, compiling of product information, submission of product information to FDA, pre- and post-marketing testing, sale, marketing and/or distribution of Guidant Contak Renewal 3HE Model H179 into the stream of commerce, including a duty to insure the product did not cause users to suffer from unreasonable and dangerous side effects and injuries as a result of having the product implanted.

**FORTY FIFTH:**

Defendants failed to exercise ordinary care in the manufacturing, selling, testing, quality assurance, quality control and/or distribution of Guidant Contak Renewal 3HE Model 179 into interstate commerce in that defendants knew or reasonably should have known that the product created an increased risk for unreasonable dangerous side effects some of which could only be alleviated by invasive and/or surgical procedures, and some of which can be fatal.

**FORTY SIXTH:**

Defendants and/or each of them, and/or their agents, servants, subsidiaries, partners, associates and employees, acted negligently, carelessly and recklessly, and in willful and wanton disregard for the health, life and safety of their consumers and the public, with respect to their distribution, manufacture, testing, marketing, advertising, and sale of the Contak Renewal 3HE Model H179 in the following ways:

a.   Negligently, carelessly and recklessly manufactured, constructed, engineered, inspected, marketed, tested, and sold implantable cardiac devices that included a seal that leaked allowing moisture to damage electrical components;

b.   Negligently, carelessly and recklessly designed, constructed, engineered, inspected, marketed, tested and sold implantable cardiac devices that included a seal that stuck allowing moisture to damage electrical components;

c.   Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant injury;

d.   Failed to adequately and timely advise consumers and healthcare providers of the

dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant life threatening infections;

e.    Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators, including the Contak Renewal 3HE Model 179, that had leads and/or wires that were not properly insulated;

f.    Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators that had inadequate insulation material on the leads and/or the wires causing these parts of the Contak Renewal 3HE Model H179 to have an increased risk of degradation;

g.    Manufactured, constructed, engineered, inspected, distributed, marketed, tested and sold implantable cardiac defibrillators which were a significant risk of injury to consumers, and in particular to the plaintiff herein;

h.    Knew or reasonably should have known of the potential serious side effects, including but not limited to infection and surgical intervention, and failed to properly investigate and research these issues in clinical trials;

i.    Knew or reasonably of should have known of the potential serious side effects including but not limited to infection and the need for surgical intervention and failed to properly investigate and perform/post sale and adequate post marketing follow up studies;

j.    Failed and omitted to provide adequate information to medical professionals regarding the risks associated with the implantation of Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179;

Page 11 of 41

k.    Failed and/or omitted to inform medical professionals of the significant risk of infection as a result of degradation of the leads/wires;

l.    Manufactured, constructed, distributed, marketed, inspected, tested, and sold a implantable cardiac defibrillator which was unsafe and unfit for its reasonable, ordinary and foreseeable uses;

m.    Caused, allowed and permitted a dangerous defective and unsuitable product to be marketed to the medical profession for use in patients who were medically dependent upon a properly working defibrillator;

n.    Failed to adequately warn members of the medical profession of the risks and dangers inherent in the insertion and use of the Contak Renewal 3HE implantable cardiac defibrillator Model 179;

o.    Failed and/or omitted to properly test the device to determine its effectiveness, and the effectiveness of the insulation on the leads/wires;

p.    Failed and/or omitted to properly instruct members of the medical profession as to the proper manner of testing the device, as well as the proper methods of monitoring patients for defects in the device;

q.    Failed and omitted to properly design, manufacture, assemble, sell, distribute and promote a product that members of the public, including the plaintiff herein, relied upon to sustain life;

r.    Failed and omitted to exercise reasonable and ordinary care and due diligence in ascertaining the defective condition and improper design and manufacturing defects in the Contak Renewal 3E Model H179 implantable cardiac defibrillator;

s.    Failed and omitted to protect the public interest and more particularly that of the plaintiff herein;

t.    Manufactured, distributed, engineered, delivered, sold and marketed an implantable cardiac defibrillator which was inherently dangerous to the life and health of the public, its intended and foreseeable users and more particularly to the plaintiff herein;

u.    Failed and omitted to adopt and enforce proper inspection and testing techniques procedures and protocols on each and every cardiac defibrillator designed, manufactured, constructed, engineered, assembled, sold and distributed including the Contak Renewal 3HE Model H179;

v.    Failed and omitted to properly and adequately notify members of the medical profession regarding the defects present in the Contak Renewal 3HE Model H179 cardiac defibrillator; and

w.    Failed and omitted to institute proper, adequate and timely recall procedures.

**FORTY SEVENTH:**

As a result of defendants' defectively designed Cardiac Resynchronization Therapy - Defibrillators (CRT-D), plaintiff required surgery and extensive rehabilitation and suffered serious infection as a result of the Contak Renewal 3HE Model H179.

**FORTY EIGHTH:**

As a result of the above referenced conduct of the defendants and/or their subsidiaries, successors and interests, divisions, agents, servants, associates, partners and/or employees, the plaintiff Sonia Urriola was caused to suffer a significant and life threatening infection which required the removal of her implantable cardiac defibrillator as well as extensive hospitalization thereafter, and

she became and still is, and for a long time to come, will be sick, sore, lame, bruised, injured, wounded, and disabled in the various parts of her head, body, and plaintiff otherwise sustains psychological injuries, and upon information and belief all the aforementioned injuries are permanent. By reason of the foregoing the plaintiff, Sonia Urriola was obliged to and did necessarily employ hospital aid, medical aid, medicinals, surgical intervention, rehabilitation services and medical supplies in an attempt to cure herself of her injuries, and she has been prevented from performing her usual duties and will be so prevented for a long time to come.

**FORTY NINTH:**

That the plaintiff is not seeking to recover any damages for which plaintiff has been reimbursed by insurance or other applicable coverage. Plaintiff is only seeking to recover those damages not recoverable through insurance and/or other applicable coverage under the facts and circumstances in this action.

**FIFTIETH:**

That as a result of the aforementioned, the plaintiff Sonia Urriola, has been damaged in an amount exceeding all jurisdictional limits of the lower Courts.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF
THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY OF
STRICT PRODUCTS LIABILITY FOR A DEFECT IN MANUFACTURE**

**FIFTY FIRST:**

That the Plaintiff, SONIA URRIOLA, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "FIFTIETH", with the same force and effect as though said allegations were here and fully set forth at length.

**FIFTY SECOND:**

That reasonable reliance upon the proper function of said Contak Renewal 3HE Model H179 device, the plaintiff, Sonia Urriola had said Contak Renewal 3HE Model H179 implanted on or about November 4, 2004.

**FIFTY THIRD:**

That, while the plaintiff had said device implanted as aforesaid, said device caused serious and severe injuries to the Plaintiff herein, including but not limited to massive fungal infection.

**FIFTY FOURTH:**

That, upon information and belief, the happening of the occurrence as aforesaid was the result of defects in manufacture, which caused the Plaintiff to suffer and sustain serious and severe injuries.

**FIFTY FIFTH:**

That, at all times mention herein, the Defendants knew and/or reasonably should have known the intended use to which said Contak Renewal 3HE Model H179 and its appurtenances would be put, and that the general public, and more particularly the Plaintiff herein, would be involved in said uses.

**FIFTY SIXTH:**

That, at all times mentioned herein, the Defendants and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, failed to exercise the proper and reasonable degree of care in the manufacturing, assembling, sterilizing, engineering, and insertion of the Contak Renewal 3HE Model H179, causing said Contak Renewal 3HE Model H179 to be dangerously defective, and not reasonably safe for its ordinary, intended and foreseeable purposes.

**FIFTY SEVENTH:**

Defendants and/or each of them, and/or their agents, servants, partners, associates and employees, acted negligently, carelessly and recklessly, and in willful and wanton disregard for the health, life and safety of their consumers and the public, with respect to their distribution, manufacture, testing, marketing, advertising, and sale of the Contak Renewal 3HE Model H179 in the following ways:

a.   Negligently, carelessly and recklessly manufactured, constructed, engineered, inspected, marketed, tested, and sold implantable cardiac devices that included a seal that leaked allowing moisture to damage electrical components;

b.   Negligently, carelessly and recklessly designed, constructed, engineered, inspected, marketed, tested and sold implantable cardiac devices that included a seal that stuck allowing moisture to damage electrical components;

c.   Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant injury;

d.   Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant life threatening infections;

e.   Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators, including the Contak Renewal 3HE Model 179, that had leads and/or wires that were not properly insulated;

f.   Manufactured, constructed, engineered, inspected, marketed, tested and sold

implantable cardiac defibrillators that had inadequate insulation material on the leads and/or the wires causing these parts of the Contak Renewal 3HE Model H179 to have an increased risk of degradation;

g.    Manufactured, constructed, engineered, inspected, distributed, marketed, tested and sold implantable cardiac defibrillators which were a significant risk of injury to consumers, and in particular to the plaintiff herein;

h.    Knew or reasonably should have known of the potential serious side effects, including but not limited to infection and surgical intervention, and failed to properly investigate and research these issues in clinical trials;

i.    Knew or reasonably should have known of the potential serious side effects including but not limited to infection and the need for surgical intervention and failed to properly investigate and perform/post sale and adequate post marketing follow up studies;

j.    Failed and omitted to provide adequate information to medical professionals regarding the risks associated with the implantation of Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179;

k.    Failed and/or omitted to inform medical professionals of the significant risk of infection as a result of degradation of the leads/wires;

l.    Manufactured, constructed, distributed, marketed, inspected, tested, and sold a implantable cardiac defibrillator which was unsafe and unfit for its reasonable, ordinary and foreseeable uses;

m.    Caused, allowed and permitted a dangerous defective and unsuitable product to be

marketed to the medical profession for use in patients who were medically dependent upon a properly working defibrillator;

n.    Failed to adequately warn members of the medical profession of the risks and dangers inherent in the insertion and use of the Contak Renewal 3HE implantable cardiac defibrillator Model 179;

o.    Failed and/or omitted to properly test the device to determine its effectiveness, and the effectiveness of the insulation on the leads/wires;

p.    Failed and/or omitted to properly instruct members of the medical profession as to the proper manner of testing the device, as well as the proper methods of monitoring patients for defects in the device;

q.    Failed and omitted to properly design, manufacture, assemble, sell, distribute and promote a product that members of the public, including the plaintiff herein, relied upon to sustain life;

r.    Failed and omitted to exercise reasonable and ordinary care and due diligence in ascertaining the defective condition and improper design and manufacturing defects in the Contak Renewal 3E Model H179 implantable cardiac defibrillator;

s.    Failed and omitted to protect the public interest and more particularly that of the plaintiff herein;

t.    Manufactured, distributed, engineered, delivered, sold and marketed an implantable cardiac defibrillator which was inherently dangerous to the life and health of the public, its intended and foreseeable users and more particularly to the plaintiff herein;

u.    Failed and omitted to adopt and enforce proper inspection and testing techniques,

procedures and protocols on each and every cardiac defibrillator designed, manufactured, constructed, engineered, assembled, sold and distributed including the Contak Renewal 3HE Model H179;

v.     Failed and omitted to properly and adequately notify members of the medical profession regarding the defects present in the Contak Renewal 3HE Model H179 cardiac defibrillator; and

w.     Failed and omitted to institute proper, adequately and timely recall procedures.

**FIFTY EIGHTH:**

That as a result of the above referenced conduct of the Defendant, and/or its subsidiaries, divisions, successors in interest, agents, servants, associates, partners, and/or employees, the Plaintiff, Sonia Urriola, was caused to suffer a massive fungal infection requiring removal of the device and surgical interventions and became, still is, and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her body and said plaintiff otherwise sustained psychological injuries, and upon information and belief said injuries are permanent, that by reason of the foregoing, the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals, and medical supplies in an attempt to cure herself of said injuries, and has been prevented from performing her usual duties and will be so prevented for a long time to come.

**FIFTY NINTH:**

That by reason of the foregoing, the Plaintiff, Sonia Urriola, has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY OF NEGLIGENCE

**SIXTIETH:**

That the Plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "FIFTY EIGHTH", with the same force and effect as though said allegations were herein fully set forth at length.

**SIXTY FIRST:**

That on or about June 29, 2007 as a result of the insertion of Contak Renewal 3HE Model 179, the Plaintiff, Sonia Urriola, was caused to suffer a massive fungal infection requiring removal of the device and resulting in serious and severe injuries.

**SIXTY SECOND:**

That the aforementioned occurrence was caused wholly and exclusively as a result of the negligence, carelessness and recklessness of Defendants, and/or Defendants' divisions, successors in interest, subsidiaries, agents, servants, associates, partners, and/or employees without any negligence or culpable conduct on the part of the Plaintiff, Sonia Urriola, contributing thereto.

**SIXTY THIRD:**

That Defendants, and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, actually and/or reasonably knew or should have known at the time of the design and/or manufacture of the aforesaid Contak Renewal 3HE Model H179, that said device was dangerously defective, hazardous, unsafe, dangerous, and posed certain dangers and it was unfit for its ordinary, normal and foreseeable usages by intended users and/or operators.

**SIXTY FOURTH:**

That, upon information and belief, the happening of the occurrence as aforesaid was the result of the negligence, carelessness and recklessness of defendants, and/or each of them which caused the Plaintiff to suffer and sustain serious and severe injuries.

**SIXTY FIFTH:**

That, at all times mention herein, the Defendants knew and/or reasonably should have known the intended use to which said Contak Renewal 3HE Model 179 and its appurtenances would be put, and that the general public, and more particularly the Plaintiff herein, would be involved in said uses.

**SIXTY SIXTH:**

That, at all times mentioned herein, the Defendants and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, failed to exercise the proper and reasonable degree of care in the manufacturing, assembling, engineering, and inserting of the Contak Renewal 3HE Model 179, causing said Contak Renewal 3HE Model 179 to be dangerously defective, and not reasonably safe for its ordinary, intended and foreseeable purposes.

**SIXTY SEVENTH:**

That as a result of the above referenced conduct of the Defendants, and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, the Plaintiff, Sonia Urriola, was caused to suffer injuries and became, still is, and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her head, body, fingers, limbs, extremities, and hands, and said Plaintiff otherwise sustained psychological injuries, and upon information and belief said injuries are permanent, that by reason of the foregoing, the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals and medical

supplies in an attempt to cure himself of said injuries, and has been prevented from performing his

usual duties and will be so prevented for a long time to come.

**SIXTY EIGHTH:**

That by reason of the foregoing, the Plaintiff, Sonia Urriola, has been damaged in a sum

exceeding the jurisdictional limits of all lower Courts.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF
OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY
OF BREACH OF EXPRESS WARRANTY**

**SIXTY NINTH:**

That the plaintiff, Sonia Urriola repeats, reiterates and realleges each and every allegation

of the Complaints set forth in paragraphs numbered "FIRST" through "SIXTY EIGHTH", with

the same force and effect as though said allegations were herein and fully set forth at length.

**SEVENTIETH:**

Defendants expressly warranted to the plaintiff that the product which they designed,

developed, manufactured and sold was of a merchantable quality, fit, safe and otherwise beneficial

to the plaintiff's health and well being and that it would improve the quality of plaintiff's life.

**SEVENTY FIRST:**

Defendants' representations formed a part of the basis of the bargain and plaintiff, Sonia

Urriola relied upon said representations in deciding to have the product implanted.

**SEVENTY SECOND:**

That the product implanted in the plaintiff was unsafe, unmerchantable, unfit for use in the

body, and otherwise injurious to the plaintiff, Sonia Urriola and did not operate as represented.

**SEVENTY THIRD:**

Through the sale of the product, the defendants and/or each of them are merchants pursuant to Section 2-314 of the Uniform Commercial Code.

**SEVENTY FOURTH:**

Defendants breached the express warranty of merchantability in sale of the product to Sonia Urriola and said products was not fit for its ordinary purpose as described above.

**SEVENTY FIFTH:**

As a direct and proximate cause of the defendants breach of their express warranties described herein, the plaintiff, Sonia Urriola suffered an injury as alleged herein above.

**SEVENTY SIXTH:**

That by reason of the foregoing the plaintiff, Sonia Urriola has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF
OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY
OF BREACH OF IMPLIED WARRANTY**

**SEVENTY SEVENTH:**

Plaintiff repeats, reiterates and realleges each and every allegation of the complaint set forth in paragraphs "FIRST" through "SEVENTY SIXTH" with the same force and effect as those said allegations were herein fully set forth at length.

**SEVENTY EIGHTH:**

Defendants, and/or each of them, are in the business of manufacturing and/or supplying and/or placing into the stream of commerce for consumers implantable cardiac devices known as the Contak Renewal 3HE Model H179.

**SEVENTY NINTH:**

By placing the product into the stream of commerce, said defendants impliedly warranted that the product was of merchantable quality, and was fit and safe for its intended use and was fit for the particular purpose of protecting the plaintiff, Sonia Urriola from cardiac arrhythmia.

**EIGHTIETH:**

That the product was placed into the stream of commerce by said defendants and was unmerchantable, was not fit and was not safe for its intended use and not fit for the particular purpose intended.

**EIGHTY FIRST:**

That the defects in the product manufactured and/or supplied by the defendants were present at the time that the product left the hands of the defendants.

**EIGHTY SECOND:**

As a result, the defendants breached implied warranties for the product because said product was defective, unmerchantable, and not fit for its intended particular purpose.

**EIGHTY THIRD:**

The plaintiff Sonia Urriola was a foreseeable user of the product herein, and as a direct and proximate cause of the defendants' breach of implied warranty, she sustained serious, life threatening injuries.

**EIGHTY FOURTH:**

That by reason of the foregoing plaintiff Sonia Urriola damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## FRAUDULENT MISREPRESENTATION

**EIGHTY FIFTH:**

That the plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the complaint set forth in paragraph "FIRST" through "EIGHTY FOURTH" with the same force and effect as those said allegations were herein fully set forth at length.

**EIGHTY SIXTH:**

That the defendants fraudulently and falsely represented to the medical community and to the plaintiff herein that their product had been tested and found to be safe and effective for patients with heart disease.

**EIGHTY SEVENTH:**

That the representations made by the defendants were in fact false.

**EIGHTY EIGHTH:**

That when said representations were made by the defendants that they knew those representations to be false and/or willfully, wantonly  and recklessly disregarded whether the representations were true.

**EIGHTY NINTH:**

That these representations were made by the defendants and/or their successors in interest and/or each of them with the intent of defrauding and deceiving the plaintiff and the public in general and the medical community in particular to recommend, dispense and purchase the product all of which evidences callous, reckless, willful and depraved in difference to the health and safety and welfare of the injured plaintiff.

**NINETIETH:**

At the time that the aforesaid representations were made by the defendant that the injured plaintiff was unaware of the falsity of said representations and reasonably believe them to be true.

**NINETY FIRST:**

In reliance upon said representations the injured plaintiff was induced to and did have the product surgically implanted and thereafter sustained injury and damages as a result of the unsafe product.

**NINETY SECOND:**

That as a result of the defendant malicious, reckless and/or negligent conduct, the plaintiff Sonia Urriola was caused to suffer significant injuries and became and still is and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her body and that said plaintiff sustains psychological injuries and upon information and belief said injuries are permanent. By reason of the foregoing the plaintiff, Sonia Urriola was obliged to and unnecessarily did employ hospital aid, surgical intervention, medical aid, rehabilitation services and medical supplies in an attempt to cure herself of said injuries and has been prevented from performing her usual duties and will be still prevented for a long time to come.

**NINETY THIRD:**

That by reason of the foregoing plaintiff, Sonia Urriola has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## FRAUDULENT CONCEALMENT WARRANTY

**NINETY FOURTH:**

That the plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the complaint set forth in paragraph "FIRST" through "NINETY THIRD" with the same force and effect as those said allegations were herein fully set forth at length.

**NINETY FIFTH:**

That at all times during the course of dealings between the defendants and the injured plaintiff the defendants misrepresented that the product was safe for its intended use.

**NINETY SIXTH:**

The defendants knew that the representations were false as the defendants knew that there were problems with the Contak Renewal Model H179 and/or components thereof malfunctioning prior to implantation and/or injury.

**NINETY SEVENTH:**

That in representations to plaintiff and by withholding defect information from the FDA, thus preventing regulation, the defendants fraudulently concealed and intentionally omitted the aforesaid material information and that the product was not safe for use and was susceptible to malfunction; that the defendants were aware of the products danger and that the product was defective and that the defect caused malfunction that rendered the device useless for a period of time with the potential to cause death and severe injury and emotional distress and that the product was manufactured and designed negligently and that the product was manufactured and designed defectively and that the product was manufactured and designed improperly.

**NINETY EIGHTH:**

The defendants were under a duty to disclose to injured patients and their physicians, hospitals and medical providers the defective nature of their product and/or risks and dangers associated with it.

**NINETY NINTH:**

That the defendants had sole access to material facts concerning the defective nature of the product and the defect and the propensity to malfunction and cause serious and dangerous side effects including infection, and hence cause damage to the injured plaintiff.

**ONE HUNDREDTH:**

That the defendants' concealment and omission of material facts concerning the safety of the product were made purposely, willfully, wantonly, and/or recklessly to mislead injured patients and their physicians, hospital and medical providers into reliance, continued use of this product and actions thereon and to cause them to purchase this product and/or have them implanted.

**ONE HUNDRED FIRST:**

That the defendants knew that the patients, and in particular the plaintiff herein, and their physician, hospitals, medical providers had no way of determining the truth behind defendants' concealment and omissions and that these included material omissions of facts surrounding the product.

**ONE HUNDRED SECOND:**

Injured plaintiff, Sonia Urriola, as well as her doctors, health care providers and/or hospitals reasonably relied on defendants concealment and/or misstatement of fact.

**ONE HUNDRED THIRD:**

As a direct and proximate result of defendants malicious, reckless and/or negligent conduct the plaintiff, Sonia Urriola, suffered significant injuries that upon information and belief are permanent, and has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A EIGHTH CAUSE OF ACTION TO RECOVER MONETARY DAMAGES FROM THE DEFENDANTS UNDER A THEORY OF DEPARTURE FROM ACCEPTED MEDICAL PRACTICE ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA

**ONE HUNDRED FOURTH:**

That the Plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "ONE HUNDRED THIRD", with the same force and effect as though said allegations were here and fully set forth at length.

**ONE HUNDRED FIFTH:**

That at all times mentioned herein, the defendant MICHAEL LIOU, M.D., hereinafter referred to as "LIOU", maintained offices for the practice of medicine within the County of New York, City and State of New York.

**ONE HUNDRED SIXTH:**

That at all times mentioned herein, the defendant "LIOU" held himself out to the general public and more particularly to the plaintiff herein as a duly qualified and/or licensed physician and/or surgeon capable of practicing medicine and/or surgery within the State of New York.

**ONE HUNDRED SEVENTH:**

That at all times mentioned herein the defendant "LIOU", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services,

radiology services, laboratory services, pharmacy services, diagnostic and treatment services, surgical services including pre operative and post operative services, anesthesia services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein, and further held himself out to such individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED EIGHTH:**

At all times mentioned herein, the defendant BETH ISRAEL MEDICAL CENTER, hereinafter referred to as "BIMC" was and still is a corporation, duly existing pursuant to the laws of the State of New York, and doing business within the County of New York, City and State of New York.

**ONE HUNDRED NINTH:**

That at all times mentioned herein, the defendant "BIMC" owned, operated, supervised, maintained, and/or controlled certain premises within the County of New York, City and State of New York, for the care of sick and ailing persons, and for other individuals requiring medical care and attention, including the plaintiff herein.

**ONE HUNDRED TENTH:**

That at all times mentioned herein, the defendant "BIMC", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services, radiology services, laboratory services, pharmacy services, diagnostic and treatment services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein and further held itself out to such

individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED ELEVENTH:**

At all times mentioned herein, the defendant BETH ISRAEL MEDICAL CENTER PHILLIPS AMBULATORY CARE CENTER, hereinafter referred to as "BIMC-PHILLIPS" was and still is a corporation, duly existing pursuant to the laws of the State of New York, and doing business within the County of New York, City and State of New York.

**ONE HUNDRED TWELFTH:**

That at all times mentioned herein, the defendant "BIMC-PHILLIPS" owned, operated, supervised, maintained, and/or controlled certain premises within the County of New York, City and State of New York, for the care of sick and ailing persons, and for other individuals requiring medical care and attention, including the plaintiff herein.

**ONE HUNDRED THIRTEENTH:**

That at all times mentioned herein, the defendant "BIMC-PHILLIPS", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services, radiology services, laboratory services, pharmacy services, diagnostic and treatment services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein and further held itself out to such individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED FOURTEENTH:**

That in reliance upon the foregoing, the plaintiff, Sonia Urriola, during a continuous course

of treatment beginning on or about November 4, 2004 and ending on or about June 29, 2007 came

under and/or submitted to the care and attention of the defendants LIOU, BIMC and BIMC-

PHILLIPS.

**ONE HUNDRED FIFTEENTH:**

That at all times mentioned herein the plaintiff, Sonia Urriola, submitted to various tests,

examinations, procedures, treatments and techniques, both oral and physical, performed by or at the

special instance and request of the defendants and/or each of them, their agents, servants, associates,

employees, and/or partners.

**ONE HUNDRED SIXTEENTH:**

That at all times mentioned herein, the defendants, their agents, servants, associates, partners

and/or employees, were aware of or should have been aware of the results, import, findings and/or

consequences of this history, complaints, signs, symptoms, pains, sensation and occurrences being

experienced by the plaintiff, as well as the results, import, findings and/or consequences of the tests,

examinations, procedure, treatments and/or techniques performed on the plaintiff, by the said defen-

dants, their agents, servants, employees, associates and/or partners.

**ONE HUNDRED SEVENTEENTH:**

That in view of the foregoing, the course of treatment, advice, diagnosis, medical care and

attention, prescriptions, tests, examinations, studies, surgery, pre and post surgical care, procedures

and/or techniques given to and/or performed on the plaintiff by the defendants, their agents, servants,

associates, partners and/or employees was not in accord with the accepted standards of the proper

practice of medicine, which are generally recognized within the local, state or national community.

**ONE HUNDRED EIGHTEENTH:**

That the defendants LIOU, BIMC and BIMC-PHILLIPS and/or each of them, individually, jointly and/or concurrently, their agents, servants, associates, partners and/or employees, by acts of commission and omission were negligent, careless and reckless and departed from accepted practices in the following areas:

   a.   negligently, carelessly, and recklessly failed to properly monitor plaintiff after implanting a Contak Renewal 3HE, Model H179 in plaintiff;

   b.   negligently, carelessly and recklessly failed to remove a defective implantable cardiac defibrillator in a timely fashion;

   c.   failed and omitted to remove this device from the plaintiff's body before the device caused injury to plaintiff;

   d.   failed to use appropriate precautionary measures to avoid infection and injury in the plaintiff's body as a result of a defective and dangerous implantable cardiac defibrillator they inserted in plaintiff;

   e.   negligently, carelessly, and recklessly failed to attach appropriate significance to plaintiff's complaints of weakness;

   f.   negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of fatigue;

   g.   negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of difficulty walking;

   h.   negligently, carelessly and recklessly failed to attach appropriate significance to

plaintiff's complaints of difficulty climbing stairs;

i.    negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of weight gain;

j.    negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of atypical body aches;

k.    negligently, carelessly and recklessly failed and omitted to diagnose a massive fungal infection in plaintiff as a result of the Contak Renewal 3HE Model 179 ICD implanted in plaintiff;

l.    caused and/or allowed the plaintiff to develop a massive infection of the defective ICD implanted in her body;

m.    failed to maintain proper monitoring of plaintiff after being notified of the recall of the Contak Renewal 3HE Model H179 which was implanted in plaintiff;

n.    failed and omitted to inform the plaintiff of the dangers and risks as well as alternatives;

o.    failed and omitted to make a timely diagnosis of the plaintiff's condition;

p.    failed and omitted to perform proper and timely tests, examinations, procedures, studies, surgery, pre and post surgical care, and in general in giving medical care, attention, treatment and/or care to the plaintiff;

q.    failed and omitted to understand the clinical analysis, laboratory analysis, history, physical examination, complaints, pains, signs and/or symptoms so that a proper diagnosis could be made and/or a proper course of treatment given;

r.    failed and omitted to conform to the accepted standards of care and skill in giving

advice, treatment, anesthesiology, prescriptions, examinations, information, services,

surgery, pre and post surgical care, attention, studies, laboratory and radiological

examinations and/or facts to the plaintiff herein;

s.    failed and omitted to use their best judgment and reasonable care in their medical care,

attention, services, treatment, medication, diagnosis and other medical services

rendered on behalf of the plaintiff.

**ONE HUNDRED NINETEENTH:** .

That solely as a result of the negligence and/or medical malpractice of the defendants, and/or

each of them, their agents, servants, associates, partners and/or employees, and without any

negligence or culpable conduct on the part of the plaintiff contributing thereto, the plaintiff was

caused to sustain the injuries which are hereinafter referred to.

**ONE HUNDRED TWENTIETH:**

That as a result of the negligence and/or medical malpractice, as aforesaid, the plaintiff, Sonia

Urriola became, still is and for a long time to come will be sick, sore, lame, bruised, injured, and

wounded in and about the various parts of her head, neck, lungs, body, limbs and shoulders, both

internally and externally including various organs, functions of her body and including surrounding

muscles, tissues, arteries, veins, blood vessels, cells, and other parts of plaintiff's body and that

plaintiff also sustained psychological injuries and/or mental anguish and agony and was otherwise

injured and upon information and belief said injuries are permanent; that by reason of the foregoing

the plaintiff, Sonia Urriola as obliged to and did necessarily employ medical aid, medicinals, hospital

aid and other treatment in an attempt to cure herself of said injuries and has been prevented from

performing her duties and will be so prevented for a long time to come.

**ONE HUNDRED TWENTY FIRST:**

That by reason of the foregoing departures from accepted medical practice, the plaintiff, Sonia

Urriola, has been damaged by the defendants herein and seeks a monetary award and damages which

exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction over the

defendants herein.

**AS AND FOR A NINTH CAUSE OF ACTION TO RECOVER
MONETARY DAMAGES FROM THE DEFENDANT UNDER A
THEORY OF LACK OF INFORMED CONSENT ON BEHALF
OF THE PLAINTIFF, SONIA Urriola**

**ONE HUNDRED TWENTY SECOND:**

That the plaintiff, Sonia Urriola, repeats, reiterates, and realleges each and every allegation

of the Complaint, set forth in paragraphs "FIRST" through "ONE HUNDRED TWENTY FIRST"

with the same force and effect as though said allegations were herein fully set forth at length.

**ONE HUNDRED TWENTY THIRD:**

That at all times mentioned herein, the defendants LIOU, BIMC and BIMC-PHILLIPS, their

agents, servants, associates, partners, and/or employees negligently, carelessly and recklessly failed

and omitted to make an understandable disclosure to the plaintiff of the surgery, diagnostic

procedures, and/or invasive procedures, that said defendant was about to perform and/or did perform

including but not limited to the dangers and risks to the plaintiff's health and/or life, whether or not

the surgery, diagnostic procedure, or invasive procedures were ordinarily performed under the same

conditions, whether or not other or different operations and/or procedures, if any, are and were used,

and the manner in which the alternative operations and/or risks involved in the alternative operation

and/or procedure.

Page 36 of 41

**ONE HUNDRED TWENTY FOURTH:**

That had the defendants given accurate information disclosing the foregoing departures, risks, and/or alternatives, the plaintiff and/or a reasonably prudent person would have decided not to undergo the surgery, diagnostic procedure and/or invasive procedure at the time and under the circumstances then and there existing to the knowledge of the defendants.

**ONE HUNDRED TWENTY FIFTH:**

That the above described negligent failure and omission by the defendants to obtain a proper informed consent from the plaintiff led to various unauthorized invasions upon the plaintiff's body in the nature of unauthorized surgical procedures, diagnostic procedures and/or invasive procedures and that as such the defendants are responsible for the entire flow of damages and injury following said procedures.

**ONE HUNDRED TWENTY SIXTH:**

That as a result of the negligent failure and omission to obtain a proper informed consent, the plaintiff, Sonia Urriola, became, still is and for a long time to come will be sick, sore, lame, bruised, injured, and wounded in and about the various parts of her heart, lungs, his head, neck, abdomen, intestines, body and limbs, both internally and externally including various organs, functions of her body and including surrounding muscles, tissues, arteries, veins, blood vessels, cells, and other parts of plaintiff's body and that plaintiff also sustained psychological injuries and or mental anguish and agony and was otherwise injured and upon information and belief said injuries are permanent; that by reason of the foregoing the plaintiff, Sonia Urriola, was obliged to and did necessarily employ medical aid, medicinals, hospital aid and other treatment in an attempt to cure herself of said injuries and has been prevented from performing her duties and will be so prevented for a long time to come.

**ONE HUNDRED TWENTY SEVENTH:**

That as a result of the foregoing lack of informed consent the plaintiff, Sonia Urriola has been damaged by the defendants herein and seeks a monetary award and damages which exceed the jurisdictional limit of all lower Courts which would otherwise have jurisdiction over the defendants herein

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the First Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Second Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Third Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Fourth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Fifth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Sixth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Seventh Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Eighth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Ninth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action; and

*WHEREFORE*, plaintiff, SONIA URRIOLA, demands a monetary judgement in the form of damages against the defendants and/or each of them herein together with the costs and disbursements of this action.

Dated: Brooklyn, New York
       October 24   , 2007

I have read the foregoing and I certify that , upon information and belief, the source of which is the review of a file maintained by my office, that the foregoing is not frivolous as defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator.

ANDREA E. BONINA, ESQ.
BONINA & BONINA, P.C.
Attorneys for Plaintiff(s)
16 Court Street, Suite 1800
Brooklyn, New York 11241
(718) 522-1786

## STATEMENT PURSUANT TO CPLR SECTION 3012-a(2)

I am an attorney duly licensed to practice law in the State of New York. I was unable to obtain the consultation required by CPLR Section 3012-a(1) because the Statute of Limitations is to expire in the very near future and would bar the action. The Certificate of Merit required by CPLR Section 3012-a(1) could not reasonably be obtained before such time expired. The Certificate of Merit required shall be served within 90 days after service of the Complaint.

ANDREA E. BONINA, ESQ.

# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**SUMMONS**

-------------------------------------------------------------X

SONIA URRIOLA,

Index No.: 114306 /07
Date Purchased: 10/24/07

Plaintiffs,

Plaintiff designates New York
County as the place of trial.

-against-

The basis of venue is:
Plaintiff's Residence

GUIDANT CORPORATION, <u>GUIDANT SALES</u>
<u>CORPORATION</u>, BOSTON SCIENTIFIC CORPORATION,
MICHAEL LIOU, M.D., BETH ISRAEL MEDICAL
CENTER AND BETH ISRAEL MEDICAL CENTER
PHILIPS AMBULATORY CARE CENTER,

Plaintiff resides at:
126 East 3rd Street, Apt. 3A
New York, New York 10009

Defendants,

County of New York

-------------------------------------------------------------X

**To the above named Defendants:**

   **You are hereby summoned** to answer the complaint in this action, and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's attorneys within twenty days after the service of this summons,
exclusive of the day of service, where service is made by delivery upon you personally within the
state, or, within 30 days after completion of service where service is made in any other manner.
In case of your failure to appear or answer, judgment will be taken against you by default for the
relief demanded in the complaint.

Dated: Brooklyn, NY
        October  24  , 2007

ANDREA E. BONINA, ESQ.
BONINA & BONINA, P.C.
Attorneys for Plaintiff - SONIA URRIOLA
16 Court Street, Suite 1800
Brooklyn, New York 11241
(718) 522-1786

ORIGINAL SUMMONS AND VERIFIED COMPLAINT FILED ON OCTOBER _____, 2007.

NEW YORK
COUNTY CLERK'S OFFICE

OCT 2 4 2007

NOT COMPARED
WITH COPY FILE

TO:

Dr. Michael Liou
c/o Beth Isreal Medical Center
10 Union Square East, Suite 2A
Phillips Ambulatory Care Center
New York, New York 10003

Beth Isreal Medical Center
307 First Avenue
New York, New York 10003

Beth Israel Medical Center - Phillips Ambulatory
10 Union Square East, Suite 2A
New York, New York 10003

Boston Scientific Co.
c/o Corporation Service Company
Albany, New York 12207

Guidant Sales Corporation
111 Monument Circle, #2900
Indianapolis Indiana 46204
Attention: Viki Williams

Guidant Sales Corporation
Corporation Service Company
80 State Street
Albany, New York 12207

Guidant
4100 Hamline Avenue North
St. Paul, Minnesota 55112

# COMPLETE THIS STUB

Endorse This INDEX NUMBER ON All Papers and advise your adversary of the number assigned. Sec. 202.5, Uniform Rules Of Trial Courts

DO NOT DETACH

Title of Action or Proceeding to be TYPED or PRINTED by applicant
**SUPREME COURT, NEW YORK COUNTY**

V.

**INDEX NUMBER FEE
$210.00**

07114306

```
              RECEIPT
        NEW YORK COUNTY CLERK
           60 CENTRE STREET
          NEW YORK, NY 10007
               R141


DEPARTMENT                    AMOUNT
--------                      ------
1 GEN                         165.00
7 SURCHARGE                    45.00

TOTAL           210.00
CHECK                         210.00
----------------------------------
CONS  CASHIER    DATE    TIME    TERM
28746  1235   07 OCT 24 1:36 PM  41-2
```

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
SONIA URRIOLA,

|  | |
|---|---|
| Plaintiffs, | **VERIFIED COMPLAINT** |

-against-

Index No.: 114306    /07

GUIDANT CORPORATION, GUIDANT SALES
CORPORATION, BOSTON SCIENTIFIC
CORPORATION, MICHAEL LIOU, M.D., BETH
ISRAEL MEDICAL CENTER AND BETH ISRAEL
MEDICAL CENTER PHILIPS AMBULATORY CARE
CENTER,

Defendants,
------------------------------------------------------------------X

Plaintiffs, by and through their attorneys, Bonina & Bonina, P.C., complaining of the

defendants herein, as and for their Verified Complaint in the above entitled action, respectfully show

to this Court and allege upon information and belief as follows:

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF SONIA URRIOLA TO RECOVER MONETARY DAMAGES FROM THE DEFENDANTS UNDER A THEORY OF DEFECT IN DESIGN

**FIRST:**

That prior to service of this Summons & Complaint and on the 24th day of October 2007,

plaintiffs have purchased Index No._____/07 from the Supreme Court of the State of

New York, County of New York, in accordance with the requirements of the CPLR.

**SECOND:**

That this action falls within one or more exceptions set forth in CPLR §1602.

Page 1 of 41

**THIRD:**

Plaintiffs demand a trial by jury.

**FOURTH:**

That all times mentioned herein, plaintiff, Sonia Urriola, is, was, and has been a resident of the County of New York, City and State of New York.

**FIFTH:**

That at all times mentioned herein, Defendant Guidant, (hereinafter Guidant) is a foreign corporation with its principal place of business in a state other than New York.

**SIXTH:**

Defendant Guidant manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model number H179.

**SEVENTH:**

That at all times herein mentioned, the Defendant Guidant, was and still is a foreign corporation duly authorized to do business in the State of New York.

**EIGHTH:**

That at all times mentioned herein, Defendant Guidant, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**NINTH:**

That at all times mentioned herein, Defendant Guidant Sales Corporation, (hereinafter Guidant Sales) is a foreign corporation with its principal place of business in a state other than New York.

**TENTH:**

Defendant Guidant Sales manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain implantable Cardiac Resynchronization Therapy - Defibrillators (CRT-D) and including the Contak Renewal 3HE Model number H179.

**ELEVENTH:**

That at all times herein mentioned, the Defendant Guidant Sales, was and still is a foreign corporation duly authorized to do business in the State of New York.

**TWELFTH:**

That at all times mentioned herein, Defendant Guidant Sales, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**THIRTEENTH:**

That at all times mentioned herein, defendant Boston Scientific Corporation (hereinafter Boston) is a corporation incorporated pursuant to the laws of the State of Delaware and has its principal place of business in Massachusetts.

**FOURTEENTH:**

Defendant Boston manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 4HE Model number H179.

**FIFTEENTH:**

That at all times mentioned herein, the Defendant Boston, was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

**SIXTEENTH:**

That at all times mentioned herein, the Defendant Boston, was and still is a foreign corporation duly authorized to do business in the State of New York.

**SEVENTEENTH:**

That at all times mentioned herein, Defendant Boston, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**EIGHTEENTH:**

That at all times mentioned herein Defendant Boston, is, was and has been a limited partnership or limited liability company duly organized under and existing by virtue of the laws of the State of New York.

**NINETEENTH:**

That upon information and belief the defendant Boston has acquired or merged with the defendant Guidant and/or defendant Guidant Sales and is a successor in interest to all claims articulated herein and stated against defendants Guidant and Guidant Sales.

**TWENTIETH:**

At all times, defendants were engaged in the business of manufacturing, selling, distributing, promoting, designing and testing Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179.

**TWENTY FIRST:**

Each defendant placed the Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179, into the stream of commerce and derived substantial benefits from this product which was sold for profit in the State of New York by the

defendants, their agents, servants, associates, subsidiaries, partners and/or employees.

**TWENTY SECOND:**

At all times hereinafter mentioned all of the above named defendants regularly did and/or

transacted and/or solicited business in the State of New York or were engaged in other persistent

courses of conduct or derived substantial revenue from goods used or consumed or services rendered

in the State of New York.

**TWENTY THIRD:**

That at all times mentioned herein the defendants expected or should have reasonably

expected its acts to have consequences within the State of New York, and derived and continues to

derive substantial revenue from Interstate and International Commerce.

**TWENTY FOURTH:**

That at all times mentioned herein, defendants held themselves out to the general public, and

more particularly to the plaintiff herein, as duly qualified and/or capable of manufacturing designing,

testing, distributing, promoting and/or selling safe and proper implantable medical devices, including

but not limited to the Contak Renewal 3HE Model H179 within the State of New York.

**TWENTY FIFTH:**

That at all times mentioned herein, the defendants for consideration held themselves out as

distributing, manufacturing, designing and selling proper, adequate and safe implantable medical

devices, namely the Contak Renewal 3HE Model H179 to members of the general public and more

particularly plaintiff herein, and further held themselves out to such individuals as having the

necessary skills, expertise, training, and/or personnel, equipment and supplies to perform the same

up to the standards of such care prevalent within the Local, State, and National Community.

**TWENTY SIXTH:**

At all times mentioned herein, defendants themselves, or by use of others did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, advertise, warn, and otherwise distribute in interstate commerce the Contak Renewal 3HE Model H179.

**TWENTY SEVENTH:**

The Contak Renewal 3HE Model H179 was widely advertised by the defendants in the State of New York and throughout the United States for use by persons with irregular cardiac rhythms.

**TWENTY EIGHTH:**

Upon information and belief the defendant manufactured an implantable device named the Contak Renewal 3HE Model H179, which was designed, manufactured, marketed, tested, distributed and sold for profit in the State of New York by one or more of the defendants herein.

**TWENTY NINTH:**

At all times relevant herein, the defendants were engaged in the business of manufacturing, marketing, promoting, selling, distributing and placing in the stream of commerce an implantable cardiac defibrillator device known as the Contak Renewal 3HE Model H179. Upon information and belief each defendant engaged in advertising and promotional activity which indicated its product was efficacious and safe to use and, that based upon the defendants promotional activity with respect to the aforesaid product, said product was implanted into the plaintiff's body based upon the belief that the same was safe to use and was unlikely to subject the plaintiff to any serious danger or injury as a result of the use of the product.

**THIRTIETH:**

That the aforesaid Product was and is sold to hospitals and physicians for implantation into patients who are at risk for having life threatening arrhythmia's as a result of electro physiological changes in the hearts rhythms resulting in a change in heart rhythm, which are life threatening if the patient does not receive an electrical shock from an appropriate device.

**THIRTY FIRST:**

Defendant's aforesaid Product contains wires, called leads, inserted through blood vessels and attached to the heart to detect irregularity in the hearts rhythm and to deliver an electrical shock to prevent or terminate an arrhythmia.

**THIRTY SECOND:**

In on or about November 4, 2004, the plaintiff Sonia Urriola underwent surgery for the implantation of a Guidant Contak Renewal 3HE Model H179 cardiac defibrillator with serial number 504858.

**THIRTY THIRD:**

Upon information and belief, the Guidant Contak Renewal 3HE Model H179 was manufactured, promoted, and marketed by the defendants, and/or each of them, as a safe medical device that would be beneficial for cardiac patients at risk for arrhythmia.

**THIRTY FOURTH:**

Upon information and belief, defendants and/or each of them were in control of the design, manufacture testing, labeling, warning, product information, packaging, promoting, assembly, manufacture, marketing, distribution and/or sales the aforementioned implantable cardiac defibrillator.

**THIRTY FIFTH:**

Defendants made filings with the United States Food and Drug Administration (hereinafter referred to as FDA) in conjunction with the approval process for the Contak Renewal 3HE Model H179.

**THIRTY SIXTH:**

Defendants promoted the Guidant Contak Renewal 3HE Model 179 as a therapy to reduce the risk of hospitalization or death and as a device that could relieve symptoms associated with heart failure, including shortness of breath and fatigue.

**THIRTY SEVENTH:**

That said Contak Renewal 3HE Model H179 came equipped with certain standard equipment, including, among other things, certain wires and/or leads which were improperly and/or inadequately insulated.

**THIRTY EIGHTH:**

That said Contak Renewal 3HE Model H179, came equipped with certain standard equipment, including, among other things, certain and/or switches which were improperly and/or inadequately manufactured and were prone to stitching.

**THIRTY NINTH:**

That the Contak Renewal 3HE Model 179 came equipped with certain standard equipment including among other things, low voltage capacitators which were subject to degradation.

**FORTIETH:**

That said wires and/or leads and/or seals and/or low voltage capacitators were an integral and inherent part of the safety equipment of the above referenced Contak Renewal 3HE Model H179, the

purpose of which was to provide proper protection to the ordinary and foreseeable users and consumers of said device.

**FORTY FIRST:**

Sonia Urriola had a Guidant Contak Renewal 3HE Model 179 Serial number 504858 implanted on or about November 4, 2004 and it remained implanted until on or about June 29, 2007.

**FORTY SECOND:**

Subsequent to having the Guidant Contak Renewal 4HE Model 179 implanted plaintiff, Sonia Urriola, suffered from physical and emotional injuries and severely diminished quality of life and life expectancy and was caused to and will be caused to expend sums of money for medical care and monitoring.

**FORTY THIRD:**

The product warnings in effect between October 2005 and June 2007 were both substantially and wholly inadequate to alert prescribing physicians and consumer patients of the risk of injury and infection associated with the Guidant Contak Renewal 3HE Model H179 which were then known to the defendants.

**FORTY FOURTH:**

Defendants had a duty to exercise reasonable care in the design manufacture, testing, clinical trials, compiling of product information, submission of product information to FDA, pre- and post-marketing testing, sale, marketing and/or distribution of Guidant Contak Renewal 3HE Model H179 into the stream of commerce, including a duty to insure the product did not cause users to suffer from unreasonable and dangerous side effects and injuries as a result of having the product implanted.

**FORTY FIFTH:**

Defendants failed to exercise ordinary care in the manufacturing, selling, testing, quality assurance, quality control and/or distribution of Guidant Contak Renewal 3HE Model 179 into interstate commerce in that defendants knew or reasonably should have known that the product created an increased risk for unreasonable dangerous side effects some of which could only be alleviated by invasive and/or surgical procedures, and some of which can be fatal.

**FORTY SIXTH:**

Defendants and/or each of them, and/or their agents, servants, subsidiaries, partners, associates and employees, acted negligently, carelessly and recklessly, and in willful and wanton disregard for the health, life and safety of their consumers and the public, with respect to their distribution, manufacture, testing, marketing, advertising, and sale of the Contak Renewal 3HE Model H179 in the following ways:

    a.    Negligently, carelessly and recklessly manufactured, constructed, engineered, inspected, marketed, tested, and sold implantable cardiac devices that included a seal that leaked allowing moisture to damage electrical components;

    b.    Negligently, carelessly and recklessly designed, constructed, engineered, inspected, marketed, tested and sold implantable cardiac devices that included a seal that stuck allowing moisture to damage electrical components;

    c.    Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant injury;

    d.    Failed to adequately and timely advise consumers and healthcare providers of the

dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant life threatening infections;

e.  Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators, including the Contak Renewal 3HE Model 179, that had leads and/or wires that were not properly insulated;

f.  Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators that had inadequate insulation material on the leads and/or the wires causing these parts of the Contak Renewal 3HE Model H179 to have an increased risk of degradation;

g.  Manufactured, constructed, engineered, inspected, distributed, marketed, tested and sold implantable cardiac defibrillators which were a significant risk of injury to consumers, and in particular to the plaintiff herein;

h.  Knew or reasonably should have known of the potential serious side effects, including but not limited to infection and surgical intervention, and failed to properly investigate and research these issues in clinical trials;

i.  Knew or reasonably of should have known of the potential serious side effects including but not limited to infection and the need for surgical intervention and failed to properly investigate and perform/post sale and adequate post marketing follow up studies;

j.  Failed and omitted to provide adequate information to medical professionals regarding the risks associated with the implantation of Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179;

Page 11 of 41

k.  Failed and/or omitted to inform medical professionals of the significant risk of infection as a result of degradation of the leads/wires;

l.  Manufactured, constructed, distributed, marketed, inspected, tested, and sold a implantable cardiac defibrillator which was unsafe and unfit for its reasonable, ordinary and foreseeable uses;

m.  Caused, allowed and permitted a dangerous defective and unsuitable product to be marketed to the medical profession for use in patients who were medically dependent upon a properly working defibrillator;

n.  Failed to adequately warn members of the medical profession of the risks and dangers inherent in the insertion and use of the Contak Renewal 3HE implantable cardiac defibrillator Model 179;

o.  Failed and/or omitted to properly test the device to determine its effectiveness, and the effectiveness of the insulation on the leads/wires;

p.  Failed and/or omitted to properly instruct members of the medical profession as to the proper manner of testing the device, as well as the proper methods of monitoring patients for defects in the device;

q.  Failed and omitted to properly design, manufacture, assemble, sell, distribute and promote a product that members of the public, including the plaintiff herein, relied upon to sustain life;

r.  Failed and omitted to exercise reasonable and ordinary care and due diligence in ascertaining the defective condition and improper design and manufacturing defects in the Contak Renewal 3E Model H179 implantable cardiac defibrillator;

Page 12 of 41

s.    Failed and omitted to protect the public interest and more particularly that of the plaintiff herein;

t.    Manufactured, distributed, engineered, delivered, sold and marketed an implantable cardiac defibrillator which was inherently dangerous to the life and health of the public, its intended and foreseeable users and more particularly to the plaintiff herein;

u.    Failed and omitted to adopt and enforce proper inspection and testing techniques procedures and protocols on each and every cardiac defibrillator designed, manufactured, constructed, engineered, assembled, sold and distributed including the Contak Renewal 3HE Model H179;

v.    Failed and omitted to properly and adequately notify members of the medical profession regarding the defects present in the Contak Renewal 3HE Model H179 cardiac defibrillator; and

w.    Failed and omitted to institute proper, adequate and timely recall procedures.

**FORTY SEVENTH:**

As a result of defendants' defectively designed Cardiac Resynchronization Therapy - Defibrillators (CRT-D), plaintiff required surgery and extensive rehabilitation and suffered serious infection as a result of the Contak Renewal 3HE Model H179.

**FORTY EIGHTH:**

As a result of the above referenced conduct of the defendants and/or their subsidiaries, successors and interests, divisions, agents, servants, associates, partners and/or employees, the plaintiff Sonia Urriola was caused to suffer a significant and life threatening infection which required the removal of her implantable cardiac defibrillator as well as extensive hospitalization thereafter, and

she became and still is, and for a long time to come, will be sick, sore, lame, bruised, injured, wounded, and disabled in the various parts of her head, body, and plaintiff otherwise sustains psychological injuries, and upon information and belief all the aforementioned injuries are permanent. By reason of the foregoing the plaintiff, Sonia Urriola was obliged to and did necessarily employ hospital aid, medical aid, medicinals, surgical intervention, rehabilitation services and medical supplies in an attempt to cure herself of her injuries, and she has been prevented from performing her usual duties and will be so prevented for a long time to come.

**FORTY NINTH:**

That the plaintiff is not seeking to recover any damages for which plaintiff has been reimbursed by insurance or other applicable coverage. Plaintiff is only seeking to recover those damages not recoverable through insurance and/or other applicable coverage under the facts and circumstances in this action.

**FIFTIETH:**

That as a result of the aforementioned, the plaintiff Sonia Urriola, has been damaged in an amount exceeding all jurisdictional limits of the lower Courts.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY OF STRICT PRODUCTS LIABILITY FOR A DEFECT IN MANUFACTURE

**FIFTY FIRST:**

That the Plaintiff, SONIA URRIOLA, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "FIFTIETH", with the same force and effect as though said allegations were here and fully set forth at length.

**FIFTY SECOND:**

That reasonable reliance upon the proper function of said Contak Renewal 3HE Model H179 device, the plaintiff, Sonia Urriola had said Contak Renewal 3HE Model H179 implanted on or about November 4, 2004.

**FIFTY THIRD:**

That, while the plaintiff had said device implanted as aforesaid, said device caused serious and severe injuries to the Plaintiff herein, including but not limited to massive fungal infection.

**FIFTY FOURTH:**

That, upon information and belief, the happening of the occurrence as aforesaid was the result of defects in manufacture, which caused the Plaintiff to suffer and sustain serious and severe injuries.

**FIFTY FIFTH:**

That, at all times mention herein, the Defendants knew and/or reasonably should have known the intended use to which said Contak Renewal 3HE Model H179 and its appurtenances would be put, and that the general public, and more particularly the Plaintiff herein, would be involved in said uses.

**FIFTY SIXTH:**

That, at all times mentioned herein, the Defendants and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, failed to exercise the proper and reasonable degree of care in the manufacturing, assembling, sterilizing, engineering, and insertion of the Contak Renewal 3HE Model H179, causing said Contak Renewal 3HE Model H179 to be dangerously defective, and not reasonably safe for its ordinary, intended and foreseeable purposes.

**FIFTY SEVENTH:**

Defendants and/or each of them, and/or their agents, servants, partners, associates and employees, acted negligently, carelessly and recklessly, and in willful and wanton disregard for the health, life and safety of their consumers and the public, with respect to their distribution, manufacture, testing, marketing, advertising, and sale of the Contak Renewal 3HE Model H179 in the following ways:

a.   Negligently, carelessly and recklessly manufactured, constructed, engineered, inspected, marketed, tested, and sold implantable cardiac devices that included a seal that leaked allowing moisture to damage electrical components;

b.   Negligently, carelessly and recklessly designed, constructed, engineered, inspected, marketed, tested and sold implantable cardiac devices that included a seal that stuck allowing moisture to damage electrical components;

c.   Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant injury;

d.   Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant life threatening infections;

e.   Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators, including the Contak Renewal 3HE Model 179, that had leads and/or wires that were not properly insulated;

f.   Manufactured, constructed, engineered, inspected, marketed, tested and sold

implantable cardiac defibrillators that had inadequate insulation material on the leads and/or the wires causing these parts of the Contak Renewal 3HE Model H179 to have an increased risk of degradation;

g.   Manufactured, constructed, engineered, inspected, distributed, marketed, tested and sold implantable cardiac defibrillators which were a significant risk of injury to consumers, and in particular to the plaintiff herein;

h.   Knew or reasonably should have known of the potential serious side effects, including but not limited to infection and surgical intervention, and failed to properly investigate and research these issues in clinical trials;

i.   Knew or reasonably should have known of the potential serious side effects including but not limited to infection and the need for surgical intervention and failed to properly investigate and perform/post sale and adequate post marketing follow up studies;

j.   Failed and omitted to provide adequate information to medical professionals regarding the risks associated with the implantation of Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179;

k.   Failed and/or omitted to inform medical professionals of the significant risk of infection as a result of degradation of the leads/wires;

l.   Manufactured, constructed, distributed, marketed, inspected, tested, and sold a implantable cardiac defibrillator which was unsafe and unfit for its reasonable, ordinary and foreseeable uses;

m.   Caused, allowed and permitted a dangerous defective and unsuitable product to be

marketed to the medical profession for use in patients who were medically dependent upon a properly working defibrillator;

n.  Failed to adequately warn members of the medical profession of the risks and dangers inherent in the insertion and use of the Contak Renewal 3HE implantable cardiac defibrillator Model 179;

o.  Failed and/or omitted to properly test the device to determine its effectiveness, and the effectiveness of the insulation on the leads/wires;

p.  Failed and/or omitted to properly instruct members of the medical profession as to the proper manner of testing the device, as well as the proper methods of monitoring patients for defects in the device;

q.  Failed and omitted to properly design, manufacture, assemble, sell, distribute and promote a product that members of the public, including the plaintiff herein, relied upon to sustain life;

r.  Failed and omitted to exercise reasonable and ordinary care and due diligence in ascertaining the defective condition and improper design and manufacturing defects in the Contak Renewal 3E Model H179 implantable cardiac defibrillator;

s.  Failed and omitted to protect the public interest and more particularly that of the plaintiff herein;

t.  Manufactured, distributed, engineered, delivered, sold and marketed an implantable cardiac defibrillator which was inherently dangerous to the life and health of the public, its intended and foreseeable users and more particularly to the plaintiff herein;

u.  Failed and omitted to adopt and enforce proper inspection and testing techniques,

procedures and protocols on each and every cardiac defibrillator designed, manufactured, constructed, engineered, assembled, sold and distributed including the Contak Renewal 3HE Model H179;

v.    Failed and omitted to properly and adequately notify members of the medical profession regarding the defects present in the Contak Renewal 3HE Model H179 cardiac defibrillator; and

w.    Failed and omitted to institute proper, adequately and timely recall procedures.

**FIFTY EIGHTH:**

That as a result of the above referenced conduct of the Defendant, and/or its subsidiaries, divisions, successors in interest, agents, servants, associates, partners, and/or employees, the Plaintiff, Sonia Urriola, was caused to suffer a massive fungal infection requiring removal of the device and surgical interventions and became, still is, and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her body and said plaintiff otherwise sustained psychological injuries, and upon information and belief said injuries are permanent, that by reason of the foregoing, the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals, and medical supplies in an attempt to cure herself of said injuries, and has been prevented from performing her usual duties and will be so prevented for a long time to come.

**FIFTY NINTH:**

That by reason of the foregoing, the Plaintiff, Sonia Urriola, has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF
## THE PLAINTIFF, SONIA URRIOLA, BASED UPON A
## THEORY OF NEGLIGENCE

**SIXTIETH:**

That the Plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "FIFTY EIGHTH", with the same force and effect as though said allegations were herein fully set forth at length.

**SIXTY FIRST:**

That on or about June 29, 2007 as a result of the insertion of Contak Renewal 3HE Model 179, the Plaintiff, Sonia Urriola, was caused to suffer a massive fungal infection requiring removal of the device and resulting in serious and severe injuries.

**SIXTY SECOND:**

That the aforementioned occurrence was caused wholly and exclusively as a result of the negligence, carelessness and recklessness of Defendants, and/or Defendants' divisions, successors in interest, subsidiaries, agents, servants, associates, partners, and/or employees without any negligence or culpable conduct on the part of the Plaintiff, Sonia Urriola, contributing thereto.

**SIXTY THIRD:**

That Defendants, and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, actually and/or reasonably knew or should have known at the time of the design and/or manufacture of the aforesaid Contak Renewal 3HE Model H179, that said device was dangerously defective, hazardous, unsafe, dangerous, and posed certain dangers and it was unfit for its ordinary, normal and foreseeable usages by intended users and/or operators.

**SIXTY FOURTH:**

That, upon information and belief, the happening of the occurrence as aforesaid was the result of the negligence, carelessness and recklessness of defendants, and/or each of them which caused the Plaintiff to suffer and sustain serious and severe injuries.

**SIXTY FIFTH:**

That, at all times mention herein, the Defendants knew and/or reasonably should have known the intended use to which said Contak Renewal 3HE Model 179 and its appurtenances would be put, and that the general public, and more particularly the Plaintiff herein, would be involved in said uses.

**SIXTY SIXTH:**

That, at all times mentioned herein, the Defendants and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, failed to exercise the proper and reasonable degree of care in the manufacturing, assembling, engineering, and inserting of the Contak Renewal 3HE Model 179, causing said Contak Renewal 3HE Model 179 to be dangerously defective, and not reasonably safe for its ordinary, intended and foreseeable purposes.

**SIXTY SEVENTH:**

That as a result of the above referenced conduct of the Defendants, and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, the Plaintiff, Sonia Urriola, was caused to suffer injuries and became, still is, and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her head, body, fingers, limbs, extremities, and hands, and said Plaintiff otherwise sustained psychological injuries, and upon information and belief said injuries are permanent, that by reason of the foregoing, the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals and medical

Page 21 of 41

supplies in an attempt to cure himself of said injuries, and has been prevented from performing his

usual duties and will be so prevented for a long time to come.

**SIXTY EIGHTH:**

That by reason of the foregoing, the Plaintiff, Sonia Urriola, has been damaged in a sum

exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF
## OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY
## OF BREACH OF EXPRESS WARRANTY

**SIXTY NINTH:**

That the plaintiff, Sonia Urriola repeats, reiterates and realleges each and every allegation

of the Complaints set forth in paragraphs numbered "FIRST" through "SIXTY EIGHTH", with

the same force and effect as though said allegations were herein and fully set forth at length.

**SEVENTIETH:**

Defendants expressly warranted to the plaintiff that the product which they designed,

developed, manufactured and sold was of a merchantable quality, fit, safe and otherwise beneficial

to the plaintiff's health and well being and that it would improve the quality of plaintiff's life.

**SEVENTY FIRST:**

Defendants' representations formed a part of the basis of the bargain and plaintiff, Sonia

Urriola relied upon said representations in deciding to have the product implanted.

**SEVENTY SECOND:**

That the product implanted in the plaintiff was unsafe, unmerchantable, unfit for use in the

body, and otherwise injurious to the plaintiff, Sonia Urriola and did not operate as represented.

**SEVENTY THIRD:**

Through the sale of the product, the defendants and/or each of them are merchants pursuant to Section 2-314 of the Uniform Commercial Code.

**SEVENTY FOURTH:**

Defendants breached the express warranty of merchantability in sale of the product to Sonia Urriola and said products was not fit for its ordinary purpose as described above.

**SEVENTY FIFTH:**

As a direct and proximate cause of the defendants breach of their express warranties described herein, the plaintiff, Sonia Urriola suffered an injury as alleged herein above.

**SEVENTY SIXTH:**

That by reason of the foregoing the plaintiff, Sonia Urriola has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY OF BREACH OF IMPLIED WARRANTY

**SEVENTY SEVENTH:**

Plaintiff repeats, reiterates and realleges each and every allegation of the complaint set forth in paragraphs "FIRST" through "SEVENTY SIXTH" with the same force and effect as those said allegations were herein fully set forth at length.

**SEVENTY EIGHTH:**

Defendants, and/or each of them, are in the business of manufacturing and/or supplying and/or placing into the stream of commerce for consumers implantable cardiac devices known as the Contak Renewal 3HE Model H179.

**SEVENTY NINTH:**

By placing the product into the stream of commerce, said defendants impliedly warranted that the product was of merchantable quality, and was fit and safe for its intended use and was fit for the particular purpose of protecting the plaintiff, Sonia Urriola from cardiac arrhythmia.

**EIGHTIETH:**

That the product was placed into the stream of commerce by said defendants and was unmerchantable, was not fit and was not safe for its intended use and not fit for the particular purpose intended.

**EIGHTY FIRST:**

That the defects in the product manufactured and/or supplied by the defendants were present at the time that the product left the hands of the defendants.

**EIGHTY SECOND:**

As a result, the defendants breached implied warranties for the product because said product was defective, unmerchantable, and not fit for its intended particular purpose.

**EIGHTY THIRD:**

The plaintiff Sonia Urriola was a foreseeable user of the product herein, and as a direct and proximate cause of the defendants' breach of implied warranty, she sustained serious, life threatening injuries.

**EIGHTY FOURTH:**

That by reason of the foregoing plaintiff Sonia Urriola damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## FRAUDULENT MISREPRESENTATION

**EIGHTY FIFTH:**

That the plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of

the complaint set forth in paragraph "FIRST" through "EIGHTY FOURTH" with the same force

and effect as those said allegations were herein fully set forth at length.

**EIGHTY SIXTH:**

That the defendants fraudulently and falsely represented to the medical community and to the

plaintiff herein that their product had been tested and found to be safe and effective for patients with

heart disease.

**EIGHTY SEVENTH:**

That the representations made by the defendants were in fact false.

**EIGHTY EIGHTH:**

That when said representations were made by the defendants that they knew those

representations to be false and/or willfully, wantonly  and recklessly disregarded whether the

representations were true.

**EIGHTY NINTH:**

That these representations were made by the defendants and/or their successors in interest

and/or each of them with the intent of defrauding and deceiving the plaintiff and the public in general

and the medical community in particular to recommend, dispense and purchase the product all of

which evidences callous, reckless, willful and depraved in difference to the health and safety and

welfare of the injured plaintiff.

**NINETIETH:**

At the time that the aforesaid representations were made by the defendant that the injured plaintiff was unaware of the falsity of said representations and reasonably believe them to be true.

**NINETY FIRST:**

In reliance upon said representations the injured plaintiff was induced to and did have the product surgically implanted and thereafter sustained injury and damages as a result of the unsafe product.

**NINETY SECOND:**

That as a result of the defendant malicious, reckless and/or negligent conduct, the plaintiff Sonia Urriola was caused to suffer significant injuries and became and still is and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her body and that said plaintiff sustains psychological injuries and upon information and belief said injuries are permanent. By reason of the foregoing the plaintiff, Sonia Urriola was obliged to and unnecessarily did employ hospital aid, surgical intervention, medical aid, rehabilitation services and medical supplies in an attempt to cure herself of said injuries and has been prevented from performing her usual duties and will be still prevented for a long time to come.

**NINETY THIRD:**

That by reason of the foregoing plaintiff, Sonia Urriola has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## FRAUDULENT CONCEALMENT WARRANTY

**NINETY FOURTH:**

That the plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of

the complaint set forth in paragraph "FIRST" through "NINETY THIRD" with the same force and

effect as those said allegations were herein fully set forth at length.

**NINETY FIFTH:**

That at all times during the course of dealings between the defendants and the injured plaintiff

the defendants misrepresented that the product was safe for its intended use.

**NINETY SIXTH:**

The defendants knew that the representations were false as the defendants knew that there

were problems with the Contak Renewal Model H179 and/or components thereof malfunctioning

prior to implantation and/or injury.

**NINETY SEVENTH:**

That in representations to plaintiff and by withholding defect information from the FDA, thus

preventing regulation, the defendants fraudulently concealed and intentionally omitted the aforesaid

material information and that the product was not safe for use and was susceptible to malfunction;

that the defendants were aware of the products danger and that the product was defective and that

the defect caused malfunction that rendered the device useless for a period of time with the potential

to cause death and severe injury and emotional distress and that the product was manufactured and

designed negligently and that the product was manufactured and designed defectively and that the

product was manufactured and designed improperly.

Page 27 of 41

**NINETY EIGHTH:**

The defendants were under a duty to disclose to injured patients and their physicians, hospitals and medical providers the defective nature of their product and/or risks and dangers associated with ·it.

**NINETY NINTH:**

That the defendants had sole access to material facts concerning the defective nature of the product and the defect and the propensity to malfunction and cause serious and dangerous side effects including infection, and hence cause damage to the injured plaintiff.

**ONE HUNDREDTH:**

That the defendants' concealment and omission of material facts concerning the safety of the product were made purposely, willfully, wantonly, and/or recklessly to mislead injured patients and their physicians, hospital and medical providers into reliance, continued use of this product and · actions thereon and to cause them to purchase this product and/or have them implanted.

**ONE HUNDRED FIRST:**

That the defendants knew that the patients, and in particular the plaintiff herein, and their physician, hospitals, medical providers had no way of determining the truth behind defendants' concealment and omissions and that these included material omissions of facts surrounding the product.

**ONE HUNDRED SECOND:**

Injured plaintiff, Sonia Urriola, as well as her doctors, health care providers and/or hospitals reasonably relied on defendants concealment and/or misstatement of fact.

**ONE HUNDRED THIRD:**

As a direct and proximate result of defendants malicious, reckless and/or negligent conduct the plaintiff, Sonia Urriola, suffered significant injuries that upon information and belief are permanent, and has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A EIGHTH CAUSE OF ACTION TO RECOVER MONETARY DAMAGES FROM THE DEFENDANTS UNDER A THEORY OF DEPARTURE FROM ACCEPTED MEDICAL PRACTICE ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA

**ONE HUNDRED FOURTH:**

That the Plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "ONE HUNDRED THIRD", with the same force and effect as though said allegations were here and fully set forth at length.

**ONE HUNDRED FIFTH:**

That at all times mentioned herein, the defendant MICHAEL LIOU, M.D., hereinafter referred to as "LIOU", maintained offices for the practice of medicine within the County of New York, City and State of New York.

**ONE HUNDRED SIXTH:**

That at all times mentioned herein, the defendant "LIOU" held himself out to the general public and more particularly to the plaintiff herein as a duly qualified and/or licensed physician and/or surgeon capable of practicing medicine and/or surgery within the State of New York.

**ONE HUNDRED SEVENTH:**

That at all times mentioned herein the defendant "LIOU", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services,

radiology services, laboratory services, pharmacy services, diagnostic and treatment services, surgical services including pre operative and post operative services, anesthesia services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein, and further held himself out to such individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED EIGHTH:**

At all times mentioned herein, the defendant BETH ISRAEL MEDICAL CENTER, hereinafter referred to as "BIMC" was and still is a corporation, duly existing pursuant to the laws of the State of New York, and doing business within the County of New York, City and State of New York.

**ONE HUNDRED NINTH:**

That at all times mentioned herein, the defendant "BIMC" owned, operated, supervised, maintained, and/or controlled certain premises within the County of New York, City and State of New York, for the care of sick and ailing persons, and for other individuals requiring medical care and attention, including the plaintiff herein.

**ONE HUNDRED TENTH:**

That at all times mentioned herein, the defendant "BIMC", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services, radiology services, laboratory services, pharmacy services, diagnostic and treatment services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein and further held itself out to such

individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED ELEVENTH:**

At all times mentioned herein, the defendant BETH ISRAEL MEDICAL CENTER PHILLIPS AMBULATORY CARE CENTER, hereinafter referred to as "BIMC-PHILLIPS" was and still is a corporation, duly existing pursuant to the laws of the State of New York, and doing business within the County of New York, City and State of New York.

**ONE HUNDRED TWELFTH:**

That at all times mentioned herein, the defendant "BIMC-PHILLIPS" owned, operated, supervised, maintained, and/or controlled certain premises within the County of New York, City and State of New York, for the care of sick and ailing persons, and for other individuals requiring medical care and attention, including the plaintiff herein.

**ONE HUNDRED THIRTEENTH:**

That at all times mentioned herein, the defendant "BIMC-PHILLIPS", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services, radiology services, laboratory services, pharmacy services, diagnostic and treatment services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein and further held itself out to such individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED FOURTEENTH:**

That in reliance upon the foregoing, the plaintiff, Sonia Urriola, during a continuous course of treatment beginning on or about November 4, 2004 and ending on or about June 29, 2007 came under and/or submitted to the care and attention of the defendants LIOU, BIMC and BIMC-PHILLIPS.

**ONE HUNDRED FIFTEENTH:**

That at all times mentioned herein the plaintiff, Sonia Urriola, submitted to various tests, examinations, procedures, treatments and techniques, both oral and physical, performed by or at the special instance and request of the defendants and/or each of them, their agents, servants, associates, employees, and/or partners.

**ONE HUNDRED SIXTEENTH:**

That at all times mentioned herein, the defendants, their agents, servants, associates, partners and/or employees, were aware of or should have been aware of the results, import, findings and/or consequences of this history, complaints, signs, symptoms, pains, sensation and occurrences being experienced by the plaintiff, as well as the results, import, findings and/or consequences of the tests, examinations, procedure, treatments and/or techniques performed on the plaintiff, by the said defendants, their agents, servants, employees, associates and/or partners.

**ONE HUNDRED SEVENTEENTH:**

That in view of the foregoing, the course of treatment, advice, diagnosis, medical care and attention, prescriptions, tests, examinations, studies, surgery, pre and post surgical care, procedures and/or techniques given to and/or performed on the plaintiff by the defendants, their agents, servants, associates, partners and/or employees was not in accord with the accepted standards of the proper

practice of medicine, which are generally recognized within the local, state or national community.

**ONE HUNDRED EIGHTEENTH:**

That the defendants LIOU, BIMC and BIMC-PHILLIPS and/or each of them, individually, jointly and/or concurrently, their agents, servants, associates, partners and/or employees, by acts of commission and omission were negligent, careless and reckless and departed from accepted practices in the following areas:

a.  negligently, carelessly, and recklessly failed to properly monitor plaintiff after implanting a Contak Renewal 3HE, Model H179 in plaintiff;

b.  negligently, carelessly and recklessly failed to remove a defective implantable cardiac defibrillator in a timely fashion;

c.  failed and omitted to remove this device from the plaintiff's body before the device caused injury to plaintiff;

d.  failed to use appropriate precautionary measures to avoid infection and injury in the plaintiff's body as a result of a defective and dangerous implantable cardiac defibrillator they inserted in plaintiff;

e.  negligently, carelessly, and recklessly failed to attach appropriate significance to plaintiff's complaints of weakness;

f.  negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of fatigue;

g.  negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of difficulty walking;

h.  negligently, carelessly and recklessly failed to attach appropriate significance to

plaintiff's complaints of difficulty climbing stairs;

i.    negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of weight gain;

j.    negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of atypical body aches;

k.    negligently, carelessly and recklessly failed and omitted to diagnose a massive fungal infection in plaintiff as a result of the Contak Renewal 3HE Model 179 ICD implanted in plaintiff;

l.    caused and/or allowed the plaintiff to develop a massive infection of the defective ICD implanted in her body;

m.    failed to maintain proper monitoring of plaintiff after being notified of the recall of the Contak Renewal 3HE Model H179 which was implanted in plaintiff;

n.    failed and omitted to inform the plaintiff of the dangers and risks as well as alternatives;

o.    failed and omitted to make a timely diagnosis of the plaintiff's condition;

p.    failed and omitted to perform proper and timely tests, examinations, procedures, studies, surgery, pre and post surgical care, and in general in giving medical care, attention, treatment and/or care to the plaintiff;

q.    failed and omitted to understand the clinical analysis, laboratory analysis, history, physical examination, complaints, pains, signs and/or symptoms so that a proper diagnosis could be made and/or a proper course of treatment given;

r.    failed and omitted to conform to the accepted standards of care and skill in giving

advice, treatment, anesthesiology, prescriptions, examinations, information, services, surgery, pre and post surgical care, attention, studies, laboratory and radiological examinations and/or facts to the plaintiff herein;

s.      failed and omitted to use their best judgment and reasonable care in their medical care, attention, services, treatment, medication, diagnosis and other medical services rendered on behalf of the plaintiff.

**ONE HUNDRED NINETEENTH:** .

That solely as a result of the negligence and/or medical malpractice of the defendants, and/or each of them, their agents, servants, associates, partners and/or employees, and without any negligence or culpable conduct on the part of the plaintiff contributing thereto, the plaintiff was caused to sustain the injuries which are hereinafter referred to.

**ONE HUNDRED TWENTIETH:**

That as a result of the negligence and/or medical malpractice, as aforesaid, the plaintiff, Sonia Urriola became, still is and for a long time to come will be sick, sore, lame, bruised, injured, and wounded in and about the various parts of her head, neck, lungs, body, limbs and shoulders, both internally and externally including various organs, functions of her body and including surrounding muscles, tissues, arteries, veins, blood vessels, cells, and other parts of plaintiff's body and that plaintiff also sustained psychological injuries and/or mental anguish and agony and was otherwise injured and upon information and belief said injuries are permanent; that by reason of the foregoing the plaintiff, Sonia Urriola as obliged to and did necessarily employ medical aid, medicinals, hospital aid and other treatment in an attempt to cure herself of said injuries and has been prevented from performing her duties and will be so prevented for a long time to come.

**ONE HUNDRED TWENTY FIRST:**

That by reason of the foregoing departures from accepted medical practice, the plaintiff, Sonia

Urriola, has been damaged by the defendants herein and seeks a monetary award and damages which

exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction over the

defendants herein.

## AS AND FOR A NINTH CAUSE OF ACTION TO RECOVER
## MONETARY DAMAGES FROM THE DEFENDANT UNDER A
## THEORY OF LACK OF INFORMED CONSENT ON BEHALF
## OF THE PLAINTIFF, SONIA Urriola

**ONE HUNDRED TWENTY SECOND:**

That the plaintiff, Sonia Urriola, repeats, reiterates, and realleges each and every allegation

of the Complaint, set forth in paragraphs "FIRST" through "ONE HUNDRED TWENTY FIRST"

with the same force and effect as though said allegations were herein fully set forth at length.

**ONE HUNDRED TWENTY THIRD:**

That at all times mentioned herein, the defendants LIOU, BIMC and BIMC-PHILLIPS, their

agents, servants, associates, partners, and/or employees negligently, carelessly and recklessly failed

and omitted to make an understandable disclosure to the plaintiff of the surgery, diagnostic

procedures, and/or invasive procedures, that said defendant was about to perform and/or did perform

including but not limited to the dangers and risks to the plaintiff's health and/or life, whether or not

the surgery, diagnostic procedure, or invasive procedures were ordinarily performed under the same

conditions, whether or not other or different operations and/or procedures, if any, are and were used,

and the manner in which the alternative operations and/or risks involved in the alternative operation

and/or procedure.

**ONE HUNDRED TWENTY FOURTH:**

That had the defendants given accurate information disclosing the foregoing departures, risks, and/or alternatives, the plaintiff and/or a reasonably prudent person would have decided not to undergo the surgery, diagnostic procedure and/or invasive procedure at the time and under the circumstances then and there existing to the knowledge of the defendants.

**ONE HUNDRED TWENTY FIFTH:**

That the above described negligent failure and omission by the defendants to obtain a proper informed consent from the plaintiff led to various unauthorized invasions upon the plaintiff's body in the nature of unauthorized surgical procedures, diagnostic procedures and/or invasive procedures and that as such the defendants are responsible for the entire flow of damages and injury following said procedures.

**ONE HUNDRED TWENTY SIXTH:**

That as a result of the negligent failure and omission to obtain a proper informed consent, the plaintiff, Sonia Urriola, became, still is and for a long time to come will be sick, sore, lame, bruised, injured, and wounded in and about the various parts of her heart, lungs, his head, neck, abdomen, intestines, body and limbs, both internally and externally including various organs, functions of her body and including surrounding muscles, tissues, arteries, veins, blood vessels, cells, and other parts of plaintiff's body and that plaintiff also sustained psychological injuries and or mental anguish and agony and was otherwise injured and upon information and belief said injuries are permanent; that by reason of the foregoing the plaintiff, Sonia Urriola, was obliged to and did necessarily employ medical aid, medicinals, hospital aid and other treatment in an attempt to cure herself of said injuries and has been prevented from performing her duties and will be so prevented for a long time to come.

**ONE HUNDRED TWENTY SEVENTH:**

That as a result of the foregoing lack of informed consent the plaintiff, Sonia Urriola has been damaged by the defendants herein and seeks a monetary award and damages which exceed the jurisdictional limit of all lower Courts which would otherwise have jurisdiction over the defendants herein

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the First Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Second Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Third Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Fourth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Fifth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Sixth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Seventh Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Eighth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE,* plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Ninth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action; and

**WHEREFORE,** plaintiff, SONIA URRIOLA, demands a monetary judgement in the form of damages against the defendants and/or each of them herein together with the costs and disbursements of this action.

Dated: Brooklyn, New York
      October **24**  , 2007

    I have read the foregoing and I certify that , upon information and belief, the source of which is the review of a file maintained by my office, that the foregoing is not frivolous as defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator.

ANDREA E. BONINA, ESQ.
BONINA & BONINA, P.C.
Attorneys for Plaintiff(s)
16 Court Street, Suite 1800
Brooklyn, New York 11241
(718) 522-1786

## STATEMENT PURSUANT TO CPLR SECTION 3012-a(2)

I am an attorney duly licensed to practice law in the State of New York. I was unable to obtain the consultation required by CPLR Section 3012-a(1) because the Statute of Limitations is to expire in the very near future and would bar the action. The Certificate of Merit required by CPLR Section 3012-a(1) could not reasonably be obtained before such time expired. The Certificate of Merit required shall be served within 90 days after service of the Complaint.

ANDREA E. BONINA, ESQ.

STATE OF NEW YORK, COUNTY OF                    ss.:

I, the undersigned, am an attorney admitted to practice in the courts of New York, and

☐ **Attorney's Certification**
    certify that the annexed
    has been compared by me with the original and found to be a true and complete copy thereof.

    say that: I am the attorney of record, or of counsel with the attorney(s) of record, for

☒ **Attorney's Verification By Affirmation**
    I have read the annexed  **SUMMONS, VERIFIED COMPLAINT AND CERTIFICATE OF MERIT** now the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based on on the following.  The review of a file maintained in my office

    The reason I make this affirmation instead of Plaintiffs is that Plaintiffs reside outside the county where my office is maintained.

Dated: OCTOBER 24 , 2007

_____
(Print signer's name below signature)
**ANDREA E. BONINA, ESQ.**

STATE OF NEW YORK, COUNTY OF KINGS                    ss:

_____ , being sworn says: I am the plaintiff

☐ **Individual Verification**
    in the action herein; I have read the annexed
    know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.
    the                                                                of

☐ **Corporate Verification**
    a corporation, one of the parties to the action; I have read the annexed
    know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based on the following:

Sworn to before me on

_____
(Print signer's name below signature)

STATE OF NEW YORK, COUNTY OF                    ss.:

    _____ , being sworn says: I am not a party to the action, am over the age of 18 years of age and reside at
On _____ , I served a true copy of the annexed                                        in the following manner:

☐ **Service by Mail**
    by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last know address of the addressee(s) as indicated below:

☐ **Personal Service**
    by delivering the same personally to the persons and at the addresses indicated below:

☐ **Service by Electronic Means**
    by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated by the attorney for that purpose.  In doing so I received a signal from the equipment of the attorney indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

☐ **Overnight Delivery Service**
    by depositing the same with an overnight delivery service in a wrapper proper addressed.  Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery.  The address and delivery service are indicated below:

INDEX NO.: 114306/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SONIA URRIOLA,

Plaintiffs,

-against-

GUIDANT CORPORATION, GUIDANT SALES CORPORATION, BOSTON SCIENTIFIC
CORPORATION, MICHAEL LIOU, M.D., BETH ISRAEL MEDICAL CENTER AND BETH
ISRAEL MEDICAL CENTER PHILIPS AMBULATORY CARE CENTER,

Defendants,

## SUMMONS, VERIFIED COMPLAINT AND CERTIFICATE OF MERIT

**BONINA & BONINA, P.C.**
Attorneys for *Plaintiff(s)*
16 Court Street, Suite 1800
Brooklyn, NY 11241
Tele. No.: (718) 522-1786
Fax No.: (718) 243-0414

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State,
certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed
documents are not frivolous.*

Dated:  OCTOBER 24 , 2007          Signature
                                   Print Signer's Name:     ANDREA E. BONINA, ESQ.

*Service of a copy of the within*                                          *is hereby admitted.*

*Dated:*

*Attorney(s) for*

**PLEASE TAKE NOTICE**

☐
NOTICE OF
ENTRY
*that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on*

☐
NOTICE OF
SETTLEMENT
*that a           of which the within is a true copy
will be presented for settlement to the Hon.           , one of the judges of the
within named Court, at Supreme,           on           ,*

Dated:

**BONINA & BONINA, P.C.**
*Attorneys for Plaintiff(s)*
16 COURT STREET
BROOKLYN, N.Y. 11241

To:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**SUMMONS**

------------------------------------------------------------X

SONIA URRIOLA,

Index No.: 114306 /07
Date Purchased: 10/24/07

                            Plaintiffs,

Plaintiff designates New York
County as the place of trial.

       -against-

The basis of venue is:
Plaintiff's Residence

GUIDANT CORPORATION, GUIDANT SALES
CORPORATION, BOSTON SCIENTIFIC CORPORATION,
MICHAEL LIOU, M.D., BETH ISRAEL MEDICAL
CENTER AND BETH ISRAEL MEDICAL CENTER
PHILIPS AMBULATORY CARE CENTER,

Plaintiff resides at:
126 East 3rd Street, Apt. 3A
New York, New York 10009

                         Defendants,

County of New York

------------------------------------------------------------X

**To the above named Defendants:**

     **You are hereby summoned** to answer the complaint in this action, and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's attorneys within twenty days after the service of this summons,
exclusive of the day of service, where service is made by delivery upon you personally within the
state, or, within 30 days after completion of service where service is made in any other manner.
In case of your failure to appear or answer, judgment will be taken against you by default for the
relief demanded in the complaint.

Dated: Brooklyn, NY
      October  24  , 2007

ANDREA E. BONINA, ESQ.
BONINA & BONINA, P.C.
Attorneys for Plaintiff - SONIA URRIOLA
16 Court Street, Suite 1800
Brooklyn, New York 11241
(718) 522-1786

ORIGINAL SUMMONS AND VERIFIED COMPLAINT FILED ON OCTOBER _____, 2007.

NEW YORK
COUNTY CLERK'S OFFICE

OCT 2 4 2007

NOT COMPARED
WITH COPY FILE

TO:

Dr. Michael Liou
c/o Beth Isreal Medical Center
10 Union Square East, Suite 2A
Phillips Ambulatory Care Center
New York, New York 10003

Beth Isreal Medical Center
307 First Avenue
New York, New York 10003

Beth Israel Medical Center - Phillips Ambulatory
10 Union Square East, Suite 2A
New York, New York 10003

Boston Scientific Co.
c/o Corporation Service Company
Albany, New York 12207

Guidant Sales Corporation
111 Monument Circle, #2900
Indianapolis Indiana  46204
Attention: Viki Williams

Guidant Sales Corporation
Corporation Service Company
80 State Street
Albany, New York 12207

Guidant
4100 Hamline Avenue North
St. Paul, Minnesota 55112

# COMPLETE THIS STUB

Endorse This INDEX NUMBER ON All Papers and advise your adversary of the number assigned. Sec. 202.5, Uniform Rules Of Trial Courts

DO NOT DETACH

Title of Action or Proceeding to be TYPED or PRINTED by applicant
**SUPREME COURT, NEW YORK COUNTY**

V.

**INDEX NUMBER FEE
$210.00**

C 7114306

```
        RECEIPT
  NEW YORK COUNTY CLERK
     60 CENTRE STREET
   NEW YORK, NY 10007
         R141


DEPARTMENT              AMOUNT

1 GEN                   165.00
7 SURCHARGE              45.00

TOTAL          210.00
CHECK                   210.00


CONS  CASHIER    DATE      TIME    TERM
28746  1235    07 OCT 24  1:36 PM  41-2
```

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
SONIA URRIOLA,

|                          |                           |
|--------------------------|---------------------------|
| Plaintiffs,              | **VERIFIED COMPLAINT**    |

-against-

Index No.: 114306    /07

GUIDANT CORPORATION, GUIDANT SALES
CORPORATION, BOSTON SCIENTIFIC
CORPORATION, MICHAEL LIOU, M.D., BETH
ISRAEL MEDICAL CENTER AND BETH ISRAEL
MEDICAL CENTER PHILIPS AMBULATORY CARE
CENTER,

Defendants,
----------------------------------------------------------------X

Plaintiffs, by and through their attorneys, Bonina & Bonina, P.C.,complaining of the

defendants herein, as and for their Verified Complaint in the above entitled action, respectfully show

to this Court and allege upon information and belief as follows:

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF SONIA URRIOLA TO RECOVER MONETARY DAMAGES FROM THE DEFENDANTS UNDER A THEORY OF DEFECT IN DESIGN

**FIRST:**

That prior to service of this Summons & Complaint and on the 24th day of October 2007,

plaintiffs have purchased Index No._____/07 from the Supreme Court of the State of

New York, County of New York, in accordance with the requirements of the CPLR.

**SECOND:**

That this action falls within one or more exceptions set forth in CPLR §1602.

**THIRD:**

    Plaintiffs demand a trial by jury.

**FOURTH:**

    That all times mentioned herein, plaintiff, Sonia Urriola, is, was, and has been a resident of the County of New York, City and State of New York.

**FIFTH:**

    That at all times mentioned herein, Defendant Guidant, (hereinafter Guidant) is a foreign corporation with its principal place of business in a state other than New York.

**SIXTH:**

    Defendant Guidant manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model number H179.

**SEVENTH:**

    That at all times herein mentioned, the Defendant Guidant, was and still is a foreign corporation duly authorized to do business in the State of New York.

**EIGHTH:**

    That at all times mentioned herein, Defendant Guidant, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**NINTH:**

    That at all times mentioned herein, Defendant Guidant Sales Corporation, (hereinafter Guidant Sales) is a foreign corporation with its principal place of business in a state other than New York.

**TENTH:**

Defendant Guidant Sales manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain implantable Cardiac Resynchronization Therapy - Defibrillators (CRT-D) and including the Contak Renewal 3HE Model number H179.

**ELEVENTH:**

That at all times herein mentioned, the Defendant Guidant Sales, was and still is a foreign corporation duly authorized to do business in the State of New York.

**TWELFTH:**

That at all times mentioned herein, Defendant Guidant Sales, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**THIRTEENTH:**

That at all times mentioned herein, defendant Boston Scientific Corporation (hereinafter Boston) is a corporation incorporated pursuant to the laws of the State of Delaware and has its principal place of business in Massachusetts.

**FOURTEENTH:**

Defendant Boston manufactured, marketed, tested, designed, distributed and sold for profit in New York State certain Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 4HE Model number H179.

**FIFTEENTH:**

That at all times mentioned herein, the Defendant Boston, was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

Page 3 of 41

**SIXTEENTH:**

That at all times mentioned herein, the Defendant Boston, was and still is a foreign corporation duly authorized to do business in the State of New York.

**SEVENTEENTH:**

That at all times mentioned herein, Defendant Boston, is, was, and has been an unauthorized foreign corporation or other foreign business entity.

**EIGHTEENTH:**

That at all times mentioned herein Defendant Boston, is, was and has been a limited partnership or limited liability company duly organized under and existing by virtue of the laws of the State of New York.

**NINETEENTH:**

That upon information and belief the defendant Boston has acquired or merged with the defendant Guidant and/or defendant Guidant Sales and is a successor in interest to all claims articulated herein and stated against defendants Guidant and Guidant Sales.

**TWENTIETH:**

At all times, defendants were engaged in the business of manufacturing, selling, distributing, promoting, designing and testing Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179.

**TWENTY FIRST:**

Each defendant placed the Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179, into the stream of commerce and derived substantial benefits from this product which was sold for profit in the State of New York by the

defendants, their agents, servants, associates, subsidiaries, partners and/or employees.

**TWENTY SECOND:**

At all times hereinafter mentioned all of the above named defendants regularly did and/or transacted and/or solicited business in the State of New York or were engaged in other persistent courses of conduct or derived substantial revenue from goods used or consumed or services rendered in the State of New York.

**TWENTY THIRD:**

That at all times mentioned herein the defendants expected or should have reasonably expected its acts to have consequences within the State of New York, and derived and continues to derive substantial revenue from Interstate and International Commerce.

**TWENTY FOURTH:**

That at all times mentioned herein, defendants held themselves out to the general public, and more particularly to the plaintiff herein, as duly qualified and/or capable of manufacturing designing, testing, distributing, promoting and/or selling safe and proper implantable medical devices, including but not limited to the Contak Renewal 3HE Model H179 within the State of New York.

**TWENTY FIFTH:**

That at all times mentioned herein, the defendants for consideration held themselves out as distributing, manufacturing, designing and selling proper, adequate and safe implantable medical devices, namely the Contak Renewal 3HE Model H179 to members of the general public and more particularly plaintiff herein, and further held themselves out to such individuals as having the necessary skills, expertise, training, and/or personnel, equipment and supplies to perform the same up to the standards of such care prevalent within the Local, State, and National Community.

Page 5 of 41

**TWENTY SIXTH:**

At all times mentioned herein, defendants themselves, or by use of others did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, advertise, warn, and otherwise distribute in interstate commerce the Contak Renewal 3HE Model H179.

**TWENTY SEVENTH:** ·

The Contak Renewal 3HE Model H179 was widely advertised by the defendants in the State of New York and throughout the United States for use by persons with irregular cardiac rhythms.

**TWENTY EIGHTH:**

Upon information and belief the defendant manufactured an implantable device named the Contak Renewal 3HE Model H179, which was designed, manufactured, marketed, tested, distributed and sold for profit in the State of New York by one or more of the defendants herein.

**TWENTY NINTH:**

At all times relevant herein, the defendants were engaged in the business of manufacturing, marketing, promoting, selling, distributing and placing in the stream of commerce an implantable cardiac defibrillator device known as the Contak Renewal 3HE Model H179. Upon information and belief each defendant engaged in advertising and promotional activity which indicated its product was efficacious and safe to use and, that based upon the defendants promotional activity with respect to the aforesaid product, said product was implanted into the plaintiff's body based upon the belief that the same was safe to use and was unlikely to subject the plaintiff to any serious danger or injury as a result of the use of the product.

**THIRTIETH:**

That the aforesaid Product was and is sold to hospitals and physicians for implantation into patients who are at risk for having life threatening arrhythmia's as a result of electro physiological changes in the hearts rhythms resulting in a change in heart rhythm, which are life threatening if the patient does not receive an electrical shock from an appropriate device.

**THIRTY FIRST:**

Defendant's aforesaid Product contains wires, called leads, inserted through blood vessels and attached to the heart to detect irregularity in the hearts rhythm and to deliver an electrical shock to prevent or terminate an arrhythmia.

**THIRTY SECOND:**

In on or about November 4, 2004, the plaintiff Sonia Urriola underwent surgery for the implantation of a Guidant Contak Renewal 3HE Model H179 cardiac defibrillator with serial number 504858.

**THIRTY THIRD:**

Upon information and belief, the Guidant Contak Renewal 3HE Model H179 was manufactured, promoted, and marketed by the defendants, and/or each of them, as a safe medical device that would be beneficial for cardiac patients at risk for arrhythmia.

**THIRTY FOURTH:**

Upon information and belief, defendants and/or each of them were in control of the design, manufacture testing, labeling, warning, product information, packaging, promoting, assembly, manufacture, marketing, distribution and/or sales the aforementioned implantable cardiac defibrillator.

**THIRTY FIFTH:**

Defendants made filings with the United States Food and Drug Administration (hereinafter referred to as FDA) in conjunction with the approval process for the Contak Renewal 3HE Model H179.

**THIRTY SIXTH:**

Defendants promoted the Guidant Contak Renewal 3HE Model 179 as a therapy to reduce the risk of hospitalization or death and as a device that could relieve symptoms associated with heart failure, including shortness of breath and fatigue.

**THIRTY SEVENTH:**

That said Contak Renewal 3HE Model H179 came equipped with certain standard equipment, including, among other things, certain wires and/or leads which were improperly and/or inadequately insulated.

**THIRTY EIGHTH:**

That said Contak Renewal 3HE Model H179, came equipped with certain standard equipment, including, among other things, certain and/or switches which were improperly and/or inadequately manufactured and were prone to stitching.

**THIRTY NINTH:**

That the Contak Renewal 3HE Model 179 came equipped with certain standard equipment including among other things, low voltage capacitators which were subject to degradation.

**FORTIETH:**

That said wires and/or leads and/or seals and/or low voltage capacitators were an integral and inherent part of the safety equipment of the above referenced Contak Renewal 3HE Model H179, the

Page 8 of 41

purpose of which was to provide proper protection to the ordinary and foreseeable users and consumers of said device.

**FORTY FIRST:**

Sonia Urriola had a Guidant Contak Renewal 3HE Model 179 Serial number 504858 implanted on or about November 4, 2004 and it remained implanted until on or about June 29, 2007.

**FORTY SECOND:**

Subsequent to having the Guidant Contak Renewal 4HE Model 179 implanted plaintiff, Sonia Urriola, suffered from physical and emotional injuries and severely diminished quality of life and life expectancy and was caused to and will be caused to expend sums of money for medical care and monitoring.

**FORTY THIRD:**

The product warnings in effect between October 2005 and June 2007 were both substantially and wholly inadequate to alert prescribing physicians and consumer patients of the risk of injury and infection associated with the Guidant Contak Renewal 3HE Model H179 which were then known to the defendants.

**FORTY FOURTH:**

Defendants had a duty to exercise reasonable care in the design manufacture, testing, clinical trials, compiling of product information, submission of product information to FDA, pre- and post-marketing testing, sale, marketing and/or distribution of Guidant Contak Renewal 3HE Model H179 into the stream of commerce, including a duty to insure the product did not cause users to suffer from unreasonable and dangerous side effects and injuries as a result of having the product implanted.

**FORTY FIFTH:**

Defendants failed to exercise ordinary care in the manufacturing, selling, testing, quality assurance, quality control and/or distribution of Guidant Contak Renewal 3HE Model 179 into interstate commerce in that defendants knew or reasonably should have known that the product created an increased risk for unreasonable dangerous side effects some of which could only be alleviated by invasive and/or surgical procedures, and some of which can be fatal.

**FORTY SIXTH:**

Defendants and/or each of them, and/or their agents, servants, subsidiaries, partners, associates and employees, acted negligently, carelessly and recklessly, and in willful and wanton disregard for the health, life and safety of their consumers and the public, with respect to their distribution, manufacture, testing, marketing, advertising, and sale of the Contak Renewal 3HE Model H179 in the following ways:

a.    Negligently, carelessly and recklessly manufactured, constructed, engineered, inspected, marketed, tested, and sold implantable cardiac devices that included a seal that leaked allowing moisture to damage electrical components;

b.    Negligently, carelessly and recklessly designed, constructed, engineered, inspected, marketed, tested and sold implantable cardiac devices that included a seal that stuck allowing moisture to damage electrical components;

c.    Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant injury;

d.    Failed to adequately and timely advise consumers and healthcare providers of the

dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant life threatening infections;

e.  Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators, including the Contak Renewal 3HE Model 179, that had leads and/or wires that were not properly insulated;

f.  Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators that had inadequate insulation material on the leads and/or the wires causing these parts of the Contak Renewal 3HE Model H179 to have an increased risk of degradation;

g.  Manufactured, constructed, engineered, inspected, distributed, marketed, tested and sold implantable cardiac defibrillators which were a significant risk of injury to consumers, and in particular to the plaintiff herein;

h.  Knew or reasonably should have known of the potential serious side effects, including but not limited to infection and surgical intervention, and failed to properly investigate and research these issues in clinical trials;

i.  Knew or reasonably of should have known of the potential serious side effects including but not limited to infection and the need for surgical intervention and failed to properly investigate and perform/post sale and adequate post marketing follow up studies;

j.  Failed and omitted to provide adequate information to medical professionals regarding the risks associated with the implantation of Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179;

Page 11 of 41

k.    Failed and/or omitted to inform medical professionals of the significant risk of infection as a result of degradation of the leads/wires;

l.    Manufactured, constructed, distributed, marketed, inspected, tested, and sold a implantable cardiac defibrillator which was unsafe and unfit for its reasonable, ordinary and foreseeable uses;

m.    Caused, allowed and permitted a dangerous defective and unsuitable product to be marketed to the medical profession for use in patients who were medically dependent upon a properly working defibrillator;

n.    Failed to adequately warn members of the medical profession of the risks and dangers inherent in the insertion and use of the Contak Renewal 3HE implantable cardiac defibrillator Model 179;

o.    Failed and/or omitted to properly test the device to determine its effectiveness, and the effectiveness of the insulation on the leads/wires;

p.    Failed and/or omitted to properly instruct members of the medical profession as to the proper manner of testing the device, as well as the proper methods of monitoring patients for defects in the device;

q.    Failed and omitted to properly design, manufacture, assemble, sell, distribute and promote a product that members of the public, including the plaintiff herein, relied upon to sustain life;

r.    Failed and omitted to exercise reasonable and ordinary care and due diligence in ascertaining the defective condition and improper design and manufacturing defects in the Contak Renewal 3E Model H179 implantable cardiac defibrillator;

Page 12 of 41

s.   Failed and omitted to protect the public interest and more particularly that of the plaintiff herein;

t.   Manufactured, distributed, engineered, delivered, sold and marketed an implantable cardiac defibrillator which was inherently dangerous to the life and health of the public, its intended and foreseeable users and more particularly to the plaintiff herein;

u.   Failed and omitted to adopt and enforce proper inspection and testing techniques procedures and protocols on each and every cardiac defibrillator designed, manufactured, constructed, engineered, assembled, sold and distributed including the Contak Renewal 3HE Model H179;

v.   Failed and omitted to properly and adequately notify members of the medical profession regarding the defects present in the Contak Renewal 3HE Model H179 cardiac defibrillator; and

w.   Failed and omitted to institute proper, adequate and timely recall procedures.

**FORTY SEVENTH:**

As a result of defendants' defectively designed Cardiac Resynchronization Therapy - Defibrillators (CRT-D), plaintiff required surgery and extensive rehabilitation and suffered serious infection as a result of the Contak Renewal 3HE Model H179.

**FORTY EIGHTH:**

As a result of the above referenced conduct of the defendants and/or their subsidiaries, successors and interests, divisions, agents, servants, associates, partners and/or employees, the plaintiff Sonia Urriola was caused to suffer a significant and life threatening infection which required the removal of her implantable cardiac defibrillator as well as extensive hospitalization thereafter, and

she became and still is, and for a long time to come, will be sick, sore, lame, bruised, injured, wounded, and disabled in the various parts of her head, body, and plaintiff otherwise sustains psychological injuries, and upon information and belief all the aforementioned injuries are permanent. By reason of the foregoing the plaintiff, Sonia Urriola was obliged to and did necessarily employ hospital aid, medical aid, medicinals, surgical intervention, rehabilitation services and medical supplies in an attempt to cure herself of her injuries, and she has been prevented from performing her usual duties and will be so prevented for a long time to come.

**FORTY NINTH:**

That the plaintiff is not seeking to recover any damages for which plaintiff has been reimbursed by insurance or other applicable coverage. Plaintiff is only seeking to recover those damages not recoverable through insurance and/or other applicable coverage under the facts and circumstances in this action.

**FIFTIETH:**

That as a result of the aforementioned, the plaintiff Sonia Urriola, has been damaged in an amount exceeding all jurisdictional limits of the lower Courts.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY OF STRICT PRODUCTS LIABILITY FOR A DEFECT IN MANUFACTURE

**FIFTY FIRST:**

That the Plaintiff, SONIA URRIOLA, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "FIFTIETH", with the same force and effect as though said allegations were here and fully set forth at length.

**FIFTY SECOND:**

That reasonable reliance upon the proper function of said Contak Renewal 3HE Model H179 device, the plaintiff, Sonia Urriola had said Contak Renewal 3HE Model H179 implanted on or about November 4, 2004.

**FIFTY THIRD:**

That, while the plaintiff had said device implanted as aforesaid, said device caused serious and severe injuries to the Plaintiff herein, including but not limited to massive fungal infection.

**FIFTY FOURTH:**

That, upon information and belief, the happening of the occurrence as aforesaid was the result of defects in manufacture, which caused the Plaintiff to suffer and sustain serious and severe injuries.

**FIFTY FIFTH:**

That, at all times mention herein, the Defendants knew and/or reasonably should have known the intended use to which said Contak Renewal 3HE Model H179 and its appurtenances would be put, and that the general public, and more particularly the Plaintiff herein, would be involved in said uses.

**FIFTY SIXTH:**

That, at all times mentioned herein, the Defendants and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, failed to exercise the proper and reasonable degree of care in the manufacturing, assembling, sterilizing, engineering, and insertion of the Contak Renewal 3HE Model H179, causing said Contak Renewal 3HE Model H179 to be dangerously defective, and not reasonably safe for its ordinary, intended and foreseeable purposes.

**FIFTY SEVENTH:**

Defendants and/or each of them, and/or their agents, servants, partners, associates and employees, acted negligently, carelessly and recklessly, and in willful and wanton disregard for the health, life and safety of their consumers and the public, with respect to their distribution, manufacture, testing, marketing, advertising, and sale of the Contak Renewal 3HE Model H179 in the following ways:

a.  Negligently, carelessly and recklessly manufactured, constructed, engineered, inspected, marketed, tested, and sold implantable cardiac devices that included a seal that leaked allowing moisture to damage electrical components;

b.  Negligently, carelessly and recklessly designed, constructed, engineered, inspected, marketed, tested and sold implantable cardiac devices that included a seal that stuck allowing moisture to damage electrical components;

c.  Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant injury;

d.  Failed to adequately and timely advise consumers and healthcare providers of the dangers associated with the Contak Renewal 3HE Model H179, including the risk that leakage and/or sticking could cause significant life threatening infections;

e.  Manufactured, constructed, engineered, inspected, marketed, tested and sold implantable cardiac defibrillators, including the Contak Renewal 3HE Model 179, that had leads and/or wires that were not properly insulated;

f.  Manufactured, constructed, engineered, inspected, marketed, tested and sold

implantable cardiac defibrillators that had inadequate insulation material on the leads and/or the wires causing these parts of the Contak Renewal 3HE Model H179 to have an increased risk of degradation;

g.      Manufactured, constructed, engineered, inspected, distributed, marketed, tested and sold implantable cardiac defibrillators which were a significant risk of injury to consumers, and in particular to the plaintiff herein;

h.      Knew or reasonably should have known of the potential serious side effects, including but not limited to infection and surgical intervention, and failed to properly investigate and research these issues in clinical trials;

i.      Knew or reasonably should have known of the potential serious side effects including but not limited to infection and the need for surgical intervention and failed to properly investigate and perform/post sale and adequate post marketing follow up studies;

j.      Failed and omitted to provide adequate information to medical professionals regarding the risks associated with the implantation of Cardiac Resynchronization Therapy - Defibrillators (CRT-D) including the Contak Renewal 3HE Model H179;

k.      Failed and/or omitted to inform medical professionals of the significant risk of infection as a result of degradation of the leads/wires;

l.      Manufactured, constructed, distributed, marketed, inspected, tested, and sold a implantable cardiac defibrillator which was unsafe and unfit for its reasonable, ordinary and foreseeable uses;

m.      Caused, allowed and permitted a dangerous defective and unsuitable product to be

Page 17 of 41

marketed to the medical profession for use in patients who were medically dependent upon a properly working defibrillator;

n.    Failed to adequately warn members of the medical profession of the risks and dangers inherent in the insertion and use of the Contak Renewal 3HE implantable cardiac defibrillator Model 179;

o.    Failed and/or omitted to properly test the device to determine its effectiveness, and the effectiveness of the insulation on the leads/wires;

p.    Failed and/or omitted to properly instruct members of the medical profession as to the proper manner of testing the device, as well as the proper methods of monitoring patients for defects in the device;

q.    Failed and omitted to properly design, manufacture, assemble, sell, distribute and promote a product that members of the public, including the plaintiff herein, relied upon to sustain life;

r.    Failed and omitted to exercise reasonable and ordinary care and due diligence in ascertaining the defective condition and improper design and manufacturing defects in the Contak Renewal 3E Model H179 implantable cardiac defibrillator;

s.    Failed and omitted to protect the public interest and more particularly that of the plaintiff herein;

t.    Manufactured, distributed, engineered, delivered, sold and marketed an implantable cardiac defibrillator which was inherently dangerous to the life and health of the public, its intended and foreseeable users and more particularly to the plaintiff herein;

u.    Failed and omitted to adopt and enforce proper inspection and testing techniques,

Page 18 of 41

procedures and protocols on each and every cardiac defibrillator designed, manufactured, constructed, engineered, assembled, sold and distributed including the Contak Renewal 3HE Model H179;

v.    Failed and omitted to properly and adequately notify members of the medical profession regarding the defects present in the Contak Renewal 3HE Model H179 cardiac defibrillator; and

w.    Failed and omitted to institute proper, adequately and timely recall procedures.

**FIFTY EIGHTH:**

That as a result of the above referenced conduct of the Defendant, and/or its subsidiaries, divisions, successors in interest, agents, servants, associates, partners, and/or employees, the Plaintiff, Sonia Urriola, was caused to suffer a massive fungal infection requiring removal of the device and surgical interventions and became, still is, and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her body and said plaintiff otherwise sustained psychological injuries, and upon information and belief said injuries are permanent, that by reason of the foregoing, the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals, and medical supplies in an attempt to cure herself of said injuries, and has been prevented from performing her usual duties and will be so prevented for a long time to come.

**FIFTY NINTH:**

That by reason of the foregoing, the Plaintiff, Sonia Urriola, has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF
### THE PLAINTIFF, SONIA URRIOLA, BASED UPON A
### THEORY OF NEGLIGENCE

**SIXTIETH:**

That the Plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of

the Complaints set forth in paragraphs numbered "FIRST" through "FIFTY EIGHTH", with the same

force and effect as though said allegations were herein fully set forth at length.

**SIXTY FIRST:**

That on or about June 29, 2007 as a result of the insertion of Contak Renewal 3HE Model

179, the Plaintiff, Sonia Urriola, was caused to suffer a massive fungal infection requiring removal

of the device and resulting in serious and severe injuries.

**SIXTY SECOND:**

That the aforementioned occurrence was caused wholly and exclusively as a result of the

negligence, carelessness and recklessness of Defendants, and/or Defendants' divisions, successors in

interest, subsidiaries, agents, servants, associates, partners, and/or employees without any negligence

or culpable conduct on the part of the Plaintiff, Sonia Urriola, contributing thereto.

**SIXTY THIRD:**

That Defendants, and/or their subsidiaries, divisions, agents, servants, associates, partners,

and/or employees, actually and/or reasonably knew or should have known at the time of the design

and/or manufacture of the aforesaid Contak Renewal 3HE Model H179, that said device was

dangerously defective, hazardous, unsafe, dangerous, and posed certain dangers and it was unfit for

its ordinary, normal and foreseeable usages by intended users and/or operators.

**SIXTY FOURTH:**

That, upon information and belief, the happening of the occurrence as aforesaid was the result of the negligence, carelessness and recklessness of defendants, and/or each of them which caused the Plaintiff to suffer and sustain serious and severe injuries.

**SIXTY FIFTH:**

That, at all times mention herein, the Defendants knew and/or reasonably should have known the intended use to which said Contak Renewal 3HE Model 179 and its appurtenances would be put, and that the general public, and more particularly the Plaintiff herein, would be involved in said uses.

**SIXTY SIXTH:**

That, at all times mentioned herein, the Defendants and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, failed to exercise the proper and reasonable degree of care in the manufacturing, assembling, engineering, and inserting of the Contak Renewal 3HE Model 179, causing said Contak Renewal 3HE Model 179 to be dangerously defective, and not reasonably safe for its ordinary, intended and foreseeable purposes.

**SIXTY SEVENTH:**

That as a result of the above referenced conduct of the Defendants, and/or their subsidiaries, divisions, agents, servants, associates, partners, and/or employees, the Plaintiff, Sonia Urriola, was caused to suffer injuries and became, still is, and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her head, body, fingers, limbs, extremities, and hands, and said Plaintiff otherwise sustained psychological injuries, and upon information and belief said injuries are permanent, that by reason of the foregoing, the Plaintiff, Sonia Urriola, was obliged to and did necessarily employ hospital aid, medical aid, medicinals and medical

Page 21 of 41

supplies in an attempt to cure himself of said injuries, and has been prevented from performing his usual duties and will be so prevented for a long time to come.

**SIXTY EIGHTH:**

That by reason of the foregoing, the Plaintiff, Sonia Urriola, has been damaged in a sum exceeding the jurisdictional limits of all lower Courts.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY OF BREACH OF EXPRESS WARRANTY

**SIXTY NINTH:**

That the plaintiff, Sonia Urriola repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "SIXTY EIGHTH", with the same force and effect as though said allegations were herein and fully set forth at length.

**SEVENTIETH:**

Defendants expressly warranted to the plaintiff that the product which they designed, developed, manufactured and sold was of a merchantable quality, fit, safe and otherwise beneficial to the plaintiff's health and well being and that it would improve the quality of plaintiff's life.

**SEVENTY FIRST:**

Defendants' representations formed a part of the basis of the bargain and plaintiff, Sonia Urriola relied upon said representations in deciding to have the product implanted.

**SEVENTY SECOND:**

That the product implanted in the plaintiff was unsafe, unmerchantable, unfit for use in the body, and otherwise injurious to the plaintiff, Sonia Urriola and did not operate as represented.

**SEVENTY THIRD:**

Through the sale of the product, the defendants and/or each of them are merchants pursuant to Section 2-314 of the Uniform Commercial Code.

**SEVENTY FOURTH:**

Defendants breached the express warranty of merchantability in sale of the product to Sonia Urriola and said products was not fit for its ordinary purpose as described above.

**SEVENTY FIFTH:**

As a direct and proximate cause of the defendants breach of their express warranties described herein, the plaintiff, Sonia Urriola suffered an injury as alleged herein above.

**SEVENTY SIXTH:**

That by reason of the foregoing the plaintiff, Sonia Urriola has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF
OF THE PLAINTIFF, SONIA URRIOLA, BASED UPON A THEORY
OF BREACH OF IMPLIED WARRANTY**

**SEVENTY SEVENTH:**

Plaintiff repeats, reiterates and realleges each and every allegation of the complaint set forth in paragraphs "FIRST" through "SEVENTY SIXTH" with the same force and effect as those said allegations were herein fully set forth at length.

**SEVENTY EIGHTH:**

Defendants, and/or each of them, are in the business of manufacturing and/or supplying and/or placing into the stream of commerce for consumers implantable cardiac devices known as the Contak Renewal 3HE Model H179.

**SEVENTY NINTH:**

By placing the product into the stream of commerce, said defendants impliedly warranted that the product was of merchantable quality, and was fit and safe for its intended use and was fit for the particular purpose of protecting the plaintiff, Sonia Urriola from cardiac arrhythmia.

**EIGHTIETH:**

That the product was placed into the stream of commerce by said defendants and was unmerchantable, was not fit and was not safe for its intended use and not fit for the particular purpose intended.

**EIGHTY FIRST:**

That the defects in the product manufactured and/or supplied by the defendants were present at the time that the product left the hands of the defendants.

**EIGHTY SECOND:**

As a result, the defendants breached implied warranties for the product because said product was defective, unmerchantable, and not fit for its intended particular purpose.

**EIGHTY THIRD:**

The plaintiff Sonia Urriola was a foreseeable user of the product herein, and as a direct and proximate cause of the defendants' breach of implied warranty, she sustained serious, life threatening injuries.

**EIGHTY FOURTH:**

That by reason of the foregoing plaintiff Sonia Urriola damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## FRAUDULENT MISREPRESENTATION

**EIGHTY FIFTH:**

That the plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of

the complaint set forth in paragraph "FIRST" through "EIGHTY FOURTH" with the same force

and effect as those said allegations were herein fully set forth at length.

**EIGHTY SIXTH:**

That the defendants fraudulently and falsely represented to the medical community and to the

plaintiff herein that their product had been tested and found to be safe and effective for patients with

heart disease.

**EIGHTY SEVENTH:**

That the representations made by the defendants were in fact false.

**EIGHTY EIGHTH:**

That when said representations were made by the defendants that they knew those

representations to be false and/or willfully, wantonly and recklessly disregarded whether the

representations were true.

**EIGHTY NINTH:**

That these representations were made by the defendants and/or their successors in interest

and/or each of them with the intent of defrauding and deceiving the plaintiff and the public in general

and the medical community in particular to recommend, dispense and purchase the product all of

which evidences callous, reckless, willful and depraved in difference to the health and safety and

welfare of the injured plaintiff.

**NINETIETH:**

At the time that the aforesaid representations were made by the defendant that the injured plaintiff was unaware of the falsity of said representations and reasonably believe them to be true.

**NINETY FIRST:**

In reliance upon said representations the injured plaintiff was induced to and did have the product surgically implanted and thereafter sustained injury and damages as a result of the unsafe product.

**NINETY SECOND:**

That as a result of the defendant malicious, reckless and/or negligent conduct, the plaintiff Sonia Urriola was caused to suffer significant injuries and became and still is and for a long time to come will be sick, sore, lame, bruised, injured, wounded and disabled in and about the various parts of her body and that said plaintiff sustains psychological injuries and upon information and belief said injuries are permanent. By reason of the foregoing the plaintiff, Sonia Urriola was obliged to and unnecessarily did employ hospital aid, surgical intervention, medical aid, rehabilitation services and medical supplies in an attempt to cure herself of said injuries and has been prevented from performing her usual duties and will be still prevented for a long time to come.

**NINETY THIRD:**

That by reason of the foregoing plaintiff, Sonia Urriola has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## FRAUDULENT CONCEALMENT WARRANTY

**NINETY FOURTH:**

That the plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the complaint set forth in paragraph "FIRST" through "NINETY THIRD" with the same force and effect as those said allegations were herein fully set forth at length.

**NINETY FIFTH:**

That at all times during the course of dealings between the defendants and the injured plaintiff the defendants misrepresented that the product was safe for its intended use.

**NINETY SIXTH:**

The defendants knew that the representations were false as the defendants knew that there were problems with the Contak Renewal Model H179 and/or components thereof malfunctioning prior to implantation and/or injury.

**NINETY SEVENTH:**

That in representations to plaintiff and by withholding defect information from the FDA, thus preventing regulation, the defendants fraudulently concealed and intentionally omitted the aforesaid material information and that the product was not safe for use and was susceptible to malfunction; that the defendants were aware of the products danger and that the product was defective and that the defect caused malfunction that rendered the device useless for a period of time with the potential to cause death and severe injury and emotional distress and that the product was manufactured and designed negligently and that the product was manufactured and designed defectively and that the product was manufactured and designed improperly.

**NINETY EIGHTH:**

The defendants were under a duty to disclose to injured patients and their physicians, hospitals and medical providers the defective nature of their product and/or risks and dangers associated with it.

**NINETY NINTH:**

That the defendants had sole access to material facts concerning the defective nature of the product and the defect and the propensity to malfunction and cause serious and dangerous side effects including infection, and hence cause damage to the injured plaintiff.

**ONE HUNDREDTH:**

That the defendants' concealment and omission of material facts concerning the safety of the product were made purposely, willfully, wantonly, and/or recklessly to mislead injured patients and their physicians, hospital and medical providers into reliance, continued use of this product and actions thereon and to cause them to purchase this product and/or have them implanted.

**ONE HUNDRED FIRST:**

That the defendants knew that the patients, and in particular the plaintiff herein, and their physician, hospitals, medical providers had no way of determining the truth behind defendants' concealment and omissions and that these included material omissions of facts surrounding the product.

**ONE HUNDRED SECOND:**

Injured plaintiff, Sonia Urriola, as well as her doctors, health care providers and/or hospitals reasonably relied on defendants concealment and/or misstatement of fact.

**ONE HUNDRED THIRD:**

As a direct and proximate result of defendants malicious, reckless and/or negligent conduct the plaintiff, Sonia Urriola, suffered significant injuries that upon information and belief are permanent, and has been damaged in an amount exceeding the jurisdictional limits of all lower Courts.

**AS AND FOR A EIGHTH CAUSE OF ACTION TO
RECOVER MONETARY DAMAGES FROM THE DEFENDANTS
UNDER A THEORY OF DEPARTURE FROM ACCEPTED MEDICAL
PRACTICE ON BEHALF OF THE PLAINTIFF, SONIA URRIOLA**

**ONE HUNDRED FOURTH:**

That the Plaintiff, Sonia Urriola, repeats, reiterates and realleges each and every allegation of the Complaints set forth in paragraphs numbered "FIRST" through "ONE HUNDRED THIRD", with the same force and effect as though said allegations were here and fully set forth at length.

**ONE HUNDRED FIFTH:**

That at all times mentioned herein, the defendant MICHAEL LIOU, M.D., hereinafter referred to as "LIOU", maintained offices for the practice of medicine within the County of New York, City and State of New York.

**ONE HUNDRED SIXTH:**

That at all times mentioned herein, the defendant "LIOU" held himself out to the general public and more particularly to the plaintiff herein as a duly qualified and/or licensed physician and/or surgeon capable of practicing medicine and/or surgery within the State of New York.

**ONE HUNDRED SEVENTH:**

That at all times mentioned herein the defendant "LIOU", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services,

radiology services, laboratory services, pharmacy services, diagnostic and treatment services, surgical services including pre operative and post operative services, anesthesia services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein, and further held himself out to such individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED EIGHTH:**

At all times mentioned herein, the defendant BETH ISRAEL MEDICAL CENTER, hereinafter referred to as "BIMC" was and still is a corporation, duly existing pursuant to the laws of the State of New York, and doing business within the County of New York, City and State of New York.

**ONE HUNDRED NINTH:**

That at all times mentioned herein, the defendant "BIMC" owned, operated, supervised, maintained, and/or controlled certain premises within the County of New York, City and State of New York, for the care of sick and ailing persons, and for other individuals requiring medical care and attention, including the plaintiff herein.

**ONE HUNDRED TENTH:**

That at all times mentioned herein, the defendant "BIMC", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services, radiology services, laboratory services, pharmacy services, diagnostic and treatment services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein and further held itself out to such

individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED ELEVENTH:**

At all times mentioned herein, the defendant BETH ISRAEL MEDICAL CENTER PHILLIPS AMBULATORY CARE CENTER, hereinafter referred to as "BIMC-PHILLIPS" was and still is a corporation, duly existing pursuant to the laws of the State of New York, and doing business within the County of New York, City and State of New York.

**ONE HUNDRED TWELFTH:**

That at all times mentioned herein, the defendant "BIMC-PHILLIPS" owned, operated, supervised, maintained, and/or controlled certain premises within the County of New York, City and State of New York, for the care of sick and ailing persons, and for other individuals requiring medical care and attention, including the plaintiff herein.

**ONE HUNDRED THIRTEENTH:**

That at all times mentioned herein, the defendant "BIMC-PHILLIPS", for a consideration, offered to render competent and adequate medical services, nursing services, emergency room services, ambulance services, patient transportation services, operating room services, recovery room services, radiology services, laboratory services, pharmacy services, diagnostic and treatment services, and in general all necessary services to give proper, adequate, and competent medical care to members of the general public, and more particularly, the plaintiff herein and further held itself out to such individuals as having the necessary personnel, equipment, supplies and facilities to perform the same.

**ONE HUNDRED FOURTEENTH:**

That in reliance upon the foregoing, the plaintiff, Sonia Urriola, during a continuous course

of treatment beginning on or about November 4, 2004 and ending on or about June 29, 2007 came

under and/or submitted to the care and attention of the defendants LIOU, BIMC and BIMC-

PHILLIPS.

**ONE HUNDRED FIFTEENTH:**

That at all times mentioned herein the plaintiff, Sonia Urriola, submitted to various tests,

examinations, procedures, treatments and techniques, both oral and physical, performed by or at the

special instance and request of the defendants and/or each of them, their agents, servants, associates,

employees, and/or partners.

**ONE HUNDRED SIXTEENTH:**

That at all times mentioned herein, the defendants, their agents, servants, associates, partners

and/or employees, were aware of or should have been aware of the results, import, findings and/or

consequences of this history, complaints, signs, symptoms, pains, sensation and occurrences being

experienced by the plaintiff, as well as the results, import, findings and/or consequences of the tests,

examinations, procedure, treatments and/or techniques performed on the plaintiff, by the said defen-

dants, their agents, servants, employees, associates and/or partners.

**ONE HUNDRED SEVENTEENTH:**

That in view of the foregoing, the course of treatment, advice, diagnosis, medical care and

attention, prescriptions, tests, examinations, studies, surgery, pre and post surgical care, procedures

and/or techniques given to and/or performed on the plaintiff by the defendants, their agents, servants,

associates, partners and/or employees was not in accord with the accepted standards of the proper

practice of medicine, which are generally recognized within the local, state or national community.

**ONE HUNDRED EIGHTEENTH:**

That the defendants LIOU, BIMC and BIMC-PHILLIPS and/or each of them, individually, jointly and/or concurrently, their agents, servants, associates, partners and/or employees, by acts of commission and omission were negligent, careless and reckless and departed from accepted practices in the following areas:

a.  negligently, carelessly, and recklessly failed to properly monitor plaintiff after implanting a Contak Renewal 3HE, Model H179 in plaintiff;

b.  negligently, carelessly and recklessly failed to remove a defective implantable cardiac defibrillator in a timely fashion;

c.  failed and omitted to remove this device from the plaintiff's body before the device caused injury to plaintiff;

d.  failed to use appropriate precautionary measures to avoid infection and injury in the plaintiff's body as a result of a defective and dangerous implantable cardiac defibrillator they inserted in plaintiff;

e.  negligently, carelessly, and recklessly failed to attach appropriate significance to plaintiff's complaints of weakness;

f.  negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of fatigue;

g.  negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of difficulty walking;

h.  negligently, carelessly and recklessly failed to attach appropriate significance to

plaintiff's complaints of difficulty climbing stairs;

i.     negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of weight gain;

j.     negligently, carelessly and recklessly failed to attach appropriate significance to plaintiff's complaints of atypical body aches;

k.     negligently, carelessly and recklessly failed and omitted to diagnose a massive fungal infection in plaintiff as a result of the Contak Renewal 3HE Model 179 ICD implanted in plaintiff;

l.     caused and/or allowed the plaintiff to develop a massive infection of the defective ICD implanted in her body;

m.     failed to maintain proper monitoring of plaintiff after being notified of the recall of the Contak Renewal 3HE Model H179 which was implanted in plaintiff;

n.     failed and omitted to inform the plaintiff of the dangers and risks as well as alternatives;

o.     failed and omitted to make a timely diagnosis of the plaintiff's condition;

p.     failed and omitted to perform proper and timely tests, examinations, procedures, studies, surgery, pre and post surgical care, and in general in giving medical care, attention, treatment and/or care to the plaintiff;

q.     failed and omitted to understand the clinical analysis, laboratory analysis, history, physical examination, complaints, pains, signs and/or symptoms so that a proper diagnosis could be made and/or a proper course of treatment given;

r.     failed and omitted to conform to the accepted standards of care and skill in giving

advice, treatment, anesthesiology, prescriptions, examinations, information, services, surgery, pre and post surgical care, attention, studies, laboratory and radiological examinations and/or facts to the plaintiff herein;

s.    failed and omitted to use their best judgment and reasonable care in their medical care, attention, services, treatment, medication, diagnosis and other medical services rendered on behalf of the plaintiff.

**ONE HUNDRED NINETEENTH:** .

That solely as a result of the negligence and/or medical malpractice of the defendants, and/or each of them, their agents, servants, associates, partners and/or employees, and without any negligence or culpable conduct on the part of the plaintiff contributing thereto, the plaintiff was caused to sustain the injuries which are hereinafter referred to.

**ONE HUNDRED TWENTIETH:**

That as a result of the negligence and/or medical malpractice, as aforesaid, the plaintiff, Sonia Urriola became, still is and for a long time to come will be sick, sore, lame, bruised, injured, and wounded in and about the various parts of her head, neck, lungs, body, limbs and shoulders, both internally and externally including various organs, functions of her body and including surrounding muscles, tissues, arteries, veins, blood vessels, cells, and other parts of plaintiff's body and that plaintiff also sustained psychological injuries and/or mental anguish and agony and was otherwise injured and upon information and belief said injuries are permanent; that by reason of the foregoing the plaintiff, Sonia Urriola as obliged to and did necessarily employ medical aid, medicinals, hospital aid and other treatment in an attempt to cure herself of said injuries and has been prevented from performing her duties and will be so prevented for a long time to come.

**ONE HUNDRED TWENTY FIRST:**

That by reason of the foregoing departures from accepted medical practice, the plaintiff, Sonia Urriola, has been damaged by the defendants herein and seeks a monetary award and damages which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction over the defendants herein.

### AS AND FOR A NINTH CAUSE OF ACTION TO RECOVER MONETARY DAMAGES FROM THE DEFENDANT UNDER A THEORY OF LACK OF INFORMED CONSENT ON BEHALF OF THE PLAINTIFF, SONIA Urriola

**ONE HUNDRED TWENTY SECOND:**

That the plaintiff, Sonia Urriola, repeats, reiterates, and realleges each and every allegation of the Complaint, set forth in paragraphs "FIRST" through "ONE HUNDRED TWENTY FIRST" with the same force and effect as though said allegations were herein fully set forth at length.

**ONE HUNDRED TWENTY THIRD:**

That at all times mentioned herein, the defendants LIOU, BIMC and BIMC-PHILLIPS, their agents, servants, associates, partners, and/or employees negligently, carelessly and recklessly failed and omitted to make an understandable disclosure to the plaintiff of the surgery, diagnostic procedures, and/or invasive procedures, that said defendant was about to perform and/or did perform including but not limited to the dangers and risks to the plaintiff's health and/or life, whether or not the surgery, diagnostic procedure, or invasive procedures were ordinarily performed under the same conditions, whether or not other or different operations and/or procedures, if any, are and were used, and the manner in which the alternative operations and/or risks involved in the alternative operation and/or procedure.

### ONE HUNDRED TWENTY FOURTH:

That had the defendants given accurate information disclosing the foregoing departures, risks, and/or alternatives, the plaintiff and/or a reasonably prudent person would have decided not to undergo the surgery, diagnostic procedure and/or invasive procedure at the time and under the circumstances then and there existing to the knowledge of the defendants.

### ONE HUNDRED TWENTY FIFTH:

That the above described negligent failure and omission by the defendants to obtain a proper informed consent from the plaintiff led to various unauthorized invasions upon the plaintiff's body in the nature of unauthorized surgical procedures, diagnostic procedures and/or invasive procedures and that as such the defendants are responsible for the entire flow of damages and injury following said procedures.

### ONE HUNDRED TWENTY SIXTH:

That as a result of the negligent failure and omission to obtain a proper informed consent, the plaintiff, Sonia Urriola, became, still is and for a long time to come will be sick, sore, lame, bruised, injured, and wounded in and about the various parts of her heart, lungs, his head, neck, abdomen, intestines, body and limbs, both internally and externally including various organs, functions of her body and including surrounding muscles, tissues, arteries, veins, blood vessels, cells, and other parts of plaintiff's body and that plaintiff also sustained psychological injuries and or mental anguish and agony and was otherwise injured and upon information and belief said injuries are permanent; that by reason of the foregoing the plaintiff, Sonia Urriola, was obliged to and did necessarily employ medical aid, medicinals, hospital aid and other treatment in an attempt to cure herself of said injuries and has been prevented from performing her duties and will be so prevented for a long time to come.

**ONE HUNDRED TWENTY SEVENTH:**

That as a result of the foregoing lack of informed consent the plaintiff, Sonia Urriola has been damaged by the defendants herein and seeks a monetary award and damages which exceed the jurisdictional limit of all lower Courts which would otherwise have jurisdiction over the defendants herein

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the First Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Second Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Third Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

**WHEREFORE,** plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Fourth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Fifth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Sixth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Seventh Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Eighth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action;

*WHEREFORE*, plaintiff, Sonia Urriola, demands a monetary judgement in the form of damages against the defendants and/or each of them herein on the Ninth Cause of Action, in an amount which exceeds the jurisdictional limits of all lower Courts which would otherwise have jurisdiction of this action; and

*WHEREFORE,* plaintiff, SONIA URRIOLA, demands a monetary judgement in the form of damages against the defendants and/or each of them herein together with the costs and disbursements of this action.

Dated: Brooklyn, New York
   October **24** , 2007

   I have read the foregoing and I certify that , upon information and belief, the source of which is the review of a file maintained by my office, that the foregoing is not frivolous as defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator.

                ANDREA E. BONINA, ESQ.
                BONINA & BONINA, P.C.
                Attorneys for Plaintiff(s)
                16 Court Street, Suite 1800
                Brooklyn, New York 11241
                (718) 522-1786

## STATEMENT PURSUANT TO CPLR SECTION 3012-a(2)

I am an attorney duly licensed to practice law in the State of New York. I was unable to obtain the consultation required by CPLR Section 3012-a(1) because the Statute of Limitations is to expire in the very near future and would bar the action. The Certificate of Merit required by CPLR Section 3012-a(1) could not reasonably be obtained before such time expired. The Certificate of Merit required shall be served within 90 days after service of the Complaint.

ANDREA E. BONINA, ESQ.

STATE OF NEW YORK, COUNTY OF                    ss.:

I, the undersigned, am an attorney admitted to practice in the courts of New York, and

☐  certify that the annexed
Attorney's has been compared by me with the original and found to be a true and complete copy thereof.
Certification

say that: I am the attorney of record, or of counsel with the attorney(s) of record, for

■  I have read the annexed  **SUMMONS, VERIFIED COMPLAINT AND CERTIFICATE OF MERIT** now the contents thereof
and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as
to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based on
Attorney's on the following.  The review of a file maintained in my office
Verification
By
Affirmation

The reason I make this affirmation instead of Plaintiffs is that Plaintiffs reside outside the county where my
office is maintained.

Dated: OCTOBER  24  , 2007

(Print signer's name below signature)
ANDREA E. BONINA, ESQ.

STATE OF NEW YORK, COUNTY OF KINGS                    ss:

, being sworn says: I am the plaintiff

☐  in the action herein; I have read the annexed
Individual
Verification know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on
information and belief, and as to those matters I believe them to be true.
the                              of

☐  a corporation, one of the parties to the action; I have read the annexed
Corporate know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged
Verification on information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon
knowledge, is based on the following:

Sworn to before me on

(Print signer's name below signature)

STATE OF NEW YORK, COUNTY OF                    ss.:
, being sworn says: I am not a party to the action, am over the age of 18 years of age and reside at
On                              , I served a true copy of the annexed                              in the following manner:

☐  by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S.
Service Postal Service within the State of New York, addressed to the last know address of the addressee(s) as indicated below:
by Mail

☐  by delivering the same personally to the persons and at the addresses indicated below:
Personal
Service

☐  by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation
Service by designated by the attorney for that purpose.  In doing so I received a signal from the equipment of the attorney indicating that
Electronic the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon,
Means in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known
address of the addressee(s) as indicated below:

☐  by depositing the same with an overnight delivery service in a wrapper proper addressed.  Said delivery was made prior to the
Overnight latest time designated by the overnight delivery service for overnight delivery.  The address and delivery service are indicated
Delivery below:
Service

INDEX NO.: 114306/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SONIA URRIOLA,

Plaintiffs,

-against-

GUIDANT CORPORATION, GUIDANT SALES CORPORATION, BOSTON SCIENTIFIC
CORPORATION, MICHAEL LIOU, M.D., BETH ISRAEL MEDICAL CENTER AND BETH
ISRAEL MEDICAL CENTER PHILIPS AMBULATORY CARE CENTER,

Defendants,

## SUMMONS, VERIFIED COMPLAINT AND CERTIFICATE OF MERIT

**BONINA & BONINA, P.C.**
Attorneys for *Plaintiff(s)*
16 Court Street, Suite 1800
Brooklyn, NY 11241
Tele. No.: (718) 522-1786
Fax No.: (718) 243-0414

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

Dated: OCTOBER 24 , 2007        Signature
                                Print Signer's Name:    ANDREA E. BONINA, ESQ.

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*

                                *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐
NOTICE OF
ENTRY

*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*

☐
NOTICE OF
SETTLEMENT

*that a          of which the within is a true copy*
*will be presented for settlement to the Hon.          , one of the judges of the*
*within named Court, at Supreme,          on          ,*

Dated:

                                **BONINA & BONINA, P.C.**
                                *Attorneys for Plaintiff(s)*
                                16 COURT STREET
                                BROOKLYN, N.Y. 11241

To:

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA, Tampa Division

01 DEC -4 PM 3: 20

### IN RE: FEN-PHEN CASES

FILED ... FLORIDA
TAMPA, FLORIDA

#### CASE NUMBERS:

| | | |
|---|---|---|
| 8:01-CV-1587-T-30-MAP | 8:01-CV-1615-T-30-TBM | 8:01-CV-1680-T-30-TBM |
| 8:01-CV-1589-T-30-MAP | 8:01-CV-1616-T-30-MAP | 8:01-CV-1681-T-30-MAP |
| 8:01-CV-1591-T-30-MSS | 8:01-CV-1618-T-30-TBM | 8:01-CV-1682-T-30-MAP |
| 8:01-CV-1592-T-30-TBM | 8:01-CV-1619-T-30-TBM | 8:01-CV-1683-T-30-TBM |
| 8:01-CV-1593-T-30-TGW | 8:01-CV-1620-T-30-TBM | 8:01-CV-1684-T-30-EAJ |
| 8:01-CV-1594-T-30-EAJ | 8:01-CV-1622-T-30-MAP | 8:01-CV-1685-T-30-MAP |
| 8:01-CV-1595-T-30-EAJ | 8:01-CV-1624-T-30-MSS | 8:01-CV-1686-T-30-EAJ |
| 8:01-CV-1597-T-30-MAP | 8:01-CV-1625-T-30-TBM | 8:01-CV-1688-T-30-EAJ |
| 8:01-CV-1598-T-30-EAJ | 8:01-CV-1626-T-30-MSS | 8:01-CV-1689-T-30-EAJ |
| 8:01-CV-1599-T-30-TBM | 8:01-CV-1628-T-30-EAJ | 8:01-CV-1690-T-30-EAJ |
| 8:01-CV-1603-T-30-MAP | 8:01-CV-1629-T-30-MSS | 8:01-CV-1691-T-30-TGW |
| 8:01-CV-1604-T-30-TGW | 8:01-CV-1630-T-30-EAJ | 8:01-CV-1692-T-30-MAP |
| 8:01-CV-1605-T-30-MAP | 8:01-CV-1631-T-30-TBM | 8:01-CV-1694-T-30-MAP |
| 8:01-CV-1606-T-30-EAJ | 8:01-CV-1634-T-30-MSS | 8:01-CV-1695-T-30-MAP |
| 8:01-CV-1607-T-30-MAP | 8:01-CV-1635-T-30-TGW | 8:01-CV-1696-T-30-EAJ |
| 8:01-CV-1608-T-30-MSS | 8:01-CV-1673-T-30-MAP | 8:01-CV-1702-T-30-TGW |
| 8:01-CV-1610-T-30-EAJ | 8:01-CV-1674-T-30-TGW | 8:01-CV-1703-T-30-EAJ |
| 8:01-CV-1611-T-30-TBM | 8:01-CV-1675-T-30-TBM | 8:01-CV-1704-T-30-TGW |
| 8:01-CV-1612-T-30-EAJ | 8:01-CV-1677-T-30-MSS | 8:01-CV-1724-T-30-MAP |
| 8:01-CV-1613-T-30-MSS | 8:01-CV-1678-T-30-MSS | |
| 8:01-CV-1614-T-30-TGW | 8:01-CV-1679-T-30-MSS | |

## ORDER ON JURISDICTIONAL ISSUES[1]

This cause came on for consideration upon the Plaintiff's motion for remand (Dkt. 9),

Defendant's opposition thereto (Dkts. 10, 12) and other submissions concerning this Court's subject

matter jurisdiction. Specifically, Defendants requested that all cases be consolidated with the judge

in the lowest numbered case for resolution of all jurisdictional matters. (Dkts. 8, 25). Pursuant to

Local Rule 1.04, the Honorable Judge James S. Moody Jr. received transfer of all diet drug cases

pending in the Middle District of Florida with the exception of twelve cases[2] pending before the

Honorable James D. Whittemore.

---

[1] The docket numbers referred to in this Order are for Case No. 8:01-cv-1587-T-30MAP; the jurisdictional rulings herein apply to each of the cases listed above.

[2] Subsequently, the parties in one of these cases agreed to remand the case to state court after finding diversity of citizenship lacking. See Scharle v. American Home Products Corp., Case No. 8:01-cv-1601-T-27EAJ. Accordingly, there are 11 cases pending before Judge Whittemore.

41

Plaintiff filed supplemental material on the motion for remand. (Dkt. 21). Additionally, Defendant filed motions for leave to conduct discovery regarding jurisdiction. (Dkt. 20). The Court heard the arguments of counsel on October 29 and November 27, 2001, and reviewed supplemental briefs submitted by the parties on certain jurisdictional issues, as permitted by the Court. (Dkts. 26-27, 30-34, 36, 38). Upon careful consideration, the Court finds that these cases were properly removed to this Court for the reasons set forth herein.

## BACKGROUND

This case and the seventy-two other product liability cases removed from the Sixth Judicial Circuit Court in and for Pinellas County, Florida, involve the prescription diet drugs, Pondimon (fenfluramine) and Redox (dexfenfluramine),[2] and allege personal injury damages caused from the ingestion of these drugs. These cases are currently in the process of transfer, as potential tag-along cases, to the diet drug Multi-District Litigation (MDL) pending in the Eastern District of Pennsylvania before the Honorable Louis C. Bechtle.[3] See In re Diet Drugs (Phentermine / Fenfluramine / Dexenfluramine) Products Liability Litigation, MDL Docket No. 1203, U.S. District Court, Eastern District of Pennsylvania. A conditional transfer order has been entered and Plaintiffs have filed an opposition to the transfer, at least in part based upon the pendency of the jurisdictional issues resolved herein. This Court has otherwise stayed all pretrial proceedings pending the resolution of the transfer. (Dkt. 25).

In the MDL, an "Official Court Notice of Nationwide Diet Drug Class Action Settlement" was filed. The Plaintiffs in the cases pending before this Court have opted out of this settlement;

---

[2] These diet drugs were voluntarily withdrawn from the market in September 1997.

[3] These cases were initially consolidated by Order of the Judicial Panel on Federal Multi-District Litigation on December 12, 1997.

although Plaintiff filed the official settlement notice herein in support of her motion to remand this action to state court on the grounds that Defendant failed to establish that the amount in controversy is greater than the required amount of $75,000.

After Plaintiff filed motions for remand, Defendant objected that Plaintiff's motion for remand was untimely[4] because it was filed thirty-one days after Defendant filed its notice of removal. The time for filing a motion to remand is set in 28 U.S.C. §1447(c) which states, in pertinent part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

Because Defendant brought up the issue of untimeliness at the October 29 hearing, the Court permitted Plaintiff to file a supplemental brief on this issue.

Under the removal statute, an untimely motion precludes the Court's review of defects "other than lack of subject matter jurisdiction" and acts like a waiver by Plaintiff of any procedural defects in the removal. See Brown v. Prudential Ins. Co. of America, 954 F. Supp. 1582, 1584 (S.D. Ga. 1997); see also In re Plowman, 218 B.R. 607, 613 (N.D. Al. 1998) (explaining 1996 amendment regarding defects in removal). Plaintiff's motion for remand makes two arguments for "procedural defects" in Defendant's removal:  (1) the timeliness of the filing of the removal notice, and (2) Defendant's failure to obtain the consent of one of the other co-defendants prior to removal. Accordingly, the Court must first review Defendant's objection to timeliness of the motion for remand prior to addressing to the merits of the remand motion as it relates to those defects other than lack of subject matter jurisdiction.

---

[4] Defendant concedes that in one of the cases, Lockhart v. American Home Products Corp., Case No. 8:01-cv-1704-T-30TGW, Plaintiff filed a timely motion for remand.  This case is specifically discussed *infra*.  Additionally, in five of the cases, Plaintiff failed to file a motion for remand but filed a supplement to the motion to remand.  Because Plaintiff filed a supplemental brief on the issue of remand in these cases, the Court considers whether remand is appropriate for all cases.

3

Plaintiff's motion for remand also disputes that Defendant has established subject matter jurisdiction. First, Plaintiff asserts that because the complaint incorporates the allegations contained in a "Master Complaint" filed in the state court action, several of the defendants are not diverse in citizenship from the Plaintiff.[5] Second, Plaintiff asserts that Defendant has not established that this case involves $75,000 in controversy as required for this Court to have subject matter jurisdiction pursuant to 28 U.S.C. §1332.[6] This Court permitted the parties to file additional materials concerning the amount in controversy. See Williams v. Best Buy, 269 F.3d 1316 (11th Cir. 2001).

## LEGAL ANALYSIS

This Court is faced with the decision of whether Plaintiff's motion for remand, filed thirty-one days after Defendant filed its notice of removal, is untimely under the removal statute, 28 U.S.C. §1447.[7] If found to be untimely, the Court is precluded from addressing the Plaintiff's arguments that (1) Defendant's notice of removal was filed untimely and (2) Defendant failed to obtain the consent of one of the other co-defendants. Plaintiff also raises lack of subject matter jurisdiction in the motion to remand. See Hobbs v. Blue Cross Blue Shield of Alabama, 1283650 (11th Cir. Oct. 24, 2001) (court must determine whether subject matter jurisdiction exists over a pending action "whether or not this issue was raised before"). Accordingly, the Court will first address the issue of lack of subject matter jurisdiction.

---

[5] Initially, this Court *sua sponte* remanded five cases on the grounds that diversity of citizenship did not exist because Plaintiff incorporated several non-diverse defendants from the "Master Complaint" into these actions. Upon remand, Defendant again removed these cases and clarified that the many of the non-diverse defendants *were not* incorporated into this action and complete diversity existed. At the October 29 hearing, the Court ruled *ore tenus* that the incorporation of the "Master Complaint" does not defeat diversity of citizenship. See Dkt. 22.

[6] Plaintiff concedes, in supplemental briefing (Dkt. 38, p. 2), that based on certain Plaintiffs' injuries, 18 of the cases meet the amount in controversy requirement.

[7] There are two "batches" of cases that were removed. The first batch was removed on August 28, 2001, and the second batch was removed on September 4, 2001.

4

*Lack of Subject Matter Jurisdiction*

Plaintiff asserts that Defendant has failed to establish in its removal notice that it has met the amount in controversy requirement of $75,000. Defendant's removal notice reads, in pertinent part, that "no verdict entered in any similar case has been for less than $75,000. *See, e.g.*, Media Reports, attached as Exhibit C. Accordingly, on its face, Plaintiff's Complaint places more than $75,000 in controversy." Dkt. 1, ¶11. Plaintiff's complaint alleges the amount in controversy exceeds $15,000, as required for the state court's jurisdiction, and argues that the allegations in Defendant's removal notice fall short of the meeting the burden required of a removing party. See Golden v. Dodge-Markham Co., Inc., 1 F. Supp.2d 1360 (M.D. Fla. 1998).

The Eleventh Circuit recently addressed the burden the removing party must carry in properly removing a case under the Court's diversity jurisdiction. See Williams v. Best Buy Co., 2001 WL 1244759 (11th Cir. Oct. 18, 2001). When the complaint fails to seek a specified amount of damages, the removing party need only show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Id.

Defendant asserts that the allegations in Plaintiff's complaint are sufficient to establish the amount in controversy. Plaintiff alleges, in pertinent part, that she has sustained "serious and permanent injuries including, but not limited to, injuries of the heart, pulmonary system and/or neurological and other physical injuries; disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future." See Dkt. 1, ¶11, *citing* Plaintiff's Master Complaint. Defendant also cites to cases with similar allegations that were found to have sufficiently supported the amount in controversy requirement. Defendant further asserts, in its notice of removal, that no verdict "in a similar case" has been entered for less than $75,000. Plaintiff

asserts that Defendant has failed to make an "affirmative showing" that Plaintiff's allegations meet this threshold requirement.

Defendant initially requested permission to conduct discovery on this issue. See Dkt. 11. The Court did not grant this request, instead permitting the parties to file additional material supporting their arguments. In these additional pleadings, Plaintiff filed the official court notice of settlement from the MDL case. See Dkt. 21. She analogizes her case to those covered by the class action settlement notice who are listed as only receiving $6000-10,000 based on their injuries, and contends that Defendant can not affirmatively show that similar cases have damages greater than $75,000.

Defendant, however, filed the declaration of one of the attorneys involved in the AHP litigation who cites five diet drug cases in various state courts that had jury verdicts (all of the cases reaching verdict and including only compensatory damages) ranging from $1.75 million to $30 million. See Dkt. 34. In the Declaration, Mr. Grossi also attests that the plaintiffs in those cases alleged similar "broadly worded" claims for damages and argued at trial that their conditions were likely to deteriorate and may require surgery in the future.

At the hearing on this issue, the Court found Defendant's supplemental filings to be compelling and informed Plaintiff's counsel that only a stipulation by Plaintiff that she was not seeking in excess of $75,000 would overcome the declaration filed by Defendant. Plaintiff declines to so stipulate. In the absence of such a stipulation, the Court finds that Defendant has met its burden under the law of this Circuit and established the amount in controversy requirement pursuant to 28 U.S.C. §1332.

*Timeliness of Plaintiff's Motion for Remand*

Defendant asserts that Plaintiff's motion for remand is untimely because she failed to file her motion within thirty-days of the filing of Defendant's notice of removal. This issue must be addressed before the Court looks to the two "procedural defect" grounds raised by Plaintiff in the motion for remand. If the motion for remand is untimely, these Court will not address the merits of these defects because Plaintiff is deemed to have waived any objections to procedural defects in the removal. Defendant's removal will not be disturbed once subject matter jurisdiction has been established.

Defendant contends that this issue is controlled by the plain words of the removal statute, Plaintiff has thirty days from the filing of the notice of removal to file a motion for remand "on the basis of any defect other than lack of subject matter jurisdiction." Failure to do so bars the raising of any "procedural" or "technical" defects with the removal. Plaintiff contends that he should be permitted the additional three days for mail time afforded by Fed. R. Civ. P. 6(e). Rule 6(e) reads in pertinent part;

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

The only federal appellate court to squarely address this issue has clearly held that the plain words of the statute control and the mail time set forth in Rule 6(e) does not extend the thirty-day time period to file a motion for remand, "as that rule only applies when a party is required to act within a prescribed period after *service*, not after *filing*." Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560, 566 (5th Cir. 1995). See also In re: Bethesda Memorial Hosp., 123 F.3d 1407, 1410-11 (11th Cir. 1997) (in determining that remand order was reviewable when case was remanded on procedural defect after 30 days of removal notice, court looked to "plain language"

7

of 28 U.S.C. §1447(c) and finds it was "bound by the thirty-day limit"); Clements v. Florida East Coast Ry. Co., 473 F.2d 668, 670 (5th Cir. 1973)[8] ("Rule 6(e) has no application [when] the action required of plaintiff was not within a prescribed period after service of the order upon him.").

Plaintiff responds by looking at several district court opinions that have specifically permitted a plaintiff to add the three-day mail time from Rule 6(e) to motions for remand when the defendant served the removal notice by mail. See McPherson v. Peele Co., 1995 WL 56600 (E.D. Pa. 1995); McGovern v. Mucklow, 1992 WL 160639 (E.D. Pa. 1992); Chott v. Cal Gas Corp., 746 F. Supp. 1377 (E.D. Mo. 1990); but see Lewis v. Certainteen Corp., 870 F. Supp. 130 (W.D. La. 1994) (not allowing Rule 6(e) mail time for motion to remand). Plaintiff urges the Court to rule as did the two Eastern District of Pennsylvania cases that allowed Rule 6(e) mail time for motions to remand, pointing to the equity of utilizing the law of the district in which the MDL is pending. But see Robinson v. Nutter, 1995 WL 61158, *4, n.4 (E.D. Pa. 1995) (plaintiffs are not permitted to "avail themselves of the three-day grace period provided in [] Rule 6(e)" for filing their motion to remand); cf. Mosel v. Hills Department Store, 789 F.2d 251 (3d Cir. 1986) (mail time did not apply to extend 90-day period following receipt of right-to-sue letter from Equal Employment Opportunity Commission within which employee was required to file employment discrimination complaint -- Rule 6(e) only applies "where a time period is measured from the date of service by mail").

As the Court noted at the hearing on this matter, were it to rule on the issue "from scratch," it would rule the way the court did in the footnote four in the Robinson case because the period for filing a motion to remand is commenced by *filing*, not by *service*. However, at the hearing, the Court also noted the unfairness of applying law to this case contrary to the law found in the two Eastern

---

[8] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

District of Pennsylvania courts cited by Plaintiff because that is where the diet drug MDL action is pending and where these cases are likely to be transferred if they remain in federal court. These two cases specifically permitted an extra three days mail time for motions to remand so that motions filed thirty-three days after the removal notice was filed, if it was served by mail, would be considered timely. See McPherson v. Peele Co., 1995 WL 56600 (E.D. Pa. 1995); McGovern v. Mucklow, 1992 WL 160639 (E.D. Pa. 1992). Despite the Court's equitable leaning towards finding the motion for remand timely (by allowing the three days mail time in Rule 6(e)), upon further consideration the Court has determined that it is constrained by the plain words of the removal statute, and the Pavone, Mosel, Clements, and Bethesda Memorial Hospital cases, to find that Rule 6(e) does not extend the time period for filing a motion to remand. Accordingly, the Plaintiff's motion for remand is untimely and the Court makes no finding on the procedural defects raised by Plaintiff for the cases in which the motion for remand was filed thirty-one days after the removal notice was filed.

*Case No. 8:01-cv-1704-T-30TGW*

To conserve judicial resources and paper, the Court directed the parties to file all pleadings in this lowest numbered case, Delorme v. American Home Products Corp., Case No. 8:01-cv-1587-T-30MAP, while reviewing jurisdictional issues. See Dkt. 23. In Defendant's supplemental brief on jurisdiction, Plaintiff attached a table listing the time period in which the motions for remand were filed in each removed diet drug case. See Dkt. 27, Exh. A. There was only one case in which the motion for remand was timely filed – Lockhart v. American Home Products Corp., Case No. 8:01-cv-1704-T-30TGW. In this case, Plaintiff filed his motion for remand twenty-four days after

9

the notice of removal was filed. Accordingly, this motion is timely and the Court will address the issues raised by Plaintiff in its timely motion for remand filed in Lockhart.[9]

In this case, it is alleged that the Plaintiff, Janet Lockhart, is a resident of Orange County, Florida. Defendant American Home Products Corporation ("AHP") is a Delaware corporation with its principal place of business in New Jersey and Defendant Eon Labs Manufacturing, Inc. ("Eon Labs") is also a Delaware corporation with its principal place of business in New York. Plaintiff also named another Florida citizen, Goldline Laboratories, Inc., as a Defendant in this case. Accordingly, at that time, diversity of citizenship did not exist.

On August 3, 2001, however, Plaintiff voluntarily dismissed Goldline from the case. The notice of dismissal would be considered the first paper "from which it may first be ascertained that the case is one which is or has become removable" under 28 U.S.C. 1446(b), and upon Defendant's receipt thereof, complete diversity existed. Accordingly, Defendant timely filed for removal on September 4, 2001, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. §1332.[10]

Having established that the notice of removal was timely filed and that the complete diversity of citizenship existed, and establishing supra that Defendant met its burden of establishing the amount in controversy, the Court turns to the issue of whether Defendant American Home Products needed to obtain the consent of Eon Labs prior to removal. Section 1446(a) has been consistently interpreted to include a "unanimity requirement" which requires the consent to removal of all

_____

[9] Because Plaintiff had filed a timely motion for remand in one case and in part, due to the Court's leaning towards the equities of permitting additional mail time for Plaintiff' motion for remand, the Court heard the arguments of counsel and was fully briefed on these issues at the November 27 hearing.

[10] Although this case was initially remanded sua sponte by this Court, Defendant's second removal notice (clarifying the grounds for removal so that the initial ground for the Court's sua sponte remand was no longer valid) was timely filed under 28 U.S.C. §1446(b), Fed. R. Civ. P 6(a) and Local Rule 4.20.

defendants in a case involving multiple defendants. See Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1044 (11ᵗʰ Cir. 2001) ("the unanimity requirement mandates that in cases involving multiple defendants, all defendants must consent to removal"). Of course, if Eon Labs was not served at the time AHP removed this case, as AHP contends, Eon Labs' consent was not required.

Plaintiff offers as evidence that Eon Labs was served, a letter from its counsel dated September 25, 2001, agreeing that prior delivery of the complaints by mail on local counsel constituted service. See Dkt. 9, Exh. 3. Defendant submitted affidavits of counsel that prior to removing this case to federal court, counsel contacted counsel for Eon Labs to confirm that Eon Labs had not been served. See Dkt. 10, Exh. A. Defendant argues that because Eon Labs and Plaintiff's counsel came to an agreement *after* the date of removal, they should not be precluded from removing the case because there is no way that Defendant AHP could have known service would later be attained on a date prior to their removal.[11]

The Court is persuaded by Defendant's arguments. As the Court ruled *ore tenus* at the hearing, Defendant met their burden in filing their notice of removal on this issue. Defendant exhibited diligence in checking the state court file and calling Eon Labs' counsel to confirm whether service had occurred prior to removal, presumably knowing that if Eon Labs had been served they would have to obtain their consent prior to removal.[12] Plaintiff's counsel counters that defense

---

[11] Counsel for Defendant AHP also attests that he checked the state court docket to determine if service of process on Eon Labs had been attained. See Dkt. 10, Exh. A.

[12] A fact which was not likely to occur. Defendant notes, in the affidavit of counsel, that Eon Labs previously agreed with Plaintiff, as they had done in other similar cases, not to consent to removal. Nonetheless, counsel for Eon Labs did confirm to AHP's counsel when contacted prior to filing the notice of removal, that to his knowledge Eon Labs had not been served with process. See Dkt. 10, Exh. A.

11

counsel should have checked with Plaintiff's counsel. The Court does not find this argument countervailing in these circumstances. Plaintiff's motion for remand in this case is also denied.

It is thereby **ORDERED** and **ADJUDGED** that Plaintiff's Motion for Remand (Dkt. 9) is denied as set forth herein and those diet drug cases removed from the Sixth Judicial Circuit Court in and for Pinellas County are hereby found to have been properly removed to this Court. Defendant's Motion to Conduct Discovery Regarding Jurisdiction (Dkt. 11) and Plaintiff's Motion to Transfer Cases and for Protective Order (Dkt. 35) are therefore denied as moot.

**DONE** and **ORDERED** in Tampa, Florida on this ___4___ day of December, 2001.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

12

# EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------X

SONIA URRIOLA,

**NOTICE OF FILING**
**NOTICE OF REMOVAL**

Index No.:   07/114306

                              Plaintiff,

              -against-


GUIDANT     CORPORATION,     GUIDANT     SALES
CORPORATION, BOSTON SCIENTIFIC CORPORATION,
MICHAEL LIOU, M.D., BETH ISRAEL MEDICAL
CENTER AND BETH ISRAEL MEDICAL CENTER
PHILIPS AMBULATORY CARE CENTER

                              Defendants.
-------------------------------------------------------------------------X


**TO:    THE CLERK OF THE SUPREME COURT OF THE STATE OF NEW YORK**

You are hereby notified that Defendants Guidant Corporation ("Guidant"), Guidant Sales

Corporation ("GSC") and Boston Scientific Corporation ("BSC") and have on this 20th day of

November, 2007, filed in the United States District Court for the Southern District of New York, a

Notice of Removal to Federal Court of the above-entitled cause, a copy of which is attached hereto and

made a part of the Notice to Clerk, for your information and guidance. This Notice serves to effect full

removal of this case pursuant to 28 U.S.C. § 1446(d), thereby precluding this State Court from

proceeding further in this case, unless and until this case is remanded hereto by the United States

District Court.


MEI 6929613v.1

Dated:  November 20, 2007

Respectfully submitted,

By:  _____

Kimberly S. Penner
kpenner@mccarter.com
**McCARTER & ENGLISH, LLP**
245 Park Avenue, 27th Floor
New York, New York 10167-0001
212-609-6800

and

**SHOOK, HARDY & BACON, L.L.P.**
2555 Grand Boulevard
Kansas City, Missouri 64108
816-474-6550

Attorneys for Defendants
Guidant Corporation,
Guidant Sales Corporation and
Boston Scientific Corporation

ME1 6929613v.1

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |

| | |
|---|---|
| This Document Relates to:<br><br>Emmett David Brown,<br><br>               Plaintiff,<br><br>v.         Civil No. 07-1487 (DWF/AJB)<br><br>Guidant Corporation, an Indiana Corporation; Endovascular Technologies, Inc., a California Corporation and a Division of Guidant Corporation; Guidant Sales Corporation; and Dr. Leland B. Housman,<br><br>              Defendants. | **MEMORANDUM OPINION AND ORDER** |

Jeanette Haggas, Esq., Mark E. Burton, Jr., Esq., Nancy Hersh, Esq., and Rachel Abrams, Esq., Hersh & Hersh, counsel for Plaintiff.

Timothy A. Pratt, Esq., Sara J. Romano, Esq., and Dana N. Gwaltney, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Guidant Corporation, Endovascular Technologies, Inc., and Guidant Sales Corporation.

Michael I. Neil, Esq., and David P. Burke, Esq., Neil, Dymott, Frank, Harrison & McFall, APLC; and Timothy A. Pratt, Esq., Shook Hardy & Bacon, LLP, counsel for Defendant Dr. Leland B. Housman.

---

The above-entitled matter is before the Court pursuant to Plaintiff Emmett David

Brown's Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL

No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13)

and Defendant Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action

and Remand Case Back to Superior Court, State of California, County of Santa Clara

(MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ. No. 07-1487 (DWF/AJB), Doc.

No. 7). For the reasons stated below, the Court grants Brown's Motion to Remand as to

Dr. Housman but denies the Motion as to all remaining Defendants, denies Brown's

Motion for Sanctions, and grants Dr. Housman's Motion to Sever and Remand.

## BACKGROUND

In 2003, Dr. Housman implanted a Guidant defibrillator in Brown. In June 2005,

Brown's defibrillator was recalled. Thereafter, Dr. Housman explanted and replaced

Brown's defibrillator and epicardial leads. After the explant and replacement surgery, the

leads penetrated through the surgery incision sites on Brown's chest. This penetration

caused infection and the need for further surgeries.

On October 24, 2006, Brown filed this case against Defendants Guidant

Corporation, Guidant Sales Corporation, Endovascular Technologies, Inc. ("EVT"),[1] and

Dr. Housman in the California Superior Court of Santa Clara County, California.

Guidant Corporation and Guidant Sales Corporation (collectively "Guidant") are citizens

of Indiana. It is undisputed that Brown and Dr. Housman are California residents. The

parties dispute EVT's citizenship. Brown asserts that EVT is a citizen of California, and

Guidant and EVT assert that EVT is a citizen of Minnesota and Delaware.

---

[1]    EVT is a wholly owned subsidiary of Guidant Corporation.

2

Brown alleges that Dr. Housman committed medical negligence because he implanted a defective defibrillator and negligently removed and replaced it. Brown also asserts that Dr. Housman knew of information provided by Guidant and/or EVT regarding defects with the defibrillators. Brown alleges that Guidant breached its duties as a manufacturer, distributor, and marketer of defibrillators. As to EVT, Brown alleges that it breached its reporting duties under a Corporate Integrity Agreement.

On January 22, 2007, Guidant and EVT removed the case to the United States District Court for the Northern District of California based on diversity of citizenship, asserting that EVT and Dr. Housman were improperly joined. Thereafter, Guidant sought to transfer the case, and on March 6, 2007, the Judicial Panel on Multidistrict Litigation transferred the action to the District of Minnesota as part of MDL No. 1708. On May 18, 2007, Defendant Dr. Housman filed a Motion to Sever and Remand the allegations against him, and, on June 5, 2007, Brown filed a Motion to Remand and Motion for Sanctions.

**I.    Motion to Sever and Remand**

Dr. Housman asserts that Brown misjoined Dr. Housman as a party and that the claims against him should be severed from the claims asserted against Guidant and EVT and remanded to state court. The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

3

Fed. R. Civ. P. 20(b).[2]  If defendants have been misjoined for the failure to satisfy the

conditions for permissive joinder under Rule 20(b), the Rules allow for severance of

those defendants:

> Misjoinder of parties is not ground for dismissal of an action.  Parties may
> be dropped or added by order of the court on motion of any party or of its
> own initiative at any stage of the action and on such terms as are just.  Any
> claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Dr. Housman asserts that the claims against him (medical negligence) and Guidant

(product liability) are legally distinct and that none of the causes of action overlap one

another.  In addition, Dr. Housman asserts that the facts that would support a claim

against him involve the quality of medical care given to Brown, whereby the facts that

would support a claim against Guidant would have nothing to do with the standard of

care for Dr. Housman, but instead would focus on the products used.  Therefore,

Dr. Housman contends that the claims arising out of his treatment do not arise out the

same transaction or occurrence as the claims against Guidant and EVT.[3]

Brown, on the other hand, contends that Dr. Housman, Guidant, and EVT's

actions/inactions do arise out of the same transaction or occurrence.  Brown asserts that

---

[2]    The California rule on permissive joinder is nearly identical to the federal rule and
is identical in all relevant parts here. *See* Cal. Civ. Proc. Code § 379(a)(1).

[3]    To the extent that the Court finds that severance and remand is necessary, Guidant
and EVT agree with Dr. Housman to the extent that only Dr. Housman should be severed
and remanded and that the Court should retain jurisdiction over Brown's claims against
Guidant and EVT.

4

he would not have had to endure the surgery whereby the leads were misplaced if his Guidant defibrillator was not defective. Brown also asserts that his surgery shares common questions of law and/or fact with Brown's product liability claims against Guidant and EVT. Brown contends that the chain of events that led to Brown's injury inextricably connects the facts and legal issues surrounding the medical negligence and product liability claims. Specifically, Brown asserts that Dr. Housman's testimony, notes, and other related information regarding Brown's implant and explant surgeries will be required for the negligence, fraud, and CLRA claims against Guidant. Further, Brown contends that he makes the same claim for damages against all Defendants and that each Defendant is jointly and severally liable for the damages Brown sustained.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that Dr. Housman has been improperly joined in this case. Brown's claim against Dr. Housman is medical negligence, which would require evidence on Brown's care, treatment, and services provided by Dr. Housman. Brown's claims against either Guidant or EVT are general negligence or product liability claims based on alleged manufacturing and design defects, alleged failure to properly warn, and alleged misrepresentation of the health risks associated with certain cardiac medical devices. These claims would require evidence on the development, manufacture, and testing of Brown's ICD along with evidence of Guidant and EVT's knowledge, warnings, and representations regarding defective ICD's. The joinder of the malpractice claim against Dr. Housman with the other general negligence and product liability claims was inappropriate because the claims do not both involve common questions of law or fact

5

and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either Guidant/EVT or Dr. Housman would not be a basis for liability as to the other. However, separate liability as to each could be separately found.[4] Furthermore, because of the nature, stage, and progression of this MDL, especially in light of the proposed settlement involving Guidant, "the rights of the parties and interest of justice is best served by severance." Fed. R. Civ. P. 21.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d

---

[4]     While California case law seems to take a broad view of joinder, the Court's finding is still consistent. The California Supreme Court has stated that section 379, subdivision (c) "does not permit the unlimited joinder of defendants; it provides for joinder only when plaintiff pleads a specific relationship between the defendants, namely, a single or cumulative injury, giving rise to doubt as to the respective liability of defendants for that injury. In other words, when a plaintiff states facts showing a reasonable uncertainty as to the respective liability of the defendants, these same facts constitute the connection that links the acts of the defendants and fulfills any claimed requisite of 'factual nexus.'" *Landau v. Salam*, 484 P.2d 1390, 1395 (Cal. 1971). Here, Brown has not alleged that he is in doubt as to which Defendant is liable for which actions.

674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, where a non-diverse party, such as Dr. Housman here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the basis for the causes of action against Dr. Housman do not arise from the same transaction and occurrences as those in the causes of action against Guidant and EVT, the Court will sever the action against Dr. Housman so as to preserve Guidant and EVT's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II.    Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[5]

---

[5]    Section 1441(a) provides in pertinent part:

(Footnote Continued on Next Page)

7

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A corporation is deemed a citizen of the state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Brown argues that the Court should remand the entire action asserting lack of subject matter jurisdiction and defects in the removal procedure. As to the latter, Brown contends that Guidant and EVT's removal was untimely, did not have proper consent from Dr. Housman, was facially deficient, and did not meet the requisite amount in controversy.

---

(Footnote Continued From Previous Page)

    [A]ny civil action brought in a state court of which the district courts of the
    United States have original jurisdiction, may be removed by the defendant
    or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

8

A.    Timeliness/Consent/Deficiency

Brown served Dr. Housman on December 14, 2006. Guidant and EVT removed the action on January 22, 2007. Brown argues that Guidant and EVT had no right to remove because Dr. Housman did not remove nor consent to removal within thirty days of service of the Complaint. Brown also argues that Guidant's removal is facially deficient because Guidant did not explain why Dr. Housman had not joined in the removal. Guidant and EVT assert that Guidant's removal was proper and timely because all properly-joined Defendants consented to removal and neither Guidant nor EVT were served with a summons and complaint; therefore, the 30-day period for removal was never triggered.

"The notice of removal of a civil action . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (holding that a defendant's time to remove is triggered by formal service of the summons and the complaint, not "by mere receipt of the complaint unattended by any formal service"). Removal is proper "if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Consistent therewith, the usual rule that all defendants in an action in state court join in a petition for removal does not apply to "nominal, unknown, or fraudulently-joined parties." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

9

Here, because Dr. Housman was not properly joined, his consent was neither necessary nor did the service of process on him trigger the deadline for removal. Further, as to Brown's assertion that Guidant's removal was facially deficient, the Court disagrees. Guidant and EVT stated in their Notice of Removal that Dr. Housman was improperly joined. (Aff. of Timothy A. Pratt in Supp. of Defs. Guidant Corporation, Endovascular Technologies, Inc. and Guidant Sales Corporation's Opp'n to Pl.'s Mot. to Remand ("Pratt Aff."), Ex. A at 3.) Guidant and EVT also stated that all properly-joined Defendants had consented to removal and that Defendants who are not properly joined need not consent to removal. (*Id.*) Therefore, the Notice of Removal was not facially deficient because Guidant did explain why it did not have Dr. Housman join in the removal. Thus, Brown's untimeliness, non-consent, and facially deficient arguments fail.

**B.    Requisite Amount in Controversy**

Brown also asserts that Guidant and EVT have failed to show the action meets the requisite amount in controversy. Brown points to Guidant and EVT's Notice of Removal, whereby Guidant and EVT assert that the "face of the complaint makes clear that plaintiff seeks damages in excess of $75,000" because Brown seeks "damages for surgical placement and replacement of an allegedly defective defibrillator in him." (Pratt Aff., Ex. A at 11.) Brown contends that this is insufficient to demonstrate that the amount in controversy exceeds $75,000. Guidant and EVT, on the other hand, assert that they have met their burden. Guidant and EVT point to Brown's allegations in the Complaint where he alleges "serious injuries to his chest," (Compl. ¶ 130), and alleges that he "required healthcare and medical services, and incurred direct medical costs for

10

physician care, monitoring, treatment, medications, and supplies." (*Id.*)  Guidant and

EVT also point out that Brown is seeking general, special, and punitive damages,

restitution and disgorgement of profits, compensatory and other damages, costs,

including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this

action. (Compl., Prayer for Relief at 24.)  The Court finds that in light of the allegations

plead and in light of the other complaints filed by Brown's attorneys directly in this MDL

alleging similar claims and damages whereby they plead that the requisite jurisdictional

amount was met, a jury could return an award in excess of $75,000.  Therefore, Brown's

argument fails.

    **C.**    **Subject Matter Jurisdiction**

    Brown contends that the Court lacks subject matter jurisdiction, asserting that

removal was improper under 28 U.S.C. § 1441(a) because Dr. Housman and EVT are

California residents, thereby creating incomplete diversity of citizenship.  As to EVT,

Brown contends that Guidant has admitted in Answers that it has filed that EVT

maintains its principal place of business in California.  Therefore, Brown asserts that

EVT is a citizen of California causing the Court to have no original jurisdiction.  Brown

also asserts that under 28 U.S.C. § 1447(c), the case must therefore be remanded.

    Guidant and EVT assert that complete diversity of citizenship does exist.  Guidant

and EVT contend that Dr. Housman's citizenship should be disregarded because he was

improperly joined as a defendant.  The Court agrees, as is explained above.

    As to EVT's citizenship, Guidant and EVT assert that EVT is not a California

citizen.  Guidant points out that the pleadings that Brown sites to for support that EVT is

a California citizen date back to 2002 and 2003. Guidant explains that at that time, EVT's principal place of business was in California. But Guidant asserts that in October 2006, when the Complaint was filed here, and in January 2007, when the case was removed, EVT had no business operations in California. Citing to Jeffrey Kruse's declaration, Senior Counsel for EVT, Guidant asserts that since June 30, 1989, EVT has been a Delaware corporation, and since April 2006, EVT has had its headquarters and business operations in St. Paul, Minnesota. Therefore, Guidant and EVT assert that EVT is a citizen of Delaware and Minnesota.

Brown's only response to Guidant's assertion is that EVT was a California citizen at the time he was injured in March 2004. Brown, however, asserts no authority for the proposition that the Court should analyze citizenship as of the date of injury for purposes of diversity jurisdiction.

The Court agrees with Guidant and EVT that EVT is not a California citizen. For purposes of diversity jurisdiction, the Court analyzes citizenship as of the date that the Complaint was filed. *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004). Therefore, because at the time that the Complaint was filed, EVT was a citizen of Delaware and Minnesota, Guidant was a citizen of Indiana, and Brown was a citizen of California, complete diversity of the parties exists,[6] and the Court denies Brown's

---

[6]    The Court disregards Dr. Housman's citizenship because he was improperly joined in this case, as is explained above.

12

Motion to Remand as to his case against Guidant and EVT.[7]   Consistent with the Court

granting Dr. Housman's Motion to Sever and Remand, the Court grants in part Brown's

Motion to Remand only to the extent that the Court severs and remands Brown's claims

against Dr. Housman.

**II.     Motion for Sanctions**

Based on Brown's assertion that the parties here are properly joined and

non-diverse and because Dr. Housman did not consent to removal, Brown also contends

that Guidant should be sanctioned for removing this action.  Here, because the Court

finds that Guidant and EVT's removal was proper and because the record does not show

bad faith on the part of Guidant or EVT, the Court concludes that sanctions are not

warranted.

**IT IS HEREBY ORDERED** that:

1.     Defendant Leland Housman, M.D.'s Motion to Sever Medical Malpractice

Action and Remand Case Back to Superior Court, State of California, County of

Santa Clara (MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ. No. 07-1487

---

[7]     Guidant and EVT argued alternatively that if the Court found EVT to be a citizen of California, that EVT's citizenship should be disregarded because it was fraudulently joined as a defendant.  Because the Court finds EVT to be a California citizen, it need not address whether EVT was fraudulently joined.  However, "[j]oinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993).  And, because "contested issues of fact should be resolved in favor of the plaintiff," *id.*, the Court notes that, at this juncture, fact issues would preclude the Court from finding that there is no basis for liability.

13

(DWF/AJB), Doc. No. 7) is **GRANTED**.  The Court Orders that all claims against

Defendant Leland Housman, M.D. are **SEVERED** and **REMANDED** to Superior Court,

State of California, County of Santa Clara.

      2.     Plaintiff Emmett David Brown's Motion to Remand and Motion for

Sanctions [28 U.S.C. § 1447] (MDL No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No.

07-1487 (DWF/AJB), Doc. No. 13) is **GRANTED** as to the remand of Defendant Leland

Housman, M.D., but **DENIED** as to the remand of all remaining Defendants and

**DENIED** as to Brown's Motion for Sanctions.


Dated:  August 30, 2007                s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        Judge of United States District Court

14

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: GUIDANT CORP. IMPLANTABLE
DEFIBRILLATORS PRODUCTS
LIABILITY LITIGATION

MDL No. 05-1708 (DWF/AJB)

This Document Relates to:

Donald Alexander,

Plaintiff,

**MEMORANDUM
OPINION AND ORDER**

v.          Civil No. 07-1129 (DWF/AJB)

Boston Scientific Corporation, Guidant
Subsidiary of Boston Scientific Corporation,
and St. Anthony's Medical Center,

Defendants.

---

Donald Alexander, 31057 Oak Ridge Drive, Rocky Mount, MO 65072, *pro se.*

Timothy A. Pratt, Esq., Deborah A. Moeller, Esq., and Julie R. Somora, Esq., Shook
Hardy & Bacon, LLP, counsel for Defendants Boston Scientific Corporation and Guidant
Subsidiary of Boston Scientific Corporation.

Douglas Ponder, Esq., Karen C. Moske, Esq., and V. Scott Williams, Esq., Hazelwood &
Weber, LLC, counsel for Defendant St. Anthony's Medical Center.

---

The above-entitled matter is before the Court pursuant to Plaintiff Donald

Alexander's Motion for Remand to St. Louis County Circuit Court and Defendant

St. Anthony's Medical Center's ("St. Anthony's") Motion to Dismiss. For the reasons

stated below, the Court grants Alexander's Motion for Remand as to Defendant

St. Anthony's, but denies the motion as to all remaining Defendants. The Court denies
St. Anthony's Motion to Dismiss as moot.

## BACKGROUND

On May 25, 2006, Alexander was implanted with a Model 1291 Guidant
pacemaker at St. Anthony's facilities. Alexander alleges that some of St. Anthony's
nurses and staff assisted in the implant. Alexander also alleges that St. Anthony's paid
for the pacemaker and included the charges for the pacemaker in Alexander's patient
billing.

The Model 1291 device that was implanted in Alexander was manufactured in
December 2005. Prior to its manufacture, on September 22, 2005, Guidant issued a recall
regarding its Model 1291 Guidant pacemakers, among others. The recall was based on
two failure modes.

As to the first failure mode, Guidant recommended that physicians "consider the
projected low and declining failure rate in addition to the unique needs of individual
patients in their medical decisions regarding patient management" and recommended
"normal monitoring, as per device labeling." (Aff. of V. Scott Williams in Supp. of Def.
St. Anthony's Mot. to Dismiss and Mem. of Law in Opp'n to Pl.'s Mot. for Remand
("Williams Aff.") at Ex. C.) In addition, Guidant stated, "As always, advise patients to
seek attention immediately if they experience syncope or lightheadedness." (*Id.*) As to
the second failure mode, Guidant recommended the following:

> Guidant recommends verifying pacemaker operation in the packaging prior
> to the implant procedure. Devices exhibiting intermittent or permanent loss
> or output or telemetry should not be implanted.

2

> Physicians should consider both the very low occurrence rate and that no
> failures have been observed after successful confirmation of pacing at
> implant, in addition to the unique needs of individual patients, in their
> medical decisions regarding patient management.

(Williams Aff. at Ex. C.)

Approximately two months later, on December 12, 2005, Guidant issued an

"Advisory Update" that addressed the September 22, 2005 recall letter. There, Guidant

explained the following:

> In March of 2004, Guidant discontinued shipping from manufacturing
> facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 1."
>
> Guidant has recently discontinued shipping from manufacturing facilities
> INSIGNIA and NEXUS devices susceptible to "Failure Mode 2." While
> Guidant recommends normal monitoring for patients implanted with these
> devices, Guidant representatives will retrieve and replace remaining
> hospital inventory with product free from susceptibility to "Mode 2" peri-
> implant failure.
>
> INSIGNIA and NEXUS devices currently being distributed by Guidant are
> not subject to either failure mode and therefore are not included in either
> recall.

(Williams Aff. at Ex. D.)  Although Alexander's Model 1291 device was manufactured

in December 2005, it is unclear whether the device was manufactured and shipped prior

to this December 12, 2005 Advisory Update.

Approximately one month after Alexander's implant surgery, on June 23, 2006,

Guidant issued a separate recall of the Model 1291.  Thereafter, on July 7, 2006,

Alexander received notice from the St. Louis Metro Heart Group that the specific

Guidant pacemaker that was implanted in him had been recalled in connection with

defective product concerns.

3

On July 25, 2006, Alexander filed this case against Defendants Boston Scientific

Corporation ("BSC"), Guidant Subsidiary of Boston Scientific Corporation ("Guidant"),

and St. Anthony's in the Circuit Court of St. Louis County, Missouri. It is undisputed

that Alexander and St. Anthony's are both Missouri residents. Guidant is a citizen of

Indiana and BSC is a citizen of Delaware and Massachusetts.

Alexander alleges that BSC and Guidant are liable for manufacturing and design

defects and for the failure to warn patients of the alleged health risks and/or defects

associated with certain Guidant implantable cardiac medical devices. Alexander alleges

that St. Anthony's committed medical negligence because it knew or had reason to know

that Alexander's Guidant device was potentially defective and because it did not advise

Alexander or put Alexander on notice of these facts prior to implantation.

More specifically, Alexander alleges that:

> [p]rior to the actual implant surgery, both Guidant Corporation's said and
> physically present employee/agent and St. Anthony's Medical Center
> nursing staff or a designated St. Anthony's Medical Center employee/agent
> had the duty to disclose to Plaintiff that the Guidant pacemaker to be
> implanted in Plaintiff's chest is potentially defective and that a recall had
> been issued for Guidant pacemakers, model 1291 in September 2005 and
> that there existed a known manufacturing/assembly defect such that some
> unspecified percentage of Guidant pacemakers, model 1291, are known to
> be dangerously defective.
>
> 4.    Both Guidant Corporation's said employee/agent and
> St. Anthony's Medical Center's staff employees attending to Plaintiff on
> May 25, 2006 breached the duty to disclose to Plaintiff that some
> unspecified percentage of Guidant pacemakers, model 1291, are know[n] to
> be dangerously defective, that several persons have died in connection with
> Guidant pacemakers, and that hundreds of product liability law suits are
> pending against Guidant Corporation.

(Williams Aff., Ex. B at 3-4.)

On August 25, 2006, BSC and Guidant removed the case to the United States

District Court for the Eastern District of Missouri, Eastern Division, asserting that

complete diversity exists because Alexander improperly joined St. Anthony's to defeat

diversity jurisdiction.  BSC and Guidant then filed a motion to stay all proceedings

pending transfer of Alexander's case to the District of Minnesota as part of MDL

No. 1708.  The United States District Court for the Eastern District of Missouri granted

the motion to stay and on February 7, 2007, the case was formally transferred to the

District of Minnesota as part of MDL No. 1708.

On February 20, 2007, Alexander filed a Motion to Remand to St. Louis County

Circuit Court, claiming that St. Anthony's is a proper defendant in the case and therefore

complete diversity is lacking.  On March 9, 2007, St. Anthony's filed a Motion to

Dismiss, claiming that Alexander has failed to state a claim against St. Anthony's.

I.    **Motion to Remand**

The party seeking removal and opposing remand bears the burden of establishing

federal subject matter jurisdiction.  *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181,

183 (8th Cir. 1993).  Generally, a state court action may only be removed if a federal

district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[1]

---

[1]    Section 1441(a) provides in pertinent part:

[A]ny civil action brought in a state court of which the district courts of the
United States have original jurisdiction, may be removed by the defendant
or defendants, to the district court of the United States.·

28 U.S.C. § 1441(a).

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Alexander essentially argues that BCS and Guidant had no right to remove under 28 U.S.C. § 1441(a) because there is incomplete diversity of citizenship because St. Anthony's is a Missouri resident. Alexander therefore argues that because there is no original jurisdiction, under 28 U.S.C. § 1447(c) the case must be remanded.

Here, because St. Anthony's is a Missouri resident, the action on its face is not removable. Defendants assert, however, that removal was proper because Alexander fraudulently joined St. Anthony's to defeat diversity jurisdiction. Under the doctrine of fraudulent joinder, joinder of a party that is designed solely to deprive federal courts of jurisdiction is deemed fraudulent and does not prevent removal. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). Fraudulent joinder does not require fraudulent intent; rather, fraudulent joinder exists if the plaintiff's claim against an in-state defendant has no chance of success. *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993); *see also Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809-10 (8th Cir. 2003) (stating that the Court must "determine whether there is a reasonable basis

6

for predicting that the state's law might impose liability against the defendant"); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant."); *Anderson*, 724 F.2d at 84 ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant."). The burden is on the defendants to establish that a party has been fraudulently joined. *Schwenn*, 822 F. Supp. at 1455.

Guidant and BSC contend that the Court should find fraudulent joinder because Alexander failed to plead a cause of action against St. Anthony's. St. Anthony's similarly asserts that complete diversity exists because Alexander failed to state a claim against St. Anthony's. Specifically, Defendants assert that Alexander failed to plead any facts showing that St. Anthony's received the September 22, 2005 recall letter, and even if St. Anthony's did receive the letter, the letter did not instruct physicians to cease implantation of Model 1291 devices or ask for their return. In addition, Defendants assert that the December 12, 2005 Advisory Update states that the devices distributed after the recall letter were not subject to the recall, and therefore the device implanted in Alexander, which was manufactured in December 2005, was not subject to a recall on the date it was implanted.[2]

---

[2]    The Court notes that the December 12, 2005 Advisory Update actually states that "Guidant *has recently discontinued* shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to 'Failure Mode 2,'" and that "INSIGNIA and NEXUS devices *currently being distributed by Guidant* are not subject to either failure mode and therefore are not included in either recall." (Williams Aff. at Ex. D (emphasis added).)
(Footnote Continued on Next Page)

St. Anthony also asserts that it does not owe a duty to patients to report that the manufacturer of certain devices used in its facilities is a party to litigation regarding products that are not being used with that particular patient. And, St. Anthony asserts that because Alexander has not plead any facts demonstrating that anyone at St. Anthony's assumed a duty to inform him of risks associated with his device, contending that Missouri law requires such assumption, Alexander has failed to state a claim against St. Anthony's.[3]

Alexander, on the other hand, asserts that he has a cause of action against St. Anthony's based on his allegations that St. Anthony's knew that model 1291 pacemakers were known to be dangerously defective by May 25, 2006, and knew that Guidant had recalled model 1291 pacemakers eleven months prior to his implantation yet continued to market the units. Alexander asserts that despite this knowledge, St. Anthony's—acting through its employees/agents—selected a model 1291 Guidant pacemaker to be implanted into Alexander. Alexander alleges that, prior to his implantation, St. Anthony's concealed all of this information from him.

---

(Footnote Continued From Previous Page)
This does not necessarily indicate that the devices distributed after the September 22, 2005 letter were not subject to the recall, as the Advisory Update does not give specific dates as to when those specific devices were discontinued and as to when distribution stopped.

[3]     BSC and Guidant also assert that to the extent Alexander's claim against St. Anthony's was a strict liability claim, the claim is foreclosed under Missouri law. Because Alexander concedes that his claim is not a strict liability claim, the Court does not address the issue here.

Alexander asserts that his allegations are supported by the fact that Guidant issued a recall regarding the model 1291 pacemakers on September 22, 2005, Guidant issued a separate recall regarding the model 1291 pacemakers within thirty days of his implantation, and as of the date of his implantation, hundreds of product liability lawsuits involving Guidant pacemakers were pending in state and federal courts. In addition, Alexander asserts that because "[St. Anthony's] is in the business of implanting pacemakers and defibrillators and routinely does business with manufacturers and distributors of implantable cardiac devices," St. Anthony's "would certainly know the quality history and dependability rating of manufacturers selected by [St. Anthony's] to supply pacemakers for implantation by [St. Anthony's]." (Pl.'s Resp. in Opp'n to Def. St. Anthony's Medical Center's Mot. to Dismiss and to Def.'s Opp'n to Pl.'s Mot. to Remand to St. Louis County Circuit Court at 2.)

The Court acknowledges that Alexander is proceeding *pro se*. *Pro se* pleadings are liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers). Although BSC and Guidant contend that St. Anthony's failure to warn claims are without factual basis because it was "factually impossible" for St. Anthony's to have disclosed to Alexander that his device was potentially defective, the Court finds that, at this juncture, fact issues preclude the Court from finding that there is no basis for liability.

9

"[C]ontested issues of fact should be resolved in favor of the plaintiff." *Schwenn*, 822 F. Supp. at 1455. Alexander alleges in his Complaint, among other things, that "the medical center does business with Guidant Corporation on a regular basis and routinely invites Guidant Corporation employees/agents into its operating rooms during the implanting of Guidant pacemakers for programming purposes." (Williams Aff., Ex. B at 4-5.) At a minimum, Alexander has raised an issue as to whether St. Anthony's knew or had reason to know that Alexander's device was recalled and/or potentially defective in light of the publicity Guidant had received prior to Alexander's implantation regarding potentially defective devices.

"Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn*, 822 F. Supp. at 1455. Here, Alexander's pleadings do allege facts, which if true, have a chance of success. At a minimum, in light of the liberal pleading requirements, the Court cannot conclude that no valid claims are brought against St. Anthony's as a matter of well-settled law. In addition, there is no evidence that St. Anthony's was singled out to avoid federal diversity jurisdiction rather than to obtain full relief. Accordingly, Alexander's joinder of St. Anthony's cannot be deemed fraudulent. Therefore, the Court concludes that because St. Anthony's was joined as a defendant, it lacks subject matter jurisdiction over this action as it currently stands.

10

**Sever and Remand**

To the extent the Court does find that St. Anthony's was not fraudulently joined, which the Court does find, BSC and Guidant alternatively request the Court to sever and remand Alexander's claims against St. Anthony's to state court and retain jurisdiction over Alexander's claims against BSC and Guidant. Specifically, BSC and Guidant assert that Alexander had fraudulently misjoined St. Anthony as a party, and therefore the claims against St. Anthony should be severed from the claims asserted against BSC and Guidant. BSC and Guidant contend that the claims arising out of St. Anthony's treatment do not arise out of the same transaction or occurrence as the claims against BSC and Guidant because the claims against St. Anthony's are based on medical negligence while the claims against BSC and Guidant are based on product liability. Alexander contends that his claims against St. Anthony's are not negated simply because his claims against BSC and Guidant are based on product liability. Alexander asserts that the Defendants' actions/inactions do arise out of the same transaction or occurrence.

The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[4]  If defendants have been misjoined for the failure to satisfy the

conditions for permissive joinder under Rule 20(b), the Rules allow for severance of

those defendants:

> Misjoinder of parties is not ground for dismissal of an action.  Parties may
> be dropped or added by order of the court on motion of any party or of its
> own initiative at any stage of the action and on such terms as are just.  Any
> claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Upon review of the applicable rules and the pleadings of the parties, the Court

finds that St. Anthony's has been improperly joined in this case.  The joinder of the

malpractice claim against St. Anthony's with the other product liability claims was

inappropriate because the claims do not both involve common questions of law or fact

and assert joint, several, or alternative liability "arising out of the same transaction,

occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b).  Any liability

that may be found against either BSC/Guidant or St. Anthony's would not be a basis for

liability as to the other.  However, separate liability as to each could be separately found.

This finding is consistent with how joinder has been interpreted in Missouri.  The

Missouri Supreme Court, for example, has rejected the propriety of joining defendants

involved in successive accidents.  *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346, 348

(Mo. 1992) (en banc).  There, the plaintiffs alleged they were seriously injured as a result

of the successive negligent acts or omissions of the defendants "in combination" and that

---

[4]    The Missouri rule on permissive joinder is nearly identical to the federal rule and
is identical in all relevant parts here.  *See* Mo. R. Civ. P. 52.05.

the two accidents "were not separate and distinct but inseparable and indistinguishable thereby creating common liability among all of the named defendants." *Id.* at 346, 348. The supreme court held that joinder was not permitted under Mo. R. Civ. P. 52.05(a) because the cause of action arising out of the two accidents did not arise out the same transaction or occurrence. Instead, "[e]ach defendant [was] responsible for the injuries caused in the accident in which he or she was involved." *Id.* at 348. In light of *Jinkerson*, the Court finds that it likely that the state court would find that Alexander did not have a reasonable basis for joining St. Anthony's under state procedural law and that Alexander should sue St. Anthony's under a separate state action.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)

13

(emphasis added). However, where a non-diverse party, such as St. Anthony's here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the misjoinder of St. Anthony's would destroy complete diversity, and because the basis for the causes of action against St. Anthony's do not arise from the same transaction and occurrences as those in the causes of action against the other Defendants, the Court will sever the action against St. Anthony's so as to preserve BSC and Guidant's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II.     Motion to Dismiss

Because the Court concludes that the action against St. Anthony's shall be severed and remanded from the lawsuit, the Court denies St. Anthony's Motion to Dismiss as moot.

**IT IS HEREBY ORDERED** that:

1.     Plaintiff Alexander's Motion for Remand to St. Louis County Circuit Court (MDL No. 05-1708 (DWF/AJB), Doc. No. 1258; Civil No. 07-1129 (DWF/AJB), Doc. No. 3) is **GRANTED** as to Defendant St. Anthony's Medical Center but **DENIED** as to all remaining Defendants. The Court Orders that all claims against Defendant St. Anthony's Medical Center are **SEVERED** and **REMANDED** to St. Louis County Circuit Court.

14

    2.    Defendant St. Anthony's Motion to Dismiss (MDL No. 05-1708 (DWF/AJB), Doc. No. 1308; Civil No. 07-1129 (DWF/AJB), Doc. No. 9) is **DENIED AS MOOT WITHOUT PREJUDICE.**

Dated:  June 4, 2007                s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        Judge of United States District Court

**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

LARRY AND CHARLOTTE HARDIN    §
                              §
        Plaintiffs,           §
                              §
v.                            §    CIVIL ACTION NO. G-05-430
                              §
GUIDANT CORPORATION, et al.,  §
                              §
        Defendants.           §

United States Courts
Southern District of Texas
ENTERED

FEB 0 2 2006

Michael N. Milby, Clerk of Court

## ORDER

This case came before the Court on February 1, 2006, for a routine scheduling conference. Pursuant to written briefing previously submitted to the Court and oral submissions by counsel at the scheduling conference, the Court **ORDERS** that all claims against Defendants Medical Center of Plano and J. Brian DeVille, M.D. are **SEVERED** and **REMANDED** to the District Court of Brazoria County, Texas, 239th Judicial District.  All remaining proceedings are **STAYED PENDING TRANSFER** to the Hon. Donovan W. Frank of Minnesota for consolidation with other similar cases in MDL 1708.

**IT IS SO ORDERED.**

**DONE** this 1st day of February, 2006, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE